**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

| | | |
|---|---|---|
| **REDOAK HOSPITAL, LLC,** | § | |
| *PLAINTIFF* | § | |
| | § | |
| | § | **CIVIL ACTION NUMBER** |
| **VS.** | § | |
| | § | **16-CV-01542** |
| | § | |
| **AT&T INC., AT&T UMBRELLA** | § | |
| **BENEFIT PLAN NO. 1, AT&T** | § | |
| **UMBRELLA BENEFIT PLAN** | § | |
| **NO. 3, and LARRY RUZICKA** | § | |
| *DEFENDANTS* | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff, REDOAK HOSPITAL, LLC, (hereinafter, "Plaintiff") files this First Amended Complaint against Defendants AT&T INC., AT&T UMBRELLA BENEFIT PLAN NO. 1, AT&T UMBRELLA BENEFIT PLAN NO. 3 and LARRY RUZICKA (hereinafter, collectively "Defendants") and would show the following:

## I. PARTIES

1.      Plaintiff is a Texas limited liability company that operates a hospital located in Houston, Texas. Plaintiff is headquartered in the city of Houston in Harris County, Texas. Plaintiff is the lawful Assignee and Claimant of the claims asserted herein.

2.      Defendant, AT&T INC. (hereinafter, "Plan Sponsor") is a multinational corporation with its global headquarters located in Dallas, Texas. Plan Sponsor is a company specializing in delivering advanced mobiles services, next-generation TV, and high-speed internet. Plan Sponsor employs over 280,000 individuals worldwide, many of whom are residents of the greater Houston area.

3.      During all material times, AT&T INC acted as the Plan Sponsor and Plan Administrator for Defendants AT&T UMBRELLA BENEFIT PLAN NO. 1 and AT&T UMBRELLA BENEFIT PLAN NO. 3 (hereinafter, collectively the "Plans"). Defendant Plan Sponsor may be served by serving its Plan Administrator, Larry Ruzicka at AT&T Services, Inc., P.O. Box 132160, Dallas, TX 75313-2160.

4.      Plan Sponsor appointed its employee Defendant LARRY RUZICKA as the Plans' official Plan Administrator, by and through his position as the Plan Administrator for Plan Sponsor. Defendant LARRY RUZICKA resides and works in Dallas, Texas and may be personally served at

AT&T Services, Inc., P.O. Box 132160, Dallas, TX 75313-2160.

5.      AT&T UMBRELLA BENEFIT PLAN NO. 1 (hereinafter, "Plan 1") is a self-insured welfare benefits plan governed by ERISA. The Plan may be served with process by serving its Plan Administrator, LARRY RUZICKA, at AT&T Services, Inc., P.O. Box 132160, Dallas, TX 75313-2160.

6.      AT&T UMBRELLA BENEFIT PLAN NO. 3 (hereinafter, Plan 3) is a self-insured welfare benefits plan governed by ERISA. The Plan may be served with process by serving its Plan Administrator, LARRY RUZICKA, at AT&T Services, Inc., P.O. Box 132160, Dallas, TX 75313-2160.

## II. JURISDICTION AND VENUE

7.      Plaintiff's claims arise *in part* under 29 U.S.C. §§1001 *et seq.,* Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA"), and asserts Subject Matter Jurisdiction under 28 U.S.C. §1331 (Federal Question Jurisdiction) and 29 U.S.C. §1132(e).

8.      Venue is appropriate in this District under 28 U.S.C. §1391(b) because Plan Sponsor conducts a substantial amount of business in this District, and employs and provides benefits to residents of this district. Additionally, a substantial part of the events or omissions giving rise to the claims occurred in this district, such as: the collection and contributions of premiums for the Plans, the making of promises and representations as to covered medical benefits to Plan Beneficiaries (who also work and reside in this district), the provision of health care services to Plan Beneficiaries, the making of promises and representations as to insurance coverage for those health care services, the filing of claims and appeals to the Plans, the exchange of correspondence relating to those claims appeals, and the decision making by fiduciaries of the Plans relating to the issuance of benefits and protection of Plan funds.

### III. Introduction

9.      Plaintiff asserts claims sounding in ERISA.

10.     This dispute arises out of Defendants' ongoing and systematic ERISA violations consisting of an elaborate scheme to abstract, withhold, embezzle and convert self-insured Plan Assets that were approved and allegedly paid to Plaintiff for Plaintiff's claim, to purportedly, but impermissibly, satisfy a falsely alleged "overpayment" for a stranger's claim, especially when the stranger is a plan beneficiary of a fully-insured plan that is insured by the Plan's co-fiduciary, United Healthcare (hereinafter, "United").[1] Defendants knew or should have known that the Plan's overpayment recovery provisions could not be triggered until there was an allegation of overpayment by the Plans to the Plan Beneficiary subject to this action, and that converting the Plan Assets by a fiduciary or co-fiduciary of the Plan, in this case United, to the use of another

---

[1] Stranger plans, which in this case are **"WO _20130828 2735692A_"** and **"WO _20130909 276211A_"**, are fully-insured plans that are funded by United. These fully-insured stranger plans have no relation to the self-insured Plan/Defendants at issue in this Complaint; however, the fully-insured stranger plan that United funds are the plans that are being unjustly enriched by the self-funded Plans/Defendants through United's cross-plan overpayment recoupment scheme.

and ultimately its own use, to pay to its own account is absolutely prohibited under ERISA statutes. Defendants and United have conspired and engaged in many other embezzlement schemes, including, but not limited to, making deductions on entitled claim payments through the misrepresentation that a Viant/Multiplan contract is in place with Plaintiff; however, this action is only challenging the cross-plan offset embezzlement scheme discussed in detail below.

11.    Defendants and United were repeatedly put on notice and were made aware of Plaintiff's allegations that the Plan co-fiduciary, United, had allegedly engaged in prohibited transactions resulting in the embezzlement of Plan Assets for at least three Plan Beneficiaries on at least three separate occasions via the administrative/internal appeals process ranging between July 2014 through May 2016. Nonetheless, Defendants took no immediate corrective or investigatory actions for nearly two years, even after Plaintiff informed Defendants of the fact that United will not discuss any of Plaintiff's claims/appeals unless Plaintiff dismissed another pending judicial action for another plan beneficiary member to a self-insured plan that is victim to the same embezzlement scheme.

12.    Defendants and United officially approved Plaintiff's benefit claims and purportedly "paid" the Plaintiff for each approved claim in accordance with the terms of the Plans as represented by the official Provider Explanation of Benefits (hereinafter, "EOB") and Electronic Remittance Advice (hereinafter, "ERA 835") as "Allowed Amount" and "Paid to Provider." [2] Plaintiff, for each claim herein, was to be paid the Allowed Amount determined by the Defendants, through United, minus the Plan Beneficiaries cost-sharing obligation/patient responsibility, *i.e.* the Entitled Amount. However, in truth and in fact, Plaintiff was never paid

---

[2] An allowed amount is the maximum amount an insurer will pay for a covered health service, the remainder owed by the insured is called "balance billing". http://obamacarefacts.com/allowed-amount-and-balance-billing-health-insurance/

the Entitled Amount on any of the claims. Thus, there is, nor has there ever been, a dispute over the determined amount of the Plaintiff's benefits entitlement under the Plan, but the dispute hinges on the fact that Plaintiff has yet to be paid the amount Plaintiff is entitled to on any of the claims. Being that these claims were never paid to Plaintiff on behalf of the Plan Beneficiaries and were fraudulently withheld by United with Defendants' full and complete knowledge, the Plan Beneficiaries continue to be left exposed to personal liability for their unpaid medical bills.

13.     The Defendants and United, together as Plan co-fiduciaries, engaged in a deliberate, calculated, and fraudulent scheme to conceal the aforementioned prohibited transactions and embezzlement as evidenced by the issuing of inconsistent ERA 835s and Provider EOBs to deceive Plaintiff and its Plan Beneficiaries as to the actual amount to be paid to Plaintiff on each claim (ERA 835 is attached as Exhibit A and Provider EOBs are attached as Exhibit B).

14.     Defendants and United continued to conceal this kind of unlawful embezzlement and conversion of Plan Assets, camouflaged as "overpayment recoupment or offset", even after being made fully aware of this self-dealing and embezzlement repeated appeals, notices, and alerts from Plaintiff and being provided with a copy of Department of Labor complaint filed by Plaintiff. Defendants failed to remedy the verified embezzlement even after being notified of the possible investigation by the Department of Labor and at least three (3) levels of administrative appeals, notices, and alerts by Plaintiff.

15.   At the heart of this action is Defendants' wholesale failure to uphold their statutory fiduciary duties owed to its own Plan Beneficiaries. Defendants, in direct violation of their statutory fiduciary duties, knowingly entered into an unlawful agreement with their co-fiduciary, United, which **blatantly** ignores, overlooks, and directly creates prohibited conflicts of interest

permitting United to withhold Plan Assets and convert them to its own use/benefit. Despite a clear statutory bar to this type of prohibited self-dealing, Defendants agreed to an illegitimate recoupment scheme that financially rewards United for wrongfully recouping valid benefits due to Plaintiff; thus, resulting in an arrangement where United, a co-fiduciary, reprehensively takes Defendants' Plan Assets at the personal expense of both the Defendants and the Plan Beneficiaries.

16.     Despite Defendants having actual knowledge that United may be engaged in statutory prohibited transactions, which for at least three separate Plan Beneficiaries' claims, involved repurposing Defendants' extracted Plan Assets to its own use to make itself whole for "overpayments" made on its own fully-insured accounts, in this case Houston Zoo and Spring Klein Surgical Hospital, Defendants failed to take any corrective or investigatory action of their own. Instead, Defendants' forwarded Plaintiff's Appeal Letters to United and knowingly and willfully delegated United to take corrective and investigatory action. Defendants' delegation to United to investigate Plaintiff's allegations was done so in an absolute conflict of interest, especially since Defendants knew or should have known that as Plan Fiduciaries, Plan Fidiciaries must always discharge their duties in the best interest of their Plan Beneficiaries and the Plan itself.

17.     Based on the undisputed fact that Plaintiff was not actually paid the exact Entire Amount as reported and certified on the Plan ERA 835, Plaintiff was injured and harmed. Additionally, by not actually paying the exact Entire Amount reported on the ERA 835, it is likely that the Defendants reported inaccurate tax information to the Internal Revenue Services and DOC; thus, filing either fraudulent and/or inaccurate tax returns in regards to the amount paid to Plaintiff and Defendant's third party administrator, United.

