IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| REDOAK HOSPITAL, LLC<br><br>   Plaintiff,<br><br> v.<br><br>AT&T SERVICES, INC.<br><br>   Defendant. | Case No. 16-cv-1542-lnh |

### MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

  Plaintiff RedOak Hospital, LLC filed this civil action alleging that defendant AT&T Services, Inc. violated various provisions of the Employee Retirement Income Security Act of 1976. According to RedOak's First Amended Complaint (which spans 44 pages, includes 16 footnotes, and sets forth seven separate counts under ERISA), AT&T Services participated in an "elaborate scheme" to "abstract, withhold, embezzle and convert" plan assets that were allegedly owed to RedOak pursuant to purported assignments. However, RedOak's kitchen-sink approach to pleading and the alleged complexity of this "elaborate scheme"—which in reality is nothing more than an accounting dispute between RedOak and AT&T Services' third-party benefits administrator—cannot obscure the fact that all of RedOak's claims should be dismissed for a few simple reasons.

  First, the complaint should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) because RedOak lacks standing to sue under ERISA. It is well-established that plan providers, such as RedOak, do not have standing to sue under ERISA on their own behalf. Instead, they must proceed pursuant to an assignment from a participant or beneficiary.

1

Although RedOak purports to have assignments that authorize it to sue on behalf of three of its former patients, these assignments are invalid because the benefit plans at issue expressly prohibit plan participants from assigning claims for benefits to third-parties. Additionally, by their own terms, the assignments do not encompass all of the claims RedOak asserts against AT&T Services. In particular, there is nothing in the purported assignments to suggest that any of the patients intended to assign RedOak the right to pursue breach of fiduciary duty claims, claims related to the disclosure of plan documents, claims challenging the adequacy of the third-party administrator's claims process, or any other "non-benefit" claims.

In addition to lacking standing, the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because none of counts identified in the complaint state a claim upon which relief may be granted. RedOak's claim for benefits under 29 U.S.C. § 1132(a)(1)(B) (Count I) fails because RedOak has already received all it is owed under the plan: RedOak was previously overpaid by United and United credited those overpayments against the amounts payable for the treatment here. This dispute is over accounting, not whether there are any benefits owed under the plan.

RedOak's breach of fiduciary duty claims under 29 U.S.C. § 1132(a)(2) and § 1132(a)(3) (Counts II – IV) are subject to dismissal for two reasons. First, a plan administrator does not breach its fiduciary duty merely by denying a participant benefits. Second, RedOak has failed to allege adequately that AT&T Services was a fiduciary, let alone that AT&T Services participated in the alleged fiduciary breaches at issue.

RedOak's request for civil penalties (Count VI) should be dismissed because plaintiff has not alleged that it submitted a timely request for documents to AT&T Services. Finally,

RedOak's "full and fair review claim" (Count V) and its claim for attorney's fees (Count VII) are both subject to dismissal on the ground that there are no such claims under ERISA.

I.   **BRIEF STATEMENT OF ALLEGATIONS**

   A.   **The Plans**

AT&T Inc. sponsors a variety of employee benefit plans, two of which are the AT&T Umbrella Benefit Plan No. 1 and the AT&T Umbrella Benefit Plan No. 3 ("the Umbrella Plans"). These plans provide a variety of benefits to both current and former AT&T employees through a number of different benefit "programs." The terms of the programs are set forth in summary plan descriptions, which the Umbrella Plans incorporate by reference.[1] The Umbrella Plans provide, *inter alia*, that the programs were established for the exclusive benefit of plan participants and that the benefits set forth therein cannot be assigned to third-parties. In particular, Sections 12.1 and 12.2 of the Umbrella Plans provide as follows:

> **12.1 EXCLUSIVE BENEFIT.** This plan and the Programs have been established for the exclusive benefit of Participants and Beneficiaries, and, except as otherwise provided herein, all contributions under the Plan or any Program may be used only for such purposes or to pay reasonable expenses of the Plan or a Program.
>
> **12.2 NON-ALIENATION OF BENEFITS.** No benefit, right or interest of any Participant or any Beneficiary under the Plan or any Program shall be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumberance or charge, seizure, attachment or legal, equitable or other process, or be liable for, or subject to, the debts, liabilities or other obligations of such person, except as otherwise required by law or as otherwise provided in a Program.