# IV. FACTUAL ALLEGATIONS

A. **_Background as to Self-Insured Health Plans Governed by ERISA and OON Providers_**

18.     Generally speaking, throughout America, individuals not eligible for Medicare or Medicaid typically obtain health insurance coverage through his or her own employer, or through a family member's employer. Those employers can provide health insurance on either a fully- insured or self-insured basis. When an employer provides fully-insured health insurance, the employer and/or employees pay premiums to a third party commercial insurance company, and the medical costs of the employees are paid using the insurance company's funds.

### *Fully-Insured Plans*

- **_Risk_**: In a fully insured plan, the employer pays a per-employee premium to an insurance company, and the insurance company assumes the risk of providing health coverage for insured events.

- **_Plan Characteristics_**: In fully insured arrangements, premiums vary across employers based on employer size, employee population characteristics, and health care use. Premiums can also change over time within the same employer because of changes in the demographics of the employed group. However, employers are charged the same premium for each employee.

- **_Employer Size_**: Small employers that offer health benefits are typically fully insured. In 2008, 88 percent of workers in firms with 3–199 employees were in fully insured plans. Smaller firms are typically located in one office or region (if they are on the large side of small).

- **_Market Share_**: Overall, 45 percent of workers with health insurance were covered by a fully insured plan in 2008.[3]

19.     By contrast, when health insurance is offered by an employer on a self-insured basis, the employer assumes the risk for payment of the medical claims by sponsoring a benefits plan that forms a specific fund for that purpose. The resulting fund enjoys certain tax breaks, and

---

[3] Employee Benefit Research Institute, Fast Facts, *Health Plan Differences: Fully-Insured vs. Self-Insured*, https://www.ebri.org/pdf/ffe114.11feb09.final.pdf.

is funded by the employer and/or employees who contribute premium payments. The health care claims of the enrolled employees and their dependents (the Plan Beneficiaries) are then paid with the finances of the fund.

### *Self-Insured Plans*

- ***Risk***: In a self-insured plan, instead of purchasing health insurance from an insurance company and paying the insurer a per-employee premium, ***the employer acts as its own insurer***. In the simplest form, the employer uses the money that it would have paid the insurance company and instead directly pays health care claims to providers. ***Self-insured plans often contract with an insurance company or other third party to administer the plan, but the employer bears the risk associated with offering health benefits.***

- ***Plan Characteristics***: Large employers often offer multiple self-insured health plans to different classes of workers. Benefits may vary for management and labor, and benefits may vary by occupation or even hours of work. Even when an employer offers a uniform benefits program across all locations and geographic regions, the cost of providing the program—commonly known as the premium equivalent— will vary because the cost of health care services is not uniform across the United States.

- ***Employer Size***: In 2008, 89 percent of workers employed in firms with 5,000 or more employees were in self-insured plans.

- ***Market Share***: Overall, 55 percent of workers with health insurance were covered by a self-insured plan in 2008.[4]

20.     Unless exempted, self-insured health benefit plans are governed and regulated by the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA"). Pursuant to ERISA, a self-insured health benefit plan must set forth in a written official plan document or plan instrument specific details, such as the terms of eligibility for enrollees, the benefits covered, and more.[5]

---

[4] *Id.*

[5] The US Department of Labor – Employee Benefit Security Administration provides details about the relationship between self-insured plans and ERISA. U.S. Dept. of Labor, *Understanding Your Fiduciary Responsibilities Under A Group Health Plan,* https://www.dol.gov/ebsa/publications/ghpfiduciaryresponsibilities.html.

21.     Often times, an employer (*i.e.* Plan Sponsor) who elects to have a self-insured health plan contracts with a third party commercial insurance company to oversee the claims processing and other administrative services. The employer and the third party commercial insurance company, also known as the Third Party Administrator (hereinafter, "TPA"), enter into an Administrative Services Only ("ASO") contract or agreement.[6]

22. United is a third party commercial insurance company that provides TPA services to many self-insured plans under ASO contracts. In exchange for the payment of fees, United provides claims processing and other administrative services to the plans, while also providing Plan Beneficiaries access to United's network of providers. United's network of providers are considered in-network because the providers enter into Preferred Provider Organization ("PPO") contracts with United.[7]

23.     In accordance with the PPO contracts between United and its in-network providers, United's in-network providers agree to accept negotiated lower amounts for their services. In-network providers agree to the lower rates in exchange for a higher volume of patients that results from being part of United's published managed care network. Thus, when a plan beneficiary receives health care services from an in-network provider, a plan is only obligated to pay the in-network provider the negotiated amount set by the PPO contract. Pursuant to the PPO contract between the in-network provider and United, the in-network

---

[6] An ASO contract is an arrangement in which an organization funds its own employee benefit plan such as a pension plan or health insurance program but hires an outside firm to perform specific administrative services. For example, an organization may hire an insurance company to evaluate and process claims under its employee health plan while maintaining the responsibility to pay the claims itself. Investopedia, *Administrative Services Only- ASO,* http://www.investopedia.com/terms/a/administrative-services-only.asp.

[7] A PPO is a type of health plan that contracts with medical providers, such as hospitals and doctors, to create a network of participating providers. You pay less if you use providers that belong to the plan's network. You can use doctors, hospitals, and providers outside of the network for an additional cost. HealthCare, *Preferred Provider Organization (PPO),* https://www.healthcare.gov/glossary/preferred-provider-organization-PPO/.

provider agrees to accept the lower negotiated rate as payment in full for the service. Additionally, the in-network provider agrees to have no recourse against the patient/Plan Beneficiary for any difference in amount between the provider's normal charge for the procedure and the negotiated lower rate. In other words, by contract, the in-network provider is precluded from ever balance-billing the patient.[8]

24.     Since the amount owed by the Plan to the in-network provider is already determined by the pre-negotiated fee rates set by the PPO contract with United, and because the PPO contract also precludes the in-network provider from ever balance-billing the patient, the in-network provider's request for payment from the Plan is deemed to be governed by the PPO contract, and is therefore not considered an ERISA claim for benefits.[9]

25.     By contrast, an out-of-network (hereinafter, "OON") provider has no contracts with either United or the Plan, and is not bound to accept the same lower negotiated rates set forth by any PPO contract or fee schedule. Since there is no contract between an OON provider and United or the Plan, an OON provider is free to "balance bill" the patient for any amounts unpaid by the Plan. In others words, the patient may be pursued and held personally liable by an OON provider for any amounts unpaid by the Plan.

---

[8] Balance Billing is when a provider bills you for the difference between the provider's charge and the allowed amount. For example, if the provider's charge is $100 and the allowed amount is $70, the provider may bill you for the remaining $30. A preferred provider may not balance bill you for covered services. HealthCare, *Balance Billing,* https://www.healthcare.gov/glossary/balance-billing/.

[9] US Department of Labor Employee Benefits Security Administration – <u>FAQ A-8: About the Benefit Claims Procedure Regulation</u> – ERISA does not apply to in-network provider's claims for reimbursement when the provider has no recourse against the claimant for the amount in whole or in part not paid by the insurer or managed care organization. *See* U.S. Dept. of Labor, *FAQ: About the Benefit Claims,* http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html. (ERISA "does not apply to requests by

26.     Plaintiff is an OON provider that has no contracts with either United or the Plans. As an OON provider, Plaintiff is not subject to any limitations or agreements contained in any United PPO contracts.

27.     Plan Sponsor is an employer that sponsors and administers the Plans, ERISA governed, self-insured welfare benefit plans created to provide benefits to subscribed Plan Sponsor employees and the employees' enrolled dependents (hereinafter, collectively "Plan Beneficiaries").

28.     Under the terms of the Plans, the Plans are required to promptly pay benefits for OON services based upon the usual, customary and reasonable rate ("UCR") for that service in the same geographic area. Whenever the Plans pay less than one hundred (100%) of an OON provider's claim, the Plans' failure or refusal to pay the full amount of the OON provider's charges are deemed an Adverse Benefit Determination under ERISA.[10]

### B.     *Plaintiff's Benefits Claims have been Approved for Benefit Payments but Converted and Embezzled by Defendants, through United*

29.     Patients WS, PM, and EK are Plan Beneficiaries (*i.e.* covered individuals) under the terms and conditions of the Plans, and are entitled to medical benefits ***as determined by the Plans***.[11] That is, if the Defendants, through United, make the determination that the services Patients WS, PM, WK receive are indeed covered services under the Plans and the covered services are deemed medically necessary, then the Defendants, through United, shall make a

---

[10]US Department of Labor Employee Benefits Security Administration -FAQC-12:About the Benefit Claims Procedure Regulation - Under ERISA, an adverse benefit determination generally includes any denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for ,a benefit. In any instance where the plan pays less than the total amount of expenses submitted with regard to a claim, while the plan is paying out the benefits to which the claimant is entitled under its terms, the claimants nonetheless receiving less than full reimbursement of the submitted expenses, and is treated as an adverse benefit determination. U.S. Dept. of Labor, *FAQ: About the Benefits Claims Procedure Regulation*, http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html.

[11] Patients WS, PM and EK are a Plan Beneficiaries under the terms and conditions of the Plan, and, in accordance with HIPAA, their names shall remain confidential.

determination as to how much to pay Plaintiff for providing services to Patients WS, PM and EK.

### i. Background Information for Patient WS' claim

30.    Before providing healthcare services to Patient WS, Plaintiff on February 04, 2014, verified through Defendants' authorized agent, United, that Patient WS is a Plan Beneficiary of Plan 3 and, as a benefit under Plan 3, Patient WS does indeed have OON benefits. This pre-service verification procedure is not only common practice amongst most healthcare providers, but is much more imperative as Plaintiff is a OON provider and must ensure that each patient has OON benefits prior to performing any service. Before receiving services from Plaintiff, Patient WS executed a Legal Assignment of Benefits and Designation of Authorized Representative form on February 05, 2014, which designated and assigned Plaintiff to be a statutorily defined "Claimant" by assigning Plaintiff rights to receive benefit payments directly, conduct administrative appeals, and also seek judicial review for benefit claims, breaches of fiduciary duty, statutory penalties for failure to provide Plan Documents, and any equitable remedies under the law (the Legal Assignment of Benefits and Plaintiff's standing is discussed in detail in Section IV(D)).