(Ex. A, Umbrella Plan No. 3, at 26; Ex. B, Umbrella Plan No. 1, at 29.)

---

[1] Copies of the AT&T Umbrella Benefit Plan No. 1, the AT&T Umbrella Benefit Plan No. 3, and the governing program documents are attached as exhibits to AT&T Services' motion to dismiss. The Court may consider these documents when ruling on Defendants' motion to dismiss because the benefit plans are referenced in the First Amended Complaint and are central to RedOak's claims. *See*, *e.g.*, *Lawson v. Nokia Siemens Networks U.S. LLC Severance Pay Plan*, No. 14-cv-814-A, 2014 WL 7398946, at *4 (N.D. Tex. Dec. 29, 2014).

The programs covered by the Umbrella Plans include a number of health benefit plans. The plans at issue here are self-insured by the plan sponsor, AT&T Inc., which means that AT&T pays the benefits covered from its own assets. (Cmplt. ¶¶ 5-6, 19-20.) Although both of the Umbrella Plans name AT&T Services as the formal plan administrator, AT&T Services delegated responsibility for processing and deciding participants' claims for benefits to its "Benefits Administrator," UnitedHealthcare, Inc. (Ex. D, Employee Health Program Document, at 114-15, 159-60; Ex. C, Retiree Health Program Document, at 169, 208, 220.) The plans also utilize United's network of doctors and service providers and encourage participants to obtain services from an "in-network" provider. (Cmplt. ¶¶ 22-23; Ex. D, Employee Health Program Document, at 56-59; Ex. C, Retiree Health Program Document, at 86-90). While the plans provide benefits to participants regardless of whether they visit an in-network or out-of-network provider, participants are reimbursed at a higher rate if they visit providers that are part of United's network. (*Id.*)

      **B.**    **RedOak's Treatment of Patients WS, PM, and EK**

Between December 2013 and February 2014, RedOak provided unspecified services to three individuals covered by the health plans at issue, patients WS, PM, and EK. (Cmplt. ¶¶ 30, 34, 38.) Prior to providing treatment, RedOak required WS, PM, and EK to execute its own "Legal Assignment of Benefits and Designation of Authorized Representative" form. (Cmplt. ¶ 54.) RedOak alleges that this document not only allowed it to proceed as the patients' authorized representative for purposes of the administrative claims procedure, but that it also conferred "derivative standing" on RedOak, and constitutes a valid assignment of any legal claims the patients may have under ERISA, including the claims at issue in this suit. (Cmplt. ¶ 55.)

4

After RedOak provided the services to WS, PM, and EK it sent a bill to United for reimbursement on behalf of the patients.[2] United reduced the billed amount to reflect the usual, customary, and reasonable rate for the services billed. Then, applying the plans' terms, United allowed reimbursement for half of the usual, customary, and reasonable rate. (*See* Cmplt. Ex. B, Provider Explanation of Benefits.) RedOak does not dispute United's analysis of the benefits to which RedOak was entitled under the Plan. (Cmplt. ¶¶ 45, 71.) Next, in order to recover an overpayment that United had previously paid to RedOak for the treatment of participants of a different plan, United notified RedOak through an ERA 835 form and an Explanation of Benefits form that it was recouping the overpayment by offsetting it against the amount RedOak was entitled to under the AT&T plans. (Cmplt. Ex. B, at 4 ("The amount payable for this explanation of benefits has been used to reduce an overpayment made on the given claim(s)."; Cmplt. ¶¶ 32, 37, 41.) RedOak disputes United's decision to pay for the services rendered through an offset, and further alleges that it exhausted the administrative claims procedure set forth in the plan for contesting benefit determinations. (Cmplt. ¶ 46.)