31.    After both receiving verification of Patient WS's OON benefits from United and Patient WS assigning Plaintiff as his Claimant, Plaintiff provided healthcare services to Patient WS, on February 5, 2014, and Patient WS; as a result incurred eligible and reasonable medical expenses. Since Patient WS incurred eligible and reasonable expenses, Plaintiff submitted healthcare claims to Defendants, through United, for determination and to be reimbursed for the services Plaintiff provided to Patient WS.

32.    On May 8, 2014, Plaintiff received the ERA 835 where Defendants, through United, made the final determination that Plaintiff's claim for *$12,644.97* ("Billed Amount") was adjudicated by Defendants, through United, and was allowed for *$3,457.70* ("Allowed Amount").[12] Patent WS' cost-sharing obligation was in the amount of $1,728.85, thus the Plaintiff's Entitled Amount is $1,728.85. The ERA 835 clearly shows that Defendants, through United, "issued" the following checks to Plaintiff (i) ***"QK92682221 - $48,720.21"***, and (ii) ***"QK92682080 - $27,757.12"***, which should include the Entitled Amount, to be paid to Plaintiff; however Plaintiff *never* received those checks, nor has it been paid the Entitled Amount. Additionally, the ERA 835 also shows that *$28,091.62 ("WO 20130828 273592A") and $29,036.22 ("WO 20130909 276211A")* were withheld from Plaintiff by Defendants, through United, and converted to United's own use to make itself "whole" for "overpayments" to stranger plans. The ***273592A and 276211A*** in the withholding section represent the account numbers that *$28,091.62 and $29,036.22* of Defendants' Plan Assets were withdrawn and withheld from Plaintiff because of "overpayments" made to Plaintiff, which in this case were for Patients LS and NT, which are plan beneficiaries of Spring Klein Surgical Hospital and Houston Zoo, who received services on ***20130828*** (*i.e.* August, 28, 2013) *and **20130909*** (*i.e.* September, 09, 2013) from Plaintiff. Spring Klein Surgical Hosptial and Houston Zoo are plans that are fully insured by United. ***Below, incorporated into this Complaint, is the ERA 835 produced to Plaintiff on May 8, 2014, that highlights the evidence discussed in this paragraph:***

---

[12] An ERA 835 is a HIPAA mandated and official document that shows the transfer of funds from one account to another. United defines an ERA 835 as the electronic transaction which provides claim payment information in the HIPAA mandated ACSX12 005010X221A1 format. These files are used by practices, facilities, and billing companies to autopost claim payments into their systems. You can receive your 835 files through your clearinghouse, direct connection, UnitedHealthcare's Connectivity Director or download them from UnitedHealthcareOnline.com, with enrollment in Electronic Payments & Statements (EPS) .UnitedHealthcare, *Electronic                                   Remittance                                   Advice (835),*https://www.unitedhealthcareonline.com/b2c/CmaAction.do?channelId=8e24829bca0ae210VgnVCM2000003010b10a.



33.     On May 8, 2014, Plaintiff also received from Defendants, through United, a Provider Explanation of Benefits (hereinafter, "EOB") that supports the official ERA 835 and further conceals its conversion and embezzlement scheme. The Provider EOB also certifies that Defendants had withdrawn money from Defendants with one of the same checks from the ERA 835 check **"QK92682221"** to be paid to Plaintiff, but Plaintiff *never* received the check. Additionally, the Provider EOB shows that *$36,164.75* was withheld and converted to pay the alleged overpayments for Patients LS and NT, and an additional patient TK. *Below, incorporated into this Complaint, is the Provider EOB produced to Plaintiff on May 8, 2014, that highlights the evidence discussed in this paragraph:*

----------INTENTIONALLY LEFT BLANK----------

14



United HealthCare Services, Inc.
GREENSBORO SERVICE CENTER
PO BOX 30557
SALT LAKE CITY, UT 84130-0557
PHONE: 1-877-842-3210

**UnitedHealthcare**
A UnitedHealth Group Company

DATE: 05/08/14
TIN: 4
NPI: 1
GROUP NUMBER: 0702566
GROUP NAME: AT&T CUSTOMCARE NETWORK
CHECK NUMBER: OK 92882221
CHECK AMOUNT: $0.00

REDOAK HOSPITAL
REDOAK HOSPITAL
17400 RED OAK DR
HOUSTON, TX 77090

**PROVIDER EXPLANATION OF BENEFITS**

**PATIENT:**

| MEMBER NAME: | A 841777754 | CONTROL NUMBER: | 452703455301 |
| MEMBER ID: | | DATE RECEIVED: | 04/18/14 |
| PRODUCT: | CHOYC+ | PROVIDER OF SERVICE: | REDOAK HOSPITAL |
| PATIENT ACCOUNT: | 299949B | | |

| DATE(S) OF SERVICE | REV CODE SUB/ ADJ | CPT-HCPCS SUB/ADJ | MOD SUB/ ADJ | UNITS SUB / ADJ | AMOUNT CHARGED | AMOUNT ALLOWED | ADJ AMOUNT | GRP CODE | CLAIM ADJ RSN CODE | APC/ OPG GRP CD | APC SI | APC RC | OCE EDIT CD | PAID TO PROVIDER | REMARK/ NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/05/14 | 0483/0489 | 93306 | | 1 | $13,644.97 | $3,451.70 | $9,167.37 | PR | 45 | | | | | $1,728.85 | |
| | | | | | | | $1,728.85 | PR | 2 | | | | | | |
| CONTROL # 452703455301 SUBTOTAL | | | | | $13,644.97 | $3,451.70 | $10,916.12 | | | | | | | $1,728.85 | |
| | | | | | | | | | CLAIM TOTAL PATIENT RESPONSIBILITY | | | | | $1,728.85 | |

United HealthCare Services, Inc.
GREENSBORO SERVICE CENTER
PO BOX 30557
SALT LAKE CITY, UT 84130-0557
PHONE: 1-877-842-3210

**UnitedHealthcare**
A UnitedHealth Group Company

DATE: 05/08/14
TIN:
NPI:
GROUP NUMBER: 0702566
GROUP NAME: AT&T CUSTOMCARE NETWORK
CHECK NUMBER: OK 92882221
CHECK AMOUNT: $0.00

REDOAK HOSPITAL
REDOAK HOSPITAL
17400 RED OAK DR
HOUSTON, TX 77090

**PROVIDER EXPLANATION OF BENEFITS**

**PATIENT:**

| MEMBER NAME: | A 841591493 | CONTROL NUMBER: | 452676337701 |
| MEMBER ID: | | DATE RECEIVED: | 04/17/14 |
| PRODUCT: | CHOYC+ | PROVIDER OF SERVICE: | REDOAK HOSPITAL |
| PATIENT ACCOUNT: | 2562.001 | | |

| DATE(S) OF SERVICE | REV CODE SUB/ADJ | CPT-HCPCS SUB/ADJ | MOD SUB/ ADJ | UNITS SUB / ADJ | AMOUNT CHARGED | AMOUNT ALLOWED | ADJ AMOUNT | GRP CODE | CLAIM ADJ RSN CODE | APC/ OPG GRP CD | APC SI | APC RC | OCE EDIT CD | PAID TO PROVIDER | REMARK/ NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/18/14 | 0300 / 0500 | 80048 | | 1 | $1,119.00 | | $27,461.00 PR | | 45 | | | | | $0.00 | CY |
| | | | | | | | -$26,342.00 PR | | 94 | | | | | | |
| 03/18/14 | 0300 / 0500 | 85025 | | 1 | $558.00 | | $558.00 PR | | 97 | | | | | $0.00 | CY |
| 03/18/14 | 0300 / 0500 | 85730 | | 1 | $558.00 | | $558.00 PR | | 97 | | | | | $0.00 | CY |
| 03/18/14 | 0320 / 0500 | 75625 | | 2 | $21,342.00 | | $21,342.00 PR | | 97 | | | | | $0.00 | CY |
| 03/18/14 | 0450 / 0500 | G0269 | | 1 | $3,926.00 | | $3,926.00 PR | | 97 | | | | | $0.00 | CY |
| 03/18/14 | 0480 / 0500 | 93458 | | 1 | $77,444.73 | $14,040.90 | $63,403.83 PR | | 45 | | | | | $12,636.81 | |
| | | | | | | | $1,404.09 PR | | 2 | | | | | | |
| 03/18/14 | 0480 / 0500 | 93458 | | 1 | $1,096.27 | $2,574.27 | -$1,588.00 PR | | 94 | | | | | $2,574.27 | |
| 03/18/14 | 0636 / 0500 | J2001 / 93458 | | 1 | $192.00 | | $192.00 PR | | 97 | | | | | $0.00 | |
| 03/18/14 | 0636 / 0500 | J2250 / 93458 | | 1 | $586.00 | | $586.00 PR | | 97 | | | | | $0.00 | |
| 03/18/14 | 0636 / 0500 | J7030 / 93458 | | 2 | $810.00 | | $810.00 PR | | 97 | | | | | $0.00 | |
| CONTROL # 452676337701 SUBTOTAL | | | | | $107,580.00 | $16,713.17 | $92,256.92 | | | | | | | $15,311.08 | |
| | | | | | | | | | CLAIM TOTAL PATIENT RESPONSIBILITY | | | | | $1,404.09 | |

----------INTENTIONALLY LEFT BLANK----------

### ii.    Background Information for Patient PM's claim

34.    Before providing healthcare services to Patient PM, Plaintiff on March 17, 2014, verified through United, that Patient PM is a Plan Beneficiary of Plan 1 and, as a benefit under Plan 1, Patient PM does indeed have OON benefits. Before receiving services from Plaintiff, Patient PM, Patient executed a Legal Assignment of Benefits and Designation of Authorized Representative form on March 18, 2014, which designated and assigned Plaintiff to be a statutorily defined "Claimant" by assigning Plaintiff rights to receive benefit payments directly, conduct administrative appeals, and/or seek judicial review for benefits claims, breaches of fiduciary duty, statutory penalties for failure to provide Plan Documents, and any equitable remedies under the law (the Legal Assignment of Benefits and Plaintiff's standing is discussed in detail in Section IV(D)).