    **C.**    **RedOak's Complaint**

On June 1, 2016, RedOak filed suit against AT&T Inc., AT&T Savings and Security Plan, and an alleged plan administrator, Larry Ruzicka. (Dkt. #1.) On July 12, 2016, RedOak filed the First Amended Complaint, which is the operative complaint, pursuant to Fed. R. Civ. P. 15(a)(1). (Dkt. #7.) Although the First Amended Complaint changed the named defendants to include AT&T Inc., AT&T Umbrella Benefit Plan No. 1, AT&T Umbrella Benefit Plan No. 3, and Ruzicka, the Court entered an order on September 6, 2016, substituting AT&T Services for these defendants, all of which were improvidently joined. (Dkt. #27.)

---

[2] The plan provides that United may pay providers directly for services they provide to participants if the participants authorize direct payment. (Ex. C, Retiree Health Program, at 164; Ex. D, Employee Health Program, at 115.)

RedOak alleges the following seven counts in its complaint:

- Count I – Claim for benefits under 29 U.S.C. § 1132(a)(1)(B).  RedOak contends that AT&T Services is liable for the benefits under the plan and that United's offset of the amount owed to recover prior overpayments that were made to RedOak was wrong.

- Count II – Claim for breach of fiduciary duty and co-fiduciary duty under 29 U.S.C. § 1132(a)(2) and § 1132(a)(3).  RedOak contends that AT&T Services violated its fiduciary duties by failing to "remedy the fact that [United] has systematically and historically abstracted, converted, and otherwise embezzled [AT&T Services'] plan assets."

- Count III – Claim for breach of fiduciary duty seeking an injunction prohibiting the AT&T Services "engaging in the same systematic and historical fiduciary breach used to harm [RedOak]."

- Count IV – Claim for breach of fiduciary duty seeking removal of Larry Ruzicka and United as plan administrators based on their "continuously and irrevocably harming and injuring Plan Beneficiaries with no intention to stop."

- Count V – Claim alleging that United and the previously dismissed defendants failed to provide a "full and fair review" of RedOak's administrative benefits claims in accordance with 29 U.S.C. § 1133.

- Count VI – Claim for civil penalties under 29 U.S.C. § 1132(c)(1)(B) based on failure to provide plan documents and administrative record.

- Count VII – Claim for attorney's fees under 29 U.S.C. § 1132(g)(1).

## II.     ARGUMENT

### A.     RedOak's Complaint Must be Dismissed With Prejudice Pursuant to Fed. R. Civ. P. 12(b)(1) Because RedOak Lacks Standing to Bring this Lawsuit

The entirety of RedOak's complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) for the simple reason that RedOak does not have standing to bring any of the ERISA claims set forth therein. ERISA's civil enforcement provisions strictly limit the categories of individuals and entities that are authorized to prosecute ERISA claims.  In particular, 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3) provide that only the Secretary of Labor, or a  plan "participant," "beneficiary," or "fiduciary" may bring ERISA breach of fiduciary duty claims. The class of individuals empowered to bring claims for benefits

6

under 29 U.S.C. § 1132(a)(1)(B) or claims related to an administrator's alleged failure to supply requested information under 29 U.S.C. § 1132(c)(1) is even more limited: under these provisions the only persons empowered to file suit are the Secretary, plan participants, or plan beneficiaries. The Fifth Circuit has consistently held that healthcare providers, such as RedOak, are not among the aforementioned categories of individuals or entities with standing to sue under ERISA. *Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1288-89 (5th Cir. 1988), *overruled in part on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012) (en banc) (per curiam) ("Where Congress has defined the parties who may bring a civil action founded on ERISA, we are loathe to ignore the legislature's specificity. Moreover, our previous decisions have hewed to a literal construction of § 1132(a).").