35.    After both receiving verification of Patient PM's OON benefits from United and Patient PM assigning Plaintiff as his Claimant, Plaintiff provided healthcare services to Patient PM on March 18, 2014, and, as a result, Patient PM incurred eligible and reasonable medical expenses. Since Patient PM incurred eligible and reasonable expenses, Plaintiff submitted healthcare claims to Defendants, through United, for determination and to be reimbursed for the services Plaintiff provided to Patient PM.

36.    On May 8, 2014, Plaintiff received the ERA 835 where Defendants, through United, made the final determination that Plaintiff's claim for *$107,580.00* ("Billed Amount") was adjudicated by Defendants, through United, and was allowed for *$45,764.17* ("Allowed Amount"). Patient DM's cost-sharing obligation is in the amount of $1,404.09; thus Plaintiff's Entitled Amount is $44,360.08. The ERA 835 clearly shows that Defendants, through United "issued" the following checks to Plaintiff (i) *"QK92682221 - $48,720.21"*, and (ii)

"*QK92682080 - $27,757.12*", which includes the Entitled Amount, to be paid to Plaintiff; however Plaintiff **never** received those checks, nor has it been paid the Entitled Amount. Additionally, the ERA 835 also shows that *$28,091.62 ("WO 20130828 273592A") and $29,036.22 ("WO 20130909 276211A")* were withheld from Plaintiff by Defendants, through United, and converted to United's own use to make itself "whole" for "overpayments" to stranger plans. The 273592A and 276211A in the withholding section represent the account numbers that *$28,091.62 and $29,036.22* of Defendants' Plan Assets were withdrawn and withheld from Plaintiff because of "overpayments" made to Plaintiff, which in this case were for Patients LS and NT, which are plan beneficiaries Spring Klein Surgical Hospital and Houston Zoo, who received services on 20130828 (*i.e.* August, 28, 2013) *and 20130909* (*i.e.* September, 09, 2013) from Plaintiff. Spring Klein Surgical Hospital and Houston Zoo are plans that are fully-insured by United. ***Below, incorporated into this Complaint, is the ERA 835 produced to Plaintiff on May 8, 2014, that highlights the evidence discussed in this paragraph:***



| TOTALS:   # OF CLAIMS | BILLED AMT | ALLOWED AMT | DEDUCT AMT | COINS AMT | RC-AMT | PROV PAID | PROV ADJ | CHECK AMT |
|---|---|---|---|---|---|---|---|---|
| 6 | 219640.48 | 121674.30 | 4248.76 | 10462.54 | 168764.43 | 36164.75 | 36164.75 | 0.00 |

| PROVIDER ADJ DETAILS: | PLB REASON CODE | FCN | HIC | AMOUNT |
|---|---|---|---|---|
| | FB | QK92682080 | | 27757.12 |
| | FB | QK92682221 | | -48720.21 |
| | WO | 20130828 273592A | | 28091.62 |
| | WO | 20130909 276211A | | 29036.22 |

GLOSSARY:
PI-         Adjustment, Group, Reason, MOA, and Remark codes
            Payor initiated reductions. In the opinion of the payer, the adjustment is not the responsibility of the patient,
            but no supporting contract exists between the provider and the payer.

37.     On May 8, 2014, Plaintiff also received from Defendants, through United, a *fraudulent and inconsistent* Provider EOB that contradicts the official ERA 835 in order to conceal its conversion and embezzlement scheme. Although the Billed Amount by Plaintiff remains consistent on both the ERA 835 and the Provider EOB for patient PM, the Allowed Amount on the Provider EOB is $16,715.17, a different Allowed Amount as to what is shown on the ERA 835 above. The Patient Responsibility/cost-sharing obligation of $1,404.09 remains the same, but the Entitled Amount according to the provider EOB has changed to $15,311.08. The Provider EOB also certifies that United had withdrawn money from Defendants with one of the same checks from the ERA 835 check **"QK92682221"** to be paid to Plaintiff, but Plaintiff *never* received the check. Additionally, the Provider EOB shows that *$36,164.75* was withheld and converted to pay the alleged overpayments for Patients LS and NT, and additonal Patient TK. Defendants and United knew or should have known that the Provider EOB is *fraudulent and not the true and correct explanation of Patient PM's benefits* because of the discrepancies in the Allowed Amounts and the withheld amount on the Provider EOB shows it is greater than the Allowed Amount on the Provider EOB; thus, it only makes sense that the ERA 835 is the true and correct document representative of Plan Assets being taken from Defendants. *Below, incorporated into this Complaint, is the Provider EOB produced to Plaintiff on May 8, 2014, that highlights the evidence discussed in this paragraph:*

11-274*04*000008-PM-14128-120*C*07ASOJPMCTOPS
STD - EOB

United HealthCare Services, Inc.
GREENSBORO SERVICE CENTER
PO BOX 30557
SALT LAKE CITY, UT 84130-0557
PHONE: 1-877-842-3210

**UnitedHealthcare**
A UnitedHealth Group Company

DATE:  05/08/14
TIN:
NPI
GROUP NUMBER:  0722266
GROUP NAME:  AT&T CUSTOMCARE NETWORK
CHECK NUMBER:  OK 92682221
CHECK AMOUNT:  $0.00

REDOAK HOSPITAL
REDOAK HOSPITAL
17400 RED OAK DR
HOUSTON, TX 77090

**PROVIDER
EXPLANATION OF
BENEFITS**

**PATIENT:**

| MEMBER NAME: | | CONTROL NUMBER: | 452676337701 |
|---|---|---|---|
| MEMBER ID: | A 841591483 | DATE RECEIVED: | 04/17/14 |
| PRODUCT: | CHOYC+ | PROVIDER OF SERVICE: | REDOAK HOSPITAL |
| PATIENT ACCOUNT: | 2562.001 | | |

| DATE(S) OF SERVICE | REV CODE SUB/ADJ | CPT-HCPCS SUB/ADJ | MOD SUB/ADJ | UNITS SUB/ADJ | AMOUNT CHARGED | AMOUNT ALLOWED | ADJ AMOUNT | GRP CODE | CLAIM ADJ RSN CODE | APC/OPG GRP CD | APC SI | APC RC | OCE EDIT CD | PAID TO PROVIDER | REMARK/NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/16/14 | 0300 / 0500 | 80048 | | 1 | $1,119.00 | | $27,461.00 | PI | 45 | | | | | $0.00 | CY |
| | | | | | | | -$26,342.00 | PI | 94 | | | | | | |
| 03/16/14 | 0300 / 0500 | 85025 | | 1 | $516.00 | | $516.00 | PI | 97 | | | | | $0.00 | CY |
| 03/16/14 | 0300 / 0500 | 85730 | | 1 | $558.00 | | $558.00 | PI | 97 | | | | | $0.00 | CY |
| 03/16/14 | 0320 / 0500 | 75625 | | 2 | $21,342.00 | | $21,342.00 | PI | 97 | | | | | $0.00 | CY |
| 03/16/14 | 0450 / 0500 | G0269 | | 1 | $3,926.00 | | $3,926.00 | PI | 97 | | | | | $0.00 | CY |
| 03/16/14 | 0480 / 0500 | 93458 | | 1 | $77,444.73 | $14,040.90 | $63,403.83 | PI | 45 | | | | | $12,636.81 | CY |
| | | | | | | | $1,404.09 | PR | 2 | | | | | | |
| 03/16/14 | 0480 / 0500 | 93458 | | 1 | $1,086.27 | $2,674.27 | -$1,588.00 | PI | 94 | | | | | $2,674.27 | CY |
| 03/16/14 | 0636 / 0500 | J2001 / 93458 | | 1 | $192.00 | | $192.00 | PI | 97 | | | | | $0.00 | CY |
| 03/16/14 | 0636 / 0500 | | | 1 | $586.00 | | $586.00 | PI | 97 | | | | | $0.00 | CY |
| 03/16/14 | 0636 / 0500 | J7030 / 93458 | | 2 | $810.00 | | $810.00 | PI | 97 | | | | | $0.00 | CY |
| CONTROL # 452676337701 SUBTOTAL | | | | | $107,580.00 | $16,715.17 | $92,268.92 | | | | | | | $15,311.08 | |

| | | | | | | | | | | | | CLAIM TOTAL PATIENT RESPONSIBILITY | | $1,404.09 | |

----------INTENTIONALLY LEFT BLANK----------



DATE: 05/08/14
TIN:
NPI:
CHECK NUMBER: OK 92882221
CHECK AMOUNT: $0.00

REDOAK HOSPITAL
REDOAK HOSPITAL
17400 RED OAK DR
HOUSTON, TX 77090

## PROVIDER EXPLANATION OF BENEFITS

### OVERPAYMENT REDUCTION DETAILS

| MEMBER LAST NAME | PATIENT FIRST NAME | MEMBER ID# | PATIENT ACCT# | POLICY NUMBER | CLAIM/CONTR OL# | DATE(S) OF SERVICE | ORIGINAL OVERPAYMENT AMOUNT | PREVIOUSLY DEDUCTED | OVERPAYMENT DEDUCTED |
|---|---|---|---|---|---|---|---|---|---|
| KRIDLER | TIMOTHY | XXXXX9131 | 259232A | 0268272 | 0423871460101 | 05/02/13 | $34,718.33 | $32,733.47 | -$1,984.86 |
| SPAIN | LAWRENCE | XXXXX4719 | 273592A | 0729831 | 0426412556301 | 08/28/13 | $28,091.62 | | -$5,143.67 |
| THOMPSON | NICOLE | XXXXX1471 | 276211A | 04P9269 | 0428148531501 | 09/09/13 | $29,035.22 | | -$29,035.22 |
| THIS REPRESENTS PREVIOUS BENEFITS THAT WERE PAID IN ERROR | | | | | | | TOTAL DEDUCTIONS | | -$36,164.75 |
| | | | | | | | TOTAL PAID TO THE PROVIDER | | $0.00 |

REMARKS::

THE AMOUNT PAYABLE FOR THIS EXPLANATION OF BENEFITS HAS BEEN USED TO REDUCE AN OVERPAYMENT MADE ON THE GIVEN CLAIM(S).  PLEASE ADJUST YOUR PATIENT ACCOUNT BALANCE ACCORDINGLY.