To circumvent the fact that it does not have statutory standing to bring claims under any of ERISA's civil enforcement provisions, RedOak alleges that it has "derivative standing" pursuant to an assignment from three patients it treated—WS, PM, and EK. Although courts have recognized that service providers can acquire derivative standing if they obtain a valid assignment of ERISA claims from a person or entity empowered to sue under the statute, *Tango Transport v. Healthcare Financial Services LLC*, 322 F.3d 888, 891-92 (5th Cir. 2003), the alleged assignments that RedOak claims to have obtained in this case fail to confer standing for two reasons. First, each one of the purported assignments are rendered invalid by the Umbrella Plans' express anti-assignment provisions. Second, the assignments themselves are not broad enough to give RedOak derivative standing to bring claims for breaches of fiduciary duty, civil penalties under 29 U.S.C. § 1132(c)(1)(B), or any other type of "non-benefit" ERISA claim.

### 1. *RedOak's Assignment is Rendered Invalid by the Plan's Anti-Assignment Provision*

RedOak's standing to bring the claims at issue rises and falls entirely on the alleged assignments it claims to have received from patients WS, PM, and EK. The Fifth Circuit has recognized that an anti-assignment clause set forth in a participant's benefit plan is enforceable and will operate to render a purported assignment by a plan participant invalid. *La. Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529, 537 (5th Cir. 2006) ("We have [] held that, absent a statute to the contrary, an anti-assignment provision in a plan is permissible under ERISA."); *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 352 (5th Cir. 2002). Here, the three patients' benefits were governed by the terms of the Umbrella Plans, both of which included an anti-assignment clause that provided that "[n]o benefit, right or interest of any Participant or any Beneficiary under the Plan or any Program shall be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumberance or charge, seizure, attachment or legal, equitable or other process . . . except as otherwise required by law or as otherwise provided in a Program." (Ex. A, Umbrella Plan No. 3, at 26; Ex. B, Umbrella Plan No. 1, at 29.) Because the law does not require plans to allow assignments and the program documents do not provide that they are permitted, the assignments were void *ab initio* and fail to confer derivative standing on RedOak.

Faced with the invalidity of its purported assignments, RedOak raises two arguments in the complaint for why the anti-assignment clause is itself void and unenforceable. First, RedOak contends that the anti-assignment clause conflicts with the Department of Labor's regulations, which provide that a benefit plan governed by ERISA must allow claimants to file claims through "authorized representatives." *See* 29 C.F.R. § 2560.503-1(b)(4). This argument disregards the important distinction between "authorized representatives" and assignees. In the

8

case of an authorized representative, the claimant remains the real party-in-interest and is the beneficiary of any recovery; the authorized representative is merely an intermediary or "spokesperson" acting on their behalf. By contrast, an assignee is the lawful owner of the claim, is entitled to prosecute and dispose of the claim without consultation with the assignor, and is itself entitled to any recovery. *See, e.g.*, *Quality Infusion Care, Inc., v. Health Care Service Corporation*, 628 F.3d 725, 729 (5th Cir. 2010) ("After an assignment, the assignor's right to performance is extinguished in whole or in part and the assignee acquires a right to such performance." (quoting RESTATEMENT (SECOND) OF CONTRACTS § 317(1)). *See also Almont Ambulatory Surgery Ctr., v. UnitedHealth Grp. Inc.*, 99 F. Supp. 3d 1110, 1143-45 (C.D. Cal. 2015) (drawing distinction between providers proceeding as authorized representatives and assignees); *University of Wisconsin Hospitals and Clinics Authority v. Costco Employee Benefits Program*, No. 15-cv-412-bbc, 2015 WL 9455851, at *2 (W.D. Wis. Dec. 23, 2015) (rejecting as "legally frivolous" the argument that "authorized representatives" have standing under ERISA). Thus, a plan provision precluding the assignment of claims is not inconsistent with, nor rendered void by, a plan provision allowing a claimant to enlist the assistance of authorized representatives during the administrative claims process. Both provisions exist here. (*See* Ex. A, Umbrella Plan No. 3, at 26; Ex. C, Retiree Program Document, at 164.) RedOak's standing as nothing more than a provider to, and authorized representative of, AT&T plan participants requires dismissal with prejudice of its lawsuit against AT&T Services.