### iii.    *Background Information for Patient EK's claim*

38.    Before providing healthcare services to Patient EK, Plaintiff on December 30, 2013, verified through Defendants' authorized agent, United, that Patient EK is a Plan Beneficiary of Plan 1, and, as a benefit under Plan 1, Patient EK does indeed have OON benefits. Before receiving services from Plaintiff, Patient EK executed a Legal Assignment of Benefits and Designation of Authorized Representative form on January 8, 2014, which designated and assigned Plaintiff to be a statutorily defined "Claimant", by assigning Plaintiff rights to receive benefit payments directly, conduct administrative appeals, and/or seek judicial review for benefit claims, breaches of fiduciary duty, statutory penalties for failure to provide Plan Documents, and

any equitable remedies under the law (the Legal Assignment of Benefits and Plaintiff's standing is discussed in detail in Section IV(D)).

39.     After both receiving verification of Patient EK's OON benefits from United and Patient EK assigning Plaintiff as his Claimant, Plaintiff provided healthcare services to Patient EK, on Janurary 10, 2014 and. As a result, Patient EK incurred eligible and reasonable medical expenses. Since Patient EK incurred eligible and reasonable expenses, Plaintiff submitted healthcare claims to Defendants, through United, for determination and to be reimbursed for the services Plaintiff provided to Patient EK.

40.     On May 8, 2014, Plaintiff received the ERA 835 where Defendants, through United, made the final determination that Plaintiff's claim for *$21,654.57* ("Billed Amount") was adjudicated by Defendants, through United, and was allowed for *$12,201.88* ("Allowed Amount"). Patient EK's cost-sharing obligation is in the amout of $2,196.34; thus Plaintiff's Entitled Amount is $10,005.54. The ERA 835 clearly shows Defendants, through United, "issued" the following checks to Plaintiff (i) *"QK92682221 - $48,720.21"*, and (ii) *"QK92682080 - $27,757.12"*, which includes the Entitled Amount to be paid to Plaintiff; however Plaintiff *never* received those checks, nor has it been paid the Entitled Amount. Additionally, the ERA 835 also shows that *$28,091.62 ("WO <u>20130828</u> <u>273592A</u>") and $29,036.22 ("WO <u>20130909</u> <u>276211A</u>"*) were withheld from Plaintiff by Defendants, through United, and converted to United's own use to make itself "whole" for an "overpayments" to stranger plans. The <u>*273592A and 276211A*</u> in the withholding section represent the account numbers that *$28,091.62 and $29,036.22* of Defendants' Plan Assets were withdrawn and withheld from Plaintiff because of "overpayments" made to Plaintiff, which in this case were for Patients LS and NT, which are plan beneficiaries of Spring Klein Surgical Hospital and Houston

Zoo, who received services on **_20130828_** (*i.e.* August, 28, 2013) **_and 20130909_** (*i.e.* September, 09, 2013) from Plaintiff. Spring Klein Surgical Hospital and Houston Zoo are plans that are fully insured by United. **_Below, incorporated into this Complaint, is the ERA 835 produced to Plaintiff on May 8, 2014, that highlights the evidence discussed in this paragraph:_**



41.     On May 8, 2014, Plaintiff also received from Defendants, through United, a **_fraudulent and inconsistent_** Provider EOB that contradicts the official ERA 835 in order to conceal its conversion and embezzlement scheme. Although the Billed Amount by Plaintiff remains consistent on both the ERA 835 and the Provider EOB for Patient EK, the Allowed Amount on the Provider EOB is $8,721.70, a different Allowed Amount as to what is shown on the ERA 835 above. The Patient Responsibility/cost-sharing obligations of $2,196.34 remains the same, but the Entitled Amount according to the provider EOB has changed to $6,525.36. The Provider EOB also certifies that United had withdrawn money from Defendants with one of the

same checks from the ERA 835, check **"QK92682221"** to be paid to Plaintiff, however Plaintiff **never** received the check. Additionally, the Provider EOB shows that **$36,164.75** was withheld and converted to pay the alleged overpayment for Patients LS and NT, and an additional Patient TK. Defendants and United knew or should have known that the Provider EOB is **fraudulent and not the true and correct explanation of Patient PM's benefits** because of the discrepancies in the Allowed Amounts and the withheld amount on the Provider EOB shows it is greater than the Allowed Amount on the Provider EOB; thus, it only makes sense that the ERA 835 is the true and correct document representative of Plan Assets being taken from Defendants. **Below, incorporated into this Complaint, is the Provider EOB produced to Plaintiff on May 8, 2014, that highlights the evidence discussed in this paragraph:**

----------INTENTIONALLY LEFT BLANK----------

United HealthCare Services, Inc.
GREENSBORO SERVICE CENTER
PO BOX 30557
SALT LAKE CITY, UT 84130-0557
PHONE: 1-877-842-3210

**UnitedHealthcare**
A UnitedHealth Group Company

DATE: 05/06/14
TIN:
NPI:
GROUP NUMBER: 0722286
GROUP NAME: AT&T CUSTOMCARE
NETWORK
CHECK NUMBER: OK 92662221
CHECK AMOUNT: $0.00

REDOAK HOSPITAL
REDOAK HOSPITAL
17400 RED OAK DR
HOUSTON, TX 77090

**PROVIDER
EXPLANATION OF
BENEFITS**

**PATIENT:**

**MEMBER NAME:** A 844198299
**MEMBER ID:**
**PRODUCT:** CHOYC+
**PATIENT ACCOUNT:** 288606B

**CONTROL NUMBER:** 452703454801
**DATE RECEIVED:** 04/18/14
**PROVIDER OF SERVICE:** REDOAK HOSPITAL

| DATE(S) OF SERVICE | REV CODE SUB/ ADJ | CPT-HCPCS SUB/ADJ | MOD SUB/ ADJ | UNITS SUB / ADJ | AMOUNT CHARGED | AMOUNT ALLOWED | ADJ AMOUNT | GRP CODE | CLAIM ADJ RSN CODE | APC/ OPG GRP CD | APC SI | APC RC | OCE EDIT CD | PAID TO PROVIDER | REMARK/ NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/10/14 | 0250 / 0500 | 96374 | | 1 | $660.70 | | $3,480.18 -$2,819.48 | PI | 45 94 | | | | | $0.00 | CY |
| 01/10/14 | 0250 / 0500 | 76856 | | 1 | $512.48 | | $512.48 | PI | 97 | | | | | $0.00 | CY |
| 01/10/14 | 0270 / 0500 | A9502 | | 1 | $1,782.00 | | $1,782.00 | PI | 97 | | | | | $0.00 | CY |
| 01/10/14 | 0636 / 0500 | J7050 | | 1 | $525.00 | | $525.00 | PI | 97 | | | | | $0.00 | CY |
| 01/10/14 | 0480 / 0489 | 78452 | | 1 | $9,908.92 | $456.23 | $9,452.69 $456.23 | PI PR | 45 1 | | | | | $0.00 | |
| 01/10/14 | 0482 / 0489 | 93015 | | 1 | $3,598.47 | $3,598.47 | $108.77 $607.94 | PR PR | 1 | | | | | $2,791.76 | |
| 01/10/14 | 0920 / 0489 | 93922 | | 1 | $4,667.00 | $4,667.00 | $933.40 | PR | 2 | | | | | $3,733.60 | |
| CONTROL # 452703454801 SUBTOTAL | | | | | $21,664.57 | $8,721.70 | $15,129.21 | | | | | | | $6,525.36 | |
| | | | | | | | CLAIM TOTAL PATIENT RESPONSIBILITY | | | | | | | $2,196.34 | |

REDOAK HOSPITAL
REDOAK HOSPITAL
17400 RED OAK DR
HOUSTON, TX 77090

DATE: 05/06/14
TIN:
NPI:
CHECK NUMBER: OK 92662221
CHECK AMOUNT: $0.00

**PROVIDER
EXPLANATION OF
BENEFITS**

## OVERPAYMENT REDUCTION DETAILS

| MEMBER LAST NAME | PATIENT FIRST NAME | MEMBER ID# | PATIENT ACCT# | POLICY NUMBER | CLAIM/CONTR OL# | DATE(S) OF SERVICE | ORIGINAL OVERPAYMENT AMOUNT | PREVIOUSLY DEDUCTED | OVERPAYMENT DEDUCTED |
|---|---|---|---|---|---|---|---|---|---|
| KROLER | TIMOTHY | XXXXX9131 | 259232A | 0269272 | 0420871460101 | 05/02/13 | $34,718.33 | $32,733.47 | -$1,984.86 |
| SPAIN | LAWRENCE | XXXXX4719 | 273592A | 0729931 | 0426412556301 | 08/29/13 | $29,091.62 | | -$5,143.67 |
| THOMPSON | NICOLE | XXXXX1471 | 276211A | 04P9289 | 0428148531501 | 09/09/13 | $29,036.22 | | -$29,036.22 |
| THIS REPRESENTS PREVIOUS BENEFITS THAT WERE PAID IN ERROR | | | | | | | **TOTAL DEDUCTIONS** | | -$36,164.75 |
| | | | | | | | **TOTAL PAID TO THE PROVIDER** | | $0.00 |

REMARKS::

THE AMOUNT PAYABLE FOR THIS EXPLANATION OF BENEFITS HAS BEEN USED TO REDUCE AN OVERPAYMENT MADE ON THE GIVEN CLAIM(S). PLEASE ADJUST YOUR PATIENT ACCOUNT BALANCE ACCORDINGLY.

24

42.     Defendants knew or should have known that the alleged "overpayments" to Patients LS, NT, and TK, the Stranger Plans, were to a fully-insured plan account of the Plan's co-fiduciary, United. To convert the benefit payments  Patients WS, PM, and EK from Defendants' ERISA Plan Assets to other Stranger Plans insured by United, is virtually paying from Defendants' benefit Plan to United's own account. The Defendants knew or should have known that the United had abstracted and converted Defendants' Plan Assets and misappropriated Patients WS, PM, and EK's benefit entitlements to the use of its own Stranger Plans, and that this act is a breach of fiduciary duty against the best interest of the Plan Beneficiaries under ERISA. Defendants knew or should have known that the Plan Assets had been knowingly and intentionally converted and embezzled to pay United's own account, especially since Plaintiff alerted the Defendants on multiple occasions with appeal letters (sent on July 14, 2014, November 3, 2015, and May 23, 2016), and sending a notice of Department of Labor complaint filed on May 23, 2016, with complaint number 201663-13616.