Next RedOak argues that based on the plans' "course of conduct" with respect to the benefit claims at issue, AT&T Services is "estopped from asserting that [RedOak's] claims . . . are subject to any anti-assignment provision in the Plan." (Cmplt. ¶ 56b.) This argument fails

because the course of conduct described in the complaint is so perfunctory and vague that it cannot support a plausible estoppel claim against AT&T Services.

First, and foremost, RedOak fails to identify a "material misrepresentation," which it must do to state an estoppel claim. *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444-45 (5th Cir. 2005) ("To establish an ERISA-estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances."). RedOak only asserts that "the Plans" did not object to the assignment, United pre-authorized services that were performed by RedOak, and United paid RedOak directly for services it provided in the past. (Cmplt. ¶ 56(b).) None of these actions constitutes a representation, either explicitly or implicitly, that the assignments were valid or that the anti-assignment clause did not apply. RedOak does not allege that it ever inquired as to the validity of the assignments; nor does RedOak explain how an assignment is created by a third-party administrator's pre-authorization of services or payment of a participant's benefits to a provider directly, when the plan terms so permit. As explained above, AT&T Services can accept RedOak as an "authorized representative" for purposes of determining whether WS, PM and EK are entitled to benefits without having to recognize that RedOak had a valid assignment of their claims.

RedOak's estoppel argument is also unavailing because AT&T Services cannot be bound by United's representations. Although RedOak alleges generally that it "dealt directly with the Plans," the only specific allegations in the complaint relate to its dealings with United. There are no specific allegations that RedOak dealt with AT&T Services. RedOak does not and cannot in good faith allege that United, as the third-party benefits administrator, has the authority to speak on behalf of AT&T Services or the plans with respect to any matter other than coverage issues

10

and claims for benefits. In fact, the plan provides that "[t]he Plan Administrator reserves the right to strictly enforce each and every Plan provision at any time without regard to its prior actions and decisions," (Ex. C, Retiree Program Document, at 203; Ex. D, Employee Program Document, at 155), and that participants may not rely on any written or oral statement with regard to the plan "unless that person is authorized to provide the statement by the Plan Administrator." (Ex. A, Umbrella Plan No. 3, at 17; Ex. B, Umbrella Plan No. 1, at 20.) In light of these clear plan provisions, RedOak's contention that it relied on United's waiver of the anti-assignment clause or its recognition of the assignments is unreasonable. *High v. E-Systems Inc.*, 459 F.3d 579-80, (5th Cir. 2006) (requiring plaintiff to establish that they relied on a material misrepresentation and that such reliance was reasonable to state an estoppel claim in an ERISA case); *Borst v. Chevron Corp.*, 36 F.3d 1308, 1323 (5th Cir. 1994) (holding that an ERISA plan can only be amended when done so in writing and pursuant to the formal plan amendment procedures set forth in 29 U.S.C. § 1102(b)(3).)

### 2. *RedOak's Alleged Assignment Does Not Confer Derivative Standing With Respect to "Non-Benefit Claims"*

RedOak argues that the assignments it requires its patients to consent to not only give it standing to seek benefits under the plan, but also give it standing to pursue other claims under ERISA, including breach of fiduciary duty (Counts II – IV), a failure to provide plan documents (Count V), and a failure to afford participants "full and fair review" of their claims (Count VI). These claims must be dismissed on the ground that the alleged assignment form upon which RedOak relies, which is not recognized by the plans, is itself limited to claims for medical benefits. Even where a valid assignment exists, the Fifth Circuit has instructed that the assignment is to be narrowly construed, and a plan participant only assigns the rights and claims explicitly set forth in the assignment. *Texas Life, Accident & Hosp. Ins. Guarantee Ass'n v.*

*Gaylord*, 105 F.3d 210, 215 (5th Cir. 1997) ("Because an assignment of a fiduciary duty breach claim affects all plan participants, and unsuccessful claims can waste plan resources that are meant to be available for employees' retirements, these claims are not assigned by implication or by operation of law. Instead, only an express and knowing assignment of an ERISA fiduciary breach claim is valid."); *Texas General Hospital, LP v. United Healthcare Services, Inc.*, No. 15-cv-2096, 2016 WL 3541828, *8-9 (S.D. Tex. June 28, 2016) (collecting cases and following the "vast majority" of courts in rejecting the contention that "assignments of ERISA benefits claims [also] assigns non-benefits claims.").