43.     Defendants knew or should have known that the Provider EOBs are fraudulent and the ERA 835s are the true representation of the Plan Beneficiaries claims because the ERA 835 certifies that the Defendants, through United, had withdrawn at least two checks *"QK92682221 - $48,720.21" and "OK92682080- $27,757.12"*, and those check amounts are much greater than the Entitled Amount of $1,728.85, $15,311.08, and $6,525.36 on the Provider EOBs. Defendants continue to ignore or cover-up this type of fraudulent practice even after receiving multiple notices, appeals, and correspondence from Plaintiff that Plan's co-fiduciary, United, is a suspected perpetrator of statutorily prohibited self-dealing and embezzlement by converting and abstracting Plan benefit payments into its own use and paying to its own fully-insured accounts. Defendants knew or should have known the legal and financial conflict of

interest caused by United's self-dealing; but, Defendants continued to authorize, conspire, and orchestrate, with United to investigate United's own illicit act, in reckless breach of Defendants' co-fiduciary duties in self-dealing and failure to safeguard Plan Assets in the best interest of the Plan Beneficiaries. Instead, Defendants colluded and conspired to serve only the best interest of the Plan co-fiduciary, United, at the cost and in harm of the Plan Beneficiaries, Patients WS, PM and EK.

44.     Defendants knew or should have known that they had the ***responsibility and duty to investigate*** and unilaterally determine, ***without the assistance of United***, whether Plaintiff's suspicions and allegation were absolutely accurate or true, especially after Plaintiff filed an official complaint with the Department of Labor. Additionally, Defendants failed to and intentionally waived any rights  to officially correct the Plaintiff's statement of facts with respect to the Plans, ERA 835, and the Provider EOBs by refusing to disclose any and all Plan Documents or cancel checks ***"QK92682221 - $48,720.21"***, and  ***"QK92682080 - $27,757.12"***, for Plaintiff to use in order to rule out any of its allegations. Instead, Defendants and United continue to maintain and support their actions of withholding and converting Patients WS, PM and EK's benefit payments of Defendants' Plan Assets to pay United's own fully-insured accounts as not embezzlement or self-dealing as prohibited under 18 U.S.C. § 664 and 29 U.S.C.§1106.

### *18 U.S. C. § 664 - Theft or Embezzlement from Employee Benefit Plan*

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both.

As used in this section, the term "any employee welfare benefit plan or employee pension benefit plan" means any employee benefit plan subject to any provision of title I of the Employee Retirement Income Security Act of 1974.

### 29 U.S.C. § 1106 – Prohibited Transactions

*Transactions between Plan and Party in Interest* – A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect – transfer to, or use by or for the benefit of a party in interest, of any assets of the plan…

*Transactions between Plan and Fiduciary* – A fiduciary with respect to a plan shall not – (i) deal with the assets of the plan in his own interest or for his own account, (ii) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of in participants or beneficiaries, or (iii) receive and consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

45.     It is important to note that Plaintiff is **not disputing** the aforementioned facts that (i) Plaintiff **received proper verification** from Defendants, through United, to provide services to Patients WS, PM and EK; (ii) Defendants, through United, **internally adjudicated** Plaintiff's claims for benefits and **came to determinations** that the Allowed Amounts minus the patients' cost-sharing obligations for Patients WS, PM and EK were to be paid to Plaintiff to reimburse Plaintiff for the services Plaintiff provided; and (iii) the Allowed Amounts determined by Defendants, through United, are incorrect.

46.     Plaintiff sent administrative appeals on July 14, 2014, November 3, 2015, and May 23, 2016, to Defendants and United, and Plaintiff received very few documents in return from Defendants and no response from United. Therefore, Plaintiff has completely and unequivocally exhausted any and all required administrative remedies and good faith appeals, and any further communications or efforts with Defendants will be fruitless.

47.     Defendants on August 26, 2014 and December 10, 2015, instructed and directed Plaintiff to appeal to its co-fiduciary United for full and fair review when Defendants knew or should have known that Plaintiff was not disputing the Allowed Amount determinations of "$3,457.70, $45,764.17 and $12,201.88" on the Plan official ERA 835, but Plaintiff was merely seeking for the benefits payment checks of **"QK92682221 - $48,720.21"**, and **"QK92682080 - $27,757.12"** and withhold payments of **"WO 20130828 273592A" and "WO 20130909 276211A",** that were converted to pay United's own account for the Stranger Plans, which is a prohibited transaction and an absolute conflict of interest. From July 14, 2014 to May 23, 2016, Defendants continued to authorize, conspire, and orchestrate the embezzlement and concealment scheme to convert benefit payments into co-fiduciaries' own account, meanwhile direct Plaintiff appeals to United for full and fair review as required under ERISA were consistently denied or not responded to. In Defendants' response to Plaintiff's Appeal Letters, Defendants informed Plaintiffs that the Appeal Letters were forwarded to United for full and fair review; thus further enhancing Plaintiff's belief that no full and fair review was ever possible, especially since United has and will continue to do all in its power to conceal its illicit activity.

48.     Defendants failed to issue ERISA mandated benefit notifications while making initial adverse benefit determinations and responding to subsequent administrative appeals upon review of Patients WS, PM and EK's claims. More significantly, Defendants failed to issue ERISA compliant EOBs containing the ERISA mandated statement:

> *29 C.F.R. 2560.203-1(g) – Manner and Content of Notification of Benefit Determination*
>
> A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

49.     Additionally, Defendants failed to, in accordance with 29 C.F.R. 2560.203-1 provide a claimant [Plaintiff] with written or electronic notification of any adverse benefit determination which shall include: (i) the specific reason or reasons for the adverse determination; (ii) reference to the specific plan provisions on which the determination is base; (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; (iv) a description of the plan's review procedures and the time limits applicable to such procedures including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review; and (v) any additional information free of charge upon request.

50.     Defendants knew or should have known that ERISA statute regulations provide "claimants" a right to bring a civil action, in accordance with 29 C.F.R. 2560.203-1 (b)(4):

> The claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination.

Plaintiff has exhausted all administrative appeal requirements and brings a civil action as the authorized representative/claimant of, Patients WS, PM and EK.

51.     Defendants have always had the opportunity to challenge the validity of the Assignment of Benefits received by Defendants; nonetheless, Defendants have chosen not to challenge the scope and validity of the Assignment of Benefits from July 14, 2014 through May 23, 2016 and therefore, Defendants have practically waived its right to challenge the validity and scope of the Assignment of Benefits throughout the administrative appeals process.

52.     Defendant knew or should have known that ERISA claim regulations prohibit any anti-assignment language contained within the Plans, and guarantees claimants with ERISA

rights to a full and fair review of the claims: "The claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination." Defendants have continuously failed to provide Plaintiff-claimant, with a valid and unchallenged full and fair review guaranteed under ERISA, instead Defendants have delegated the Plan co-fiduciary, United, to pay Plan Assets to its own account, which is directly adverse to the Plan Beneficiaries and Plaintiff-Claimants rights under the Plan, thus creating an absolute conflict of interest.

### D.   *Plaintiff as Authorized Representative-Claimant of Patients WS, PM and EK*

53.    Plaintiff is an OON provider who routinely treats United beneficiaries, either through self-insured plans or fully-insured plans. As an OON provider, Plaintiff has no contract with United and has never entered into a United PPO Contract. Plaintiff has never agreed, in writing or otherwise, that Defendants or United may withhold payments owed by one United Plan in order to recover alleged prior overpayments made by another United Plan or for a different United fully-insured Plan. Similarly, Plaintiff has not agreed to allow United to take the offsets challenged herein. Moreover, Patients WS, PM, and EK have entered into agreements with Plaintiff pursuant to which Patients WS, PM and EK agree that they are liable to Plaintiff for any amounts billed by Plaintiff that Defendants, through United, fail to pay, consistent in accordance with the terms and conditions of the Plan.

54.    On February 15, 2014, March, 18, 2014, and January 8, 2014, Patients WS, PM, and EK, respectively signed a ***Legal Assignment of Benefits and Designation of Authorized Representative*** (hereinafter, "Assignment"), which includes the following statement explicitly authorizing Plaintiff to bring legal actions under ERISA (Assignments are attached as Exhibit C):

In considering the amount of medical expenses to be incurred, I, the undersigned, have insurance and/or employee health care benefits coverage with the above captioned, and hereby assign and convey directly to the above named healthcare provider(s), as my designated Authorized Representative(s), all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from such provider(s), regardless of such provider's managed care network participation status. I understand that I am financially responsible for all charges regardless of any applicable insurance or benefit payments. I hereby authorize the above named provider(s) to release all medical information necessary to process my claims under HIPAA. I hereby authorize any plan administrator or fiduciary, insurer and my attorney to release to such provider(s) any and all plan documents, insurance policy and/or settlement information upon written request from such provider(s) in order to claim such medical benefits, reimbursement or any applicable remedies. I authorize the use of this signature on all my insurance and/or employee health benefits claim submissions.

I hereby convey to the above named provider(s), to the full extent permissible under the law and under any applicable employee group health plan(s), insurance policies or liability claim,  any claim, chose in action, or other right I may have to such group health plans, health insurance issuers or tortfeasor insurer(s) under any applicable insurance policies, employee benefits plan(s) or public policies with respect to medical expenses incurred as a result of the medical services I received from the above named provider(s), and to the full extent permissible under the law to claim or lien such medical benefits, settlement, insurance reimbursement and any applicable remedies, including, but are not limited to, (1) obtaining information about the claim to the same extent as the assignor; (2) submitting evidence; (3) making statements about facts or law; (4) making any request, or giving, or receiving any notice about appeal proceedings; and (5) any administrative and judicial actions by such provider(s) to pursue such claim, chose in action or right against any liable party or employee group health plan(s), including, if necessary, bring suit by such provider(s) against any such liable party or employee group health plan in my name with derivative standing but at such provider(s) expenses.   Unless revoked, this assignment is valid for all administrative and judicial reviews under PPACA, ERISA, Medicare and applicable federal or state laws. A photocopy of this assignment is to be considered as valid as the original.   I have read and fully understand this agreement.

55.    In addition to Patients WS, PM, and EK making Plaintiff their Authorized Representative-Claimant, the Assignment is effective to transfer from Patients WS, PM, and EK to Plaintiff all of the claims, rights, causes of action, and legal and equitable remedies available to them, including, but not limited to the specific claims asserted herein.