Here, the RedOak assignment form upon which it relies does not authorize it to pursue the claims described above and set forth in Counts II – VII of the First Amended Complaint. That form states in relevant part:

> In considering the amount of medical expenses to be incurred, I, the undersigned, . . . hereby assign and convey . . . ***all medical benefits and/or insurance reimbursement***, if any otherwise payable to me for services rendered from [RedOak], regardless of [RedOak] managed care network participation status. . . . I hereby convey to [RedOak], . . . any claim, chose in action, or other right I may have to such group health plans, health insurance issuers or tortfeasor insurer(s) ***under any applicable insurance policies, employee benefits plan(s) or public policies with respect to medical expenses incurred as a result of the medical services I received*** from [RedOak.]

(Cmplt. ¶ 54.) This assignment is entirely tied to claims for medical benefits and says nothing with respect to claims based on an alleged breach of fiduciary duty, claims related to an alleged failure to provide plan documents, or claims based on a failure to provide "full and fair review," all of which involve statutory rights bestowed upon plan participants. The courts have been loathe to extend plan providers the full breadth of participants' rights under ERISA absent an "express and knowing" assignment of those rights, which does not exist here. *See, e.g.*, *Texas*

*Life, Accident & Hosp. Ins. Guarantee Ass'n*, 105 F.3d at 215 ("[O]nly an express and knowing assignment of an ERISA fiduciary breach claim is valid.").

### B.  RedOak Further Fails to State a Claim Under Fed. R. Civ. P. 12(b)(6)

Dismissal of each of RedOak's counts is further warranted pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief may be granted.[3]  As explained below, RedOak either fails to name the proper defendant, fails to allege any personal involvement on behalf of AT&T, fails to seek relief to which it may be entitled under ERISA, or otherwise fails to plausibly allege a claim for relief.

#### 1.  *Claim for Benefits Under 29 U.S.C. § 1132(a)(1)(B)*

A threshold ground for dismissing RedOak's claim under § 1132(a)(1)(B) is that RedOak is not making a claim for "benefits due to [it] under the terms of [a] plan." 29 U.S.C. § 1132(a)(1)(B).  This is not a case where benefits have been denied; this is a dispute over the manner by which the benefits have been paid.  While ERISA's claim provision in 29 U.S.C. § 1132 provides a mechanism to challenge a denial of benefits, it does not cover the accounting dispute at issue here.

Further, to state a claim under 29 U.S.C. § 1132(a)(1)(B), a participant must point to the plan provision upon which its claim to benefits entitlement is based. RedOak points to no plan provision allowing it to keep the overpayment it received and it points to no plan provision precluding the offset methodology United applied.  Nothing in ERISA's civil enforcement provisions allows a claimant to receive anything other than what the plan terms provide.  Not

---

[3] RedOak's own recognition that all but its benefits claim lack merit is evident from its actions in the same cookie-cutter cases it filed against Marathon Oil Company, Macy's Inc., and Gap, Inc. In the Marathon and Macy's cases, when faced with a motion to dismiss, RedOak chose to voluntarily dismiss its breach of fiduciary duty, document disclosure, and full and fair review claims rather than defend them.  *See Red Oak Hospital, LLC v. Macy's Inc.*, 16-cv-01783 (S.D. Tex.), dkt. ## 18, 19; *Red Oak Hospital, LLC v. Marathon Oil Co.*, 16-cv-01882 (S.D. Tex.), dkt. ##19, 20.  In the Gap, Inc. case, when questioned by Judge Rosenthal regarding Counts II-IV, RedOak acknowledged that they lacked merit and could be dismissed.  *Redoak Hospital, LLC v. Gap, Inc.*, H-16-1303 (S.D. Tex.), dkt. #23 at 6-9.