56.     Plaintiff is informed and believes that such Assignment is not barred by the Plans, but that even if the Plans purported to bar such Assignments, then that bar would be void or voidable because:

a.      The Assignments make Plaintiff the Authorized Representative of Patients WS, PM, and EK for purposes of asserting a benefit (*i.e.*, payment under the Plan or pursing an appeal from an adverse benefit determination). The following regulations were adopted pursuant to ERISA and the Patient Protection and Affordable Care Act (hereinafter, "ACA") and pursuant to: (i) 29 C.F.R. §2560.503-1(b)(4), the Plans shall not "preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination; and (ii) 29 C.F.R. §2590.715-2719(a)(2)(iii), "For purposes of [that] section, references to claimant include a claimant's authorized representative.

b.      The Plans have dealt directly with Plaintiff with actual knowledge of the Assignments, but without any objection to the Assignment, and without giving any notice of any Plan Prohibition on assignment. The Plans have also pre-authorized services or procedures directly with Plaintiff, and paid claims directly to Plaintiff outside of the claim asserted herein without ever contacting, consulting or obtaining any input from those Patients and without challenging or objecting to any of the previous Assignments executed by Plan Beneficiaries outside of the claims asserted herein. Based on this continued course of conduct, Plaintiff has relied on its right to assert claims directly with the Plan or its TPA in continuing to render services (including providing use of a facility) or performing procedures to Patients WS, PM, and EK. By reason of the foregoing, the Defendants are estopped from asserting that claims for reimbursement for medical services or procedures, or any of the other claims asserted herein, are subject to any anti-assignment provision in the Plan.

c.     At no time during the dealings between Plaintiff and Defendants did Defendants ever state that a specific reason for any adverse benefit determination was an anti-assignment provision, nor did they reference a specific anti-assignment provision in any Plan documents.

d.     By reason of the Plans' continuing course of conduct in not asserting or relying on any anti-assignment provision, the Plans have waived any arguable right to argue, assert or rely upon any anti-assignment provision in the Plans.

57.     As it stands, the Plans purport to provide OON benefits to its Plan Beneficiaries. The Plans promise its Plan Beneficiaries the freedom to receive and obtain reimbursement for healthcare services from his or her provider of choice, including services obtained from OON providers. Under the terms of the Plans, the Plans must promptly pay benefits for OON services based upon the usual, customary and reasonable rate ("UCR") for that service in the same geographic area.

### E.     *Defendants' ERISA Violations*

58.     At all relevant times, and with specific respect to Defendants' acts alleged herein, the Defendants, as ERISA fiduciaries to the Plans, delegated all claims administration duties to United. In particular, Defendants, as fiduciaries, are not only responsible for interpreting and applying Plan terms, making coverage and benefit decisions, complying with ERISA's notice and appeal requirements set forth in 29 C.F.R. §2560.503-1 ("ERISA Claims Procedure"), and effectuating benefit payments from Defendants' own assets, but are also responsible for United, the Plan's TPA and co-fiduciary, and its interpretation and application of Plan terms, making coverage and benefit decisions, complying with ERISA's notice and appeal requirements set forth in 29 C.F.R. §2560.503-1, and effectuating benefit payments from Defendants' assets.

59.     As ERISA fiduciaries, Defendants **must discharge its duties with respect to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of … providing benefits to participants and their beneficiaries."** 29 U.S.C. §1104(a)(1). This means, among other things, that Defendants must ensure that its Plans are administered and governed "in accordance with the documents and instruments governing the Plan[s] insofar as such documents and instruments are consistent with [ERISA]." By allowing United to convert and embezzle Plan Assets to pay its own accounts and thereby imposing the liability of the unpaid bills on the Plan Beneficiaries, Patients WS, PM and EK, Defendants have violated their obligations to the Plan and Plan Beneficiaries and breached their fiduciary duties.

60.     Defendants knew or should have known that the Defendants' Plans do not permit it or their TPA to deny or reduce benefits for one United Insured in order to recover "overpayments" that a different United Plan purportedly made with respect to claims submitted on behalf of a different United Insured. The terms of the Plan requires that the Plan actually pay benefits for Covered Services; it does not provide that this payment obligation may be satisfied through a unilateral "reallocation" that effectively takes benefits owed by Defendants' Plan for Covered Services and uses those benefits to offset an alleged and disputed overpayment that United "overpaid" in the past. Especially when those offsets are paid directly to United's own fully insured accounts.

61.     Additionally, the Plans provide that Plan Beneficiaries remain liable for any billed amounts that the Plans refuse to pay OON providers, such as Plaintiff. Thus, United's misconduct, authorized by Defendants, has also imposed a financial liability on Patients WS, PM and EK for treatment that United acknowledged to be a Covered Service.

62.     In addition to Defendants and United violating the terms of the Plan, Defendants and United also breached its fiduciary duty to comply with the minimum requirements for "full and fair review" of claims under ERISA and the regulations promulgated there under. United's failure to actually send checks to Plaintiff in the amounts owed under United Plans governed by ERISA constituted as an "adverse benefit determination" under ERISA that obligated United (as the Plan's TPA) to provide Plaintiff with ERISA mandated notice and appeal rights. United ignored this legal requirement.

63.     The definition of "adverse benefit determination" includes not only "a denial, reduction, or termination of" benefits, but also a "failure to provide or make payment (in whole or in part) for" a benefit. 29 C.F.R. § 2560.503-1(m)(4). United's offsets, therefore, constitute as adverse benefit determinations. Defendants, through United, *failed to treat its unilateral decision to withhold payment as an adverse benefit determination, and did not provide any of the informational items or appellate procedures mandated by the ERISA Claims Procedure*. For example, on the Provider EOBs sent to Plaintiff concerning offset claims, Defendants, through United failed to:

(i)      set forth the specific reason or reasons for the refusal to pay the covered benefits, 29 C.F.R. § 2560.503-1(g)(1)(i);

(ii)     identify the "plan provision" that supported its refusal to actually pay the covered benefits, 29 C.F.R § 2560.503-1(g)(1)(ii);

(iii)    describe any additional material or information necessary for the United Insured or Plaintiff to receive the benefit, 29 C.F.R § 2560.503 1(g)(1)(iii);

(iv)     describe the applicable plan review procedures and time limits applicable thereto, 29 C.F.R § 2560.503-1(g)(1)(iv);

(v)     advise the recipient of the right to bring a civil action under section 502(a) of ERISA following the adverse benefit determination on review, 29 C.F.R. § 2560.503-1(g)(1)(iv);

(vi)     identify the rule or protocol that it relied upon or state that the rule or protocol would be provided upon request, C.F.R. § 2560.503-1(g)(1)(v)(A); and

(vii)     did not provide *any* appeal rights − much less the type of rights set  forth in the ERISA regulations, 29 C.F.R. § 2560.503-1(h).

64.     Because Defendants and United failed to comply with the ERISA Claims Procedure, any administrative remedies are "deemed" exhausted pursuant to 29 C.F.R. § 2560.503-1(l). Exhaustion is also excused because it would be futile to pursue administrative remedies, as Defendants and United do not acknowledge that offsets constitute adverse benefit determinations at all, because neither offers a meaningful administrative process for challenging such offsets.

**F.     _Together  with  United, Defendants Owe  Fiduciary  Duties  to  the Plan Beneficiaries, Patients WS, PM and EK_**

65.     Under ERISA, a self-insured health benefit plan must set forth in a written official plan document or plan instrument specific details regarding the Plan, such as the terms of eligibility for enrollees, the types of benefits covered, and more. Pursuant to public policy set forth in ERISA, as a self-insured welfare benefit plan, the Plans shall be interpreted and implemented solely in the best interests of the Plan Beneficiaries and in accordance with the Plan Documents/Instruments.[13]

*29 U.S.C. § 1104 − Fiduciary Duties*

*Prudent Man Standard of Care* -A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and: (A)

---

[13]*See* 29 U.S.C. § 1104(a)(1)(A)

for the exclusive purpose of providing benefits to participants and their beneficiaries…; (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

66.     Defendant AT&T serves as both the Plan Sponsor and Plan Administrator of the

Plans. Additionally, Plan Sponsor employs Larry Ruzicka who holds the positions of Plan

Administrator for the Plans. Through Mr. Ruzicka's position with the Plans, coupled with the

Form 5500s portraying Mr. Ruzicka as the Plan Administrator, Mr. Ruzicka is charged with the

responsibilities and duties of the Plans' Plan Administrator. For all intents and purposes and in

accordance with ERISA, Defendant Mr. Ruzicka serves as a trustee-like fiduciary of the Plans.

67.     Not only must Defendants, as plan fiduciaries, act in accordance with the Plans'

governing documents and solely in the interests of the Plan Beneficiaries, but Defendants are

also statutorily barred from the following:

### 29 U.S.C. § 1106 – Prohibited Transactions

*Transactions between Plan and Party in Interest* – A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect – transfer to, or use by or for the benefit of a party in interest, of any assets of the plan…

*Transactions between Plan and Fiduciary* – A fiduciary with respect to a plan shall not – (i) deal with the assets of the plan in his own interest or for his own account, (ii) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of in participants or beneficiaries, or (iii) receive and consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

68.     Both Defendants and United, serve as co-fiduciaries to the Plans. Defendants

knowingly empowered United with discretionary authority and control over the claims

administration of the Plans, which includes, but is not limited to, the adjudication of medical

claims (including, but not limited to, full and fair review of appealed claims), determining the

coverage and reimbursements, and the disposition of Plan Assets. Alarmingly, despite the broad power entrusted to United, Defendants failed in their statutory fiduciary responsibility to oversee, check, and properly govern the administration of the Plans in accordance with the Plan Documents and in the best interest of the Plan Beneficiaries.

## COUNTS AGAINST DEFENDANTS

69.     The Plaintiff, as a statutory defined Claimant with valid and unchallenged Assignments, is entitled to ERISA rights "to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review" after Plaintiff legally and administratively exhausts any and all appeal requirements.[14] Therefore the Plaintiff is entitled to pursue Benefit claims: (i) to recover benefits due for already approved claims but abstracted and converted by the Defendants' co-fiduciary, United; (ii) breach of fiduciary duty claims under 29 U.S.C. § 1132(a)(2)  in violation of 18 U.S.C. § 664, 29 U.S.C. § §1104, 1105, 1106(b)(1)(d); injunctive relief to enjoin the Defendants from engaging in prohibited transaction 29 U.S.C. § 1132(a)(3); and injunctive relief to permanently remove the Defendant Larry Ruzicka from serving as fiduciary to the Plan permanently under 29 U.S.C. § 1132(a)(3).