only has RedOak not been denied benefits, but to allow RedOak to retain the previous overpayments from United while also requiring AT&T Services to pay RedOak an additional amount, would give RedOak a windfall. For this reason alone, RedOak's claim under 29 U.S.C. § 1132(a)(1)(B) fails. *See Electrostim Medical Services, Inc. v. Health Care Services Corp.*, 962 F. Supp. 2d 887, 905 (S.D. Tex. 2013) (dismissing ERISA benefits claim because the complaint failed to identify plan terms entitling the plaintiff to reimbursement); *Sleep Lab at West Houston v. Texas Children's Hospital*, No. H-15-0151, 2015 WL 3507894, at *10 (S.D. Tex. 2015) (dismissing claim under § 1132(a)(1)(B) on the ground that complaint failed to "identif[y] a plan term that was breached" and failed to "allege[] that any of the defendants exercised actual control over the denial of benefits").

RedOak's claim under 29 U.S.C. § 1132(a)(1)(B) fails for yet another reason: AT&T Services is not a proper defendant. The Fifth Circuit has employed a "restrained functional test" for purposes of identifying the proper party defendant in cases involving claims under 29 U.S.C. § 1132(a)(1)(B). *Lifecare Management Services LLC v. Insurance Management Administrators Incorporated*, 703 F.3d 835, 844 (5th Cir. 2013). This test looks to whether the named defendant had "actual control" over the allegedly improper benefits decision. *Id.* Here, the plan has delegated control over the claims process and responsibility for benefits claims decisions to United. (Ex. D, Employee Health Program Document, at 169, 204; Ex. C, Retiree Health Program Document, at 119, 155.) RedOak admits that its claims were denied by United and it alleges no facts showing or even inferring that AT&T Services influenced United's decision. RedOak's effort to litigate its accounting dispute with United as a denial of benefits claim against AT&T Services stretches ERISA's civil enforcement provisions far beyond the bounds envisioned by Congress.

### 2.     *Breach of Fiduciary Duty Claims under 29 U.S.C. § 1132(a)(2) and § 1132(a)(3)*

Counts II – IV of the complaint, all of which are premised on an alleged breach of fiduciary duty, also hould be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  First, RedOak's complaint alleges nothing more than a mere denial of benefits which, regardless of the reason for the denial, cannot also support a breach of fiduciary duty claim. *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) ("[Plaintiff's] efforts to justify assertion of a breach of a fiduciary duty claim against the Plans by distinguishing such a claim from his claims for coverage and benefits claims are woefully unavailing. . . . Because Tolson has adequate redress for disavowed claims through his right to bring suit pursuant to section 1132(a)(1), he has no claim for breach for fiduciary duty under section 1132(a)(3)."). RedOak's contention that United's reduction of payment through the offset of an overpayment constitutes a breach of fiduciary duty, and its efforts to impute that alleged breach to AT&T Services, is frivolous on its face. If RedOak believes that it is entitled to certain benefits under the plan, the appropriate and exclusive vehicle for obtaining such benefits is by bringing a claim under 29 U.S.C. § 1132(a)(1)(B) against the person or entity that has authority for deciding and paying benefit claims, which in this instance is United.

Even if United's benefits decision could constitute a breach of fiduciary duty claim, which it clearly cannot, this claim fails as a matter of law because nothing in RedOak's complaint shows that AT&T Services had any involvement in United's decision, let alone acted as a fiduciary. The threshold question in every fiduciary breach claim is whether the defendant was acting as a fiduciary with respect to the wrongdoing alleged in the complaint. *Pegram v. Hedrich*, 530 U.S. 211, 225-26 (2000). The Fifth Circuit has recognized this critical principal in holding that a party is only a fiduciary to the extent that they are engaged in a fiduciary act.

*Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters. Inc.*, 793 F.2d 1456, 1459-60 (5th Cir. 1986) (holding that a party is an ERISA fiduciary "only with respect to those aspects of the plan over which he exercises authority or control").  Nothing in RedOak's amended complaint points to any involvement by AT&T Services in United's determination that RedOak's bill for services should be offset by an existing overpayment. RedOak alleges that *United* decided to deny RedOak's claims for benefits on behalf of its patients and that *United* "embezzled" the plans' funds. RedOak's conclusory allegations that AT&T Services breached its fiduciary duty fail to meet even the minimum pleading requirements of showing that AT&T Services, on its own behalf, exercised authority and discretion in United's review and authorization of RedOak's claims.