### V.  COUNT ONE

### *Claims under ERISA § 502(a)(1)(b)and 29 U.S.C.§ 1132(a)*

70.     Plaintiff incorporates and realleges the allegations set forth above.

71.     Plaintiff is a statutory defined Claimant with valid and unchallenged Assignments from Patients WS, PM and EK who are Plan Beneficiaries under the Plans. ERISA Claimants are entitled to ERISA rights to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review. It is undisputed and unchallenged by

---

[14]45 CFR §147.136 (a) - Internal claims and appeals and external review processes. (iii) Claimant. Claimant means an individual who makes a claim under this section. For purposes of this section, references to claimant include a claimant's authorized representative.

Defendants that Plaintiff has exhausted administrative appeal requirements. Additionally, Plaintiff is not disputing the Plan's determination of Allowed Amounts of $3,457.70, $45,764.17 and $12,201.88. However, Plaintiff is disputing that it has never received benefits payments checks **"QK92682221 - $48,720.21"**, and **"QK92682080 - $27,757.12"** that were either embezzled by United and/or unpaid to Plaintiff. Plaintiff is seeking a judgment for Plaintiff to receive the benefits it is legally due and entitled to, but were instead converted by the Defendants. As the Plaintiff-Claimant of Patients WS, PM and WK, Plaintiff is harmed or injured in the amount of $56,094.47 because the total Entitled Amount was determined by Defendants, through United, to pay to Plaintiff but Plaintiff never received the total Entitled Amount, and instead, Defendants, with United, either embezzled and/or converted the total Entitled Amount to United's own benefit. Plaintiff is entitled to recover benefits due to it and Patients WS, PM, and WK under the terms of the Plans and applicable law, including (but not limited to) ERISA § 502(a)(1)(B).

## VI.COUNT TWO

### *Breach of Fiduciary Duty and Co-fiduciary Liability under 18 U.S.C. § 664 and 29 U.S.C. § §1104, §1105, §1106(b)(1)(d)*

72.     Plaintiff incorporates and realleges the allegations set forth above.

73.     Defendants as Plan Fiduciaries owe Plaintiff statutory fiduciary duties under 29 U.S.C. § 1104 to discharge its duties in the best interest of all Plan Beneficiaries, including but not limited to, Patients WS, PM and EK, by safeguarding the Plan Assets and responsibly selecting a TPA as a co-fiduciary in accordance with 29 U.S.C.§ 1105;

74.     Defendants knew or should have known that ERISA prohibits Plan Asset embezzlement  under 18 U.S.C. §664 and self-dealing under 29 U.S.C. §1106, but Defendants continuously and knowingly failed in their statutory duties to remedy the fact that their co-

fiduciary has systematically and historically abstracted, converted, and otherwise embezzled Defendants' Plan Assets purportedly meant for the Plaintiff, but were instead for the use of the other Strangers Plans that were fully-insured Plan member of United's own account.

75.     Even after Defendants were repeatedly notified by Plaintiff of evident embezzlement, self-dealing, and conflicts of interest, Defendants knowingly failed to do its due diligence and timely investigate the alleged violations and failed to take corrective actions to remedy detected offences in violation of 18 U.S.C. §664 and 29 U.S.C. §§1104, 1105, 1106(b)(1)(d). Instead, Defendants rather continued to conspire, authorize, and orchestrate with United, to conceal the alleged embezzlement and self-dealing.

76.     As a direct result of Defendants' breach of fiduciary duties under the statutes, "a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary," [15] Plaintiff, ALTERNATIVELY, seeks a surcharge remedy to obtain equitable relief for violations of 18 U.S.C. §664 and 29 U.S.C. §§1104, 1105, 1106(b)(1)(d), as evidenced on administrative records has shown that the violation of the fiduciary duty imposed upon that fiduciary and the actual harm was directly and legally caused by the Defendants violation.

## VII. COUNT THREE

### *Injunctive Relief to Stop ERISA Prohibited Cross-Plan Overpayment Recoupment*

77.     Defendants have historically engaged in systematic plan-wide cross-plan overpayment recoupment  by converting the Plans' benefits payments owed to Plaintiff from self-insured plans to  United's fully insured plans; thus, ultimately paying to its own account as evidenced by the claims subject to this action. Defendants' reckless violation of its fiduciary duties and embezzlement of plan assets are strictly prohibited under 18 U.S.C. §664 and 29 U.S.C. §§1104, 1105, 1106(b)(1)(d), and through its prohibited actions, Defendants harmed

---

[15] *Cigna v. Amara,* 131 S. Ct. 1866 (2013).

every Plan Beneficiary under the Plans. Plaintiff is seeking injunctive relief to enjoin Defendants from engaging in the same systematic and historical fiduciary breach used to harm the Plan Beneficiaries by unlawfully abstracting and converting a Plan Beneficiaries' benefit payments owed to Plaintiff to the use of another and ultimately its own account. This injunctive relief is made in accordance with 29 U.S.C. § 1132(a)(3).

## VIII. COUNT FOUR

### *Injunctive Relief to Remove Larry Ruzicka as Fiduciary and Plan Administrator to the Plan and United as Co-Fiduciary and TPA to the Plan*

78.     Defendant, Larry Ruzicka, and co-fiduciary United, committed fiduciary breaches with actual knowledge, malice, and intent even after repeated notices and alerts from Plaintiff by recklessly disregarding his fiduciary duties in accordance with federal and state regulations. Defendant, Larry Ruzicka, and co-fiduciary United are continuously and irrevocably harming and injuring Plan Beneficiaries with no intention to stop. Plaintiff is seeking injunctive relief or a declaratory order to remove Defendant, Larry Ruzicka, as a fiduciary and administrator to the Plans permanently, and to prevent Defendant, Larry Ruzicka from ever being a fiduciary and administrator to any ERISA governed plan in the future. Plaintiff is also seeking injunctive relief or a declaratory order to remove United as a co-fiduciary and TPA to the Plans permanently.

## IX. COUNT FIVE

### *Failure to Provide Full and Fair Review*

79.     Plaintiff incorporates and realleges the allegations set forth above.

80.     Although Defendants were obligated to do so, Defendants failed and refused to provide a "full and fair review" to Plaintiff on Patients WS, PM and EK's claims, on their own and by and through their agent and co- fiduciary United, and otherwise failed to make necessary disclosures pursuant to 29 U.S.C.§1133 and the regulations promulgated under ERISA. Plaintiff

appealed at least three times for Patients WS, PM and EK's claim and exhausted all of its administrative requirements under the Plans before bringing this lawsuit.

81.     Defendants' misconduct recited above was the direct and proximate cause of Plaintiff's harm.

## X. COUNT SIX

### *Failure to Provide Requested and Required Documentation*

82.     Plaintiff incorporates and realleges the allegations set forth above.

83.     Defendants have not provided the following requested documents, which ERISA requires it to produce to Plaintiff upon request: a complete and accurate master governing plan document, a complete and accurate SPD, the complete administrative claim file, and all documents showing the actual basis for the adverse benefit determination and the methodology used in applying that basis and making that determination.

84.     Defendants' failure to comply with Plaintiff's request for information pursuant to 29U.S.C.§1132(c)(1)(B) provides a civil penalty/sanction in the amount of $110.00 per day for such failure or refusal to provide the requested documents and information and Plaintiff is entitled to receive this sanction against Defendants, in addition to an order from this Honorable Court compelling Defendants to produce the requested documents. Defendants have received numerous written requests (on at least three separate occasions) from Plaintiff specifically requesting these documents, but Defendants knowingly and intentionally failed and refused to provide them, in violation of ERISA, causing harm and prejudice to Plaintiff. Defendants' failure to disclose the requested plan documents was intentional, willful, and committed in bad faith, to further deceive Plaintiff with misrepresentations as to benefits covered under the plan.

# XI.COUNT SEVEN

### *Attorney's Fees*

85.     Plaintiff has presented claims to Defendants demanding payment for the value of the services described above. More than 30 days have passed since those demands were made, but Defendant has failed and refused to pay Plaintiff. As a result of Defendants' failures to pay these claims, Plaintiff was required to retain legal counsel to institute and prosecute this action. Plaintiff is therefore entitled to recover reasonable attorney's fees for necessary services rendered in prosecuting this action and any subsequent appeals.

86.     Plaintiff is also entitled to an award of attorney's fees on its ERISA claims. ERISA allows a court, in its discretion, to award "a reasonable attorney fee and costs of action to either party."[16]

87.      Plaintiff demands a jury trial on all issues for which trial by jury is permitted.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Honorable Court issue judgment against Defendants granting Plaintiff the following relief:

1.     Plaintiff's actual damages;

2.     Statutory penalties and surcharges permitted by law;

3.     Attorney's fees, including attorney's fees in the event of an appeal of this lawsuit;

4.     Prejudgment and post-judgment interest at the highest rates permitted by law;

5.     An injunction and/or other equitable relief as appropriate to arrest, correct, and prevent acts and omissions by Defendants that violate the Plan and/or ERISA, including, but not limited to, removal of Larry Ruzicka as a plan fiduciary and United as a TPA and co-fiduciary;

---

[16]29U.S.C.§1132(g)(1).*See Hardt v .Reliance Std. Life Insurance Co*., 130 S.Ct .2149 ,2152 (2010);*see also Baptist Mem .Hosp. -Desoto, Inc.v .Crain Auto.,Inc.,* 392 Fed. Appx. 289, 299 (5th Cir. Miss. 2010).

6.      Plaintiff's costs of court; and

7.      All other relief, legal and equitable, to which Plaintiff may be justly entitled.

Respectfully submitted,

*/s/ Ebad Khan*
Ebad Khan
State Bar#: 24092625
Federal Bar #:2810999
Email:
ekhan@trinityhealthcarenetwork.com
17400 Red Oak Drive
Houston, Texas 77090
Telephone: 832.202.6028
Facsimile: 832.446.6961

ATTORNEY-IN-CHARGE
FOR PLAINTIFF,
*REDOAK HOSPITAL, LLC*