RedOak's attempt to implicate AT&T Services in what is nothing more than a payment dispute between it and United, by framing its claim as one for breach of the fiduciary duty to monitor, is equally disingenuous.  First, a duty to monitor claim is derivative in nature; to exist, a RedOak must adequately state an underlying claim for breach of fiduciary duty.  *In re BP PLC Securities Litigation*, No. 4:10-cv-4214, 2015 WL 6674576, at *9 (S.D. Tex. Oct. 30, 2015).  As discussed above, benefit claims decisions, such as those at issue here, do not constitute breaches of fiduciary duty.  Second, a duty to monitor claim also requires the plaintiff to "plead a 'red flag'," that is, RedOak must allege facts sufficient to support a finding that AT&T Services had notice of a possible breach of fiduciary duty by its appointee but failed to act.  *Id*. at *11.  RedOak has failed to allege any such facts.  RedOak has failed to plead any facts that AT&T Services was aware of, but failed to stop, United from "embezzling" money from the plan before United.

### 3.     *Claim for Civil Penalties Under 29 U.S.C. § 1132(c)(1)(B)*

In Count VI, RedOak demands civil penalties based on an alleged failure to provide plan documents and certain other information subject to disclosure under ERISA. 29 U.S.C. § 1132(c)(1)(B) provides that a plan administrator can be held liable for civil penalties if it receives a request for plan documents, is required to disclose those documents under ERISA, but fails to do so within 30 days of receiving such a request. However, RedOak does not allege that it has ever submitted such a request to AT&T Services. Instead, it alleges that it submitted its requests to "Defendants." Not only is this allegation overly-vague with respect to which defendant RedOak is referring to, but at the time the complaint was filed, AT&T Services was not a party to this action. Without more facts showing AT&T Services failed to provide documents requested specifically from it in a timely manner, RedOak has no claim for civil penalties under § 1132(c)(1)(B).

### 4.     *Claim for Failure to Provide Full and Fair Review Under 29 U.S.C. § 1133 and Claim for Attorney's Fees Under 29 U.S.C. § 1132(g)(1)*

RedOak's claim under 29 U.S.C. § 1133 (Count V) does not exist under ERISA's remedial scheme and hence must be dismissed. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) ("We have observed repeatedly that ERISA is a comprehensive and reticulated statute[.] We have therefore been especially reluctant to tamper with the enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text") (internal citations and quotation omitted). None of ERISA's civil enforcement provisions, all of which are set forth in 29 U.S.C. § 1132, empower a participant or beneficiary, or in this case a purported assignee, to obtain relief based on an alleged failure to provide a claims procedure that comports with § 1133.

RedOak's claim for attorney's fees (Count VII) is subject to dismissal for the same reason: ERISA does not recognize a stand-alone claim for attorney's fees. *See, e.g.*, *Gerzog v. London Fog Corporation*, 907 F. Supp. 590, 603 (E.D.N.Y. 1995); *Professional Orthopedic Associates, PA. v. Horizon Blue Cross Blue Shield of New Jersey*, No. 14-4731, 2015 WL 5455820, at *5 (D.N.J. Sept. 16, 2015).

## III.  CONCLUSION

For the reasons set forth above, RedOak's First Amended Complaint should be dismissed with prejudice.

Date: October 19, 2016                                     Respectfully submitted,

                                                            */s/ Laura R. Hammargren*
                                                            Nancy G. Ross
                                                            Laura R. Hammargren
                                                            MAYER BROWN LLP
                                                            71 S. Wacker Dr.
                                                            Chicago, IL 60606
                                                            T: (312) 791-0600
                                                            F: (312) 701-7711

                                                            **ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I, Laura R. Hammargren, certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants on October 19, 2016.

*/s/  Laura R. Hammargren*

Attorney for Defendant