# AT&T
# UMBRELLA BENEFIT PLAN NO. 3

**Amended and Restated**
**Effective as of January 1, 2014**

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

# TABLE OF CONTENTS

ARTICLE                                                                                          PAGE

I.   PURPOSE AND SIGNATURE PAGE

   1.1   PURPOSE AND STRUCTURE OF THE PLAN............................................................. 1
   1.2   TAX STATUS OF PLAN............................................................................................ 1
   1.3   TYPE OF PLAN........................................................................................................ 1
   1.4   INCORPORATION OF PROGRAMS ......................................................................... 1

II.  HISTORY AND RESTATEMENT OF PLAN

   2.1   HISTORY OF THE PLAN ......................................................................................... 2
   2.2   COMPLIANCE WITH CODE AND ERISA................................................................. 2
   2.3   PLAN DOCUMENTATION; CONTROLLING DOCUMENTS ........................................ 2

III. DEFINITIONS

   3.1   DEFINITIONS ......................................................................................................... 3
         (1)    BENEFICIARY............................................................................................. 3
         (2)    BENEFITS ADMINISTRATOR ....................................................................... 3
         (3)    CODE......................................................................................................... 3
         (4)    COMPANY .................................................................................................. 3
         (5)    DEPENDENT ............................................................................................... 3
         (6)    ELECTRONIC PROTECTED HEALTH INFORMATION OR ELECTRONIC PHI .... 3
         (7)    EMPLOYEE: ............................................................................................... 3
         (8)    EMPLOYER ................................................................................................ 4
         (9)    ERISA...................................................................................................... 4
         (10)   FIDUCIARY ................................................................................................ 4
         (11)   FORMER EMPLOYEE ................................................................................. 5
         (12)   FULLY INSURED OPTION ........................................................................... 5
         (13)   GROUP HEALTH PROGRAM ....................................................................... 5
         (14)   HEALTH CARE COMPONENT ...................................................................... 5
         (15)   HEALTH CARE OPERATIONS...................................................................... 5
         (16)   HEALTH INSURANCE ISSUER ..................................................................... 5
         (17)   HEALTH PLAN ........................................................................................... 5
         (18)   HIPAA ..................................................................................................... 6
         (19)   HIPAA PLAN ............................................................................................ 6
         (20)   HIPAA PRIVACY AND SECURITY RULE ..................................................... 6
         (21)   HYBRID ENTITY ......................................................................................... 6
         (22)   PARTICIPANT.............................................................................................. 6
         (23)   PARTICIPANT CONTRIBUTION .................................................................... 6
         (24)   PARTICIPATING COMPANY......................................................................... 6
         (25)   PAYMENT ................................................................................................... 6
         (26)   PLAN.......................................................................................................... 7
         (27)   PLAN ADMINISTRATOR .............................................................................. 7
         (28)   PLAN SPONSOR.......................................................................................... 7
         (29)   PLAN YEAR ............................................................................................... 7
         (30)   PROGRAM .................................................................................................. 7

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

(31)   PROTECTED HEALTH INFORMATION OR "PHI" ........................................ 7
(32)   TREATMENT ........................................................................................ 7

IV.   ELIGIBILITY AND PARTICIPATION

4.1   ELIGIBILITY.......................................................................................... 8
4.2   ENROLLMENT ....................................................................................... 8
4.3   TERMINATION OF PARTICIPATION .......................................................... 8
4.4   REHIRED FORMER EMPLOYEES AND TRANSFERRED EMPLOYEES........................ 9

V.   BENEFITS

5.1   PLAN BENEFITS.................................................................................. 10
5.2   TERMS AND COMPOSITION OF PROGRAMS ........................................... 10
5.3   FULLY INSURED OPTIONS ................................................................... 10
5.4   CIRCUMSTANCES AFFECTING BENEFITS................................................ 10
5.5   COORDINATION OF BENEFITS WITH OTHER PLANS................................. 11

VI.   FUNDING

6.1   FUNDING METHODS............................................................................ 12
6.2   PARTICIPANT CONTRIBUTIONS ............................................................ 12
6.3   COMPANY FUNDING OBLIGATIONS ...................................................... 12
6.4   INSURANCE ....................................................................................... 12
6.5   FUNDING BENEFITS ........................................................................... 13

VII.   HIPAA PRIVACY PROTECTION FOR HEALTH INFORMATION

7.1   DISCLOSURE FOR TREATMENT, PAYMENT OR HEALTH CARE OPERATIONS ......... 14
7.2   DISCLOSURE OF PHI TO THE PLAN SPONSOR........................................ 14
7.3   SEPARATION BETWEEN THE PLAN SPONSOR AND THE HIPAA PLAN ................. 15
7.4   DISCLOSURE OF ELECTRONIC PHI ...................................................... 15
7.5   NO THIRD PARTY BENEFICIARIES........................................................ 16

VIII.   ADMINISTRATION AND FIDUCIARY PROVISIONS

8.1   PLAN ADMINISTRATOR........................................................................ 17
8.2   FIDUCIARY DUTIES ............................................................................ 18
8.3   TESTING AND COMPLIANCE................................................................. 18
8.4   INSURANCE COMPANY ....................................................................... 19
8.5   INDEMNIFICATION ............................................................................. 19

IX.   CLAIMS AND SUBROGATION

9.1   CLAIMS ADMINISTRATION.................................................................... 20
9.2   UNCLAIMED BENEFITS ....................................................................... 20
9.3   RIGHT OF SUBROGATION AND REIMBURSEMENT ................................... 20

X.   AMENDMENT AND TERMINATION

10.1   PLAN AMENDMENT ........................................................................... 24
10.2   PLAN TERMINATION.......................................................................... 24
10.3   EFFECT ON OTHER BENEFITS ........................................................... 24

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

## XI.   PARTICIPATING COMPANIES

11.1  ADOPTION OF PLAN BY PARTICIPATING COMPANY .............................................. 25
11.2  TERMINATION OF PARTICIPATION OF PARTICIPATING COMPANY ......................... 25
11.3  DIVESTITURE ................................................................................................. 25

## XII.  MISCELLANEOUS

12.1   EXCLUSIVE BENEFIT ....................................................................................... 26
12.2   NON-ALIENATION OF BENEFITS ....................................................................... 26
12.3   LIMITATION OF RIGHTS ................................................................................... 26
12.4   GOVERNING LAWS .......................................................................................... 26
12.5   SEVERABILITY ................................................................................................ 26
12.6   HEADINGS AND CAPTIONS .............................................................................. 26
12.7   REFERENCES ................................................................................................. 27
12.8   GENDER AND NUMBER .................................................................................... 27
12.9   EXPENSES ..................................................................................................... 27
12.10  CONTINUATION OF COVERAGE ........................................................................ 27
12.11  HIPAA CERTIFICATION .................................................................................... 27
12.12  QUALIFIED MEDICAL CHILD SUPPORT ORDERS ................................................. 27
12.13  RIGHT OF RECOVERY ..................................................................................... 28
12.14  FACILITY OF PAYMENT .................................................................................... 28
12.15  PUBLICATION OF EXPLANATORY MATERIALS .................................................... 28

**APPENDIX A PROGRAMS**

**APPENDIX B PARTICIPATING COMPANIES**

**APPENDIX C SCHEDULE OF MEDICAL FULLY INSURED OPTIONS**

**APPENDIX D DENTAL PROGRAM SCHEDULES OF ALLOWANCE**

**APPENDIX E FULLY INSURED (DHMO) NATIONAL COPAYMENT BASIS SCHEDULE AND PATIENT CHARGES SCHEDULES**

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

# I.
## PURPOSE AND SIGNATURE PAGE

**1.1**    **PURPOSE AND STRUCTURE OF THE PLAN.** The purpose of the Plan is to provide Participants with the health or welfare benefits described herein. The Plan combines certain funded employee health or welfare benefit plans sponsored by an Employer (each a "Program") into one benefit plan. The Programs that are combined to form the Plan are listed in Appendix A. Notwithstanding the number and types of benefits incorporated hereunder, the Plan is, and shall be treated as, a single "employee welfare benefit plan" (within the meaning of Section 3(1) of ERISA).

**1.2**    **TAX STATUS OF PLAN.** It is intended that the Plan satisfy the requirements to be an "accident and health plan" (within the meaning of Section 105 of the Code) and that the Plan provide "group-term life insurance" (within the meaning of Section 79 of the Code) such that the benefits provided under the Plan, where applicable, will be eligible for exclusion from the gross income of Participants and Beneficiaries under the Code.

**1.3**    **TYPE OF PLAN.** The Plan is an employee welfare benefit plan within the meaning of Section 3(1) of ERISA.

**1.4**    **INCORPORATION OF PROGRAMS.** The benefits under the Plan are provided through the Programs. Each Program is evidenced by one or more written documents setting forth the terms of such Program. Each Program, in its entirety, is incorporated by reference into and made a part of the Plan and is subject to all terms and conditions of the Plan. All references herein to the Plan include each Program except as otherwise indicated. References in this document or in any Program document to particular Sections, provisions or definitions in the Plan refer to Sections of this Plan document.

**EXECUTED** on this <u>3rd</u> day of December 2013.

**AT&T Inc.**

By: _WA Blase_____

William A. Blase
Senior Executive Vice President–Human Resources
AT&T Inc.

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

# II.
# HISTORY AND RESTATEMENT OF PLAN

2.1    **HISTORY OF THE PLAN.** The Plan is an amendment to AT&T Umbrella Benefit Plan No. 1, effective  January 1, 2014, as the "AT&T Umbrella Benefit Plan No. 3."

2.2    **COMPLIANCE WITH CODE AND ERISA.** The Plan is intended to meet all applicable requirements of the Code and ERISA. Nothing in the Plan shall be construed as requiring compliance with Code or ERISA provisions that do not otherwise apply.

2.3    **PLAN DOCUMENTATION; CONTROLLING DOCUMENTS.** The Plan document does not attempt to cover all Program details. Specific details of the Programs are included in the official text for each Program. The Plan text and the text of the applicable Program together legally govern the operation of the Plan and Program, and are the final authority on the terms of the Plan and such Program; provided, however, if there is a conflict between the Program text and the Plan text the Plan text will govern unless there is explicit language in the Program stating that it controls over the Plan text. With respect to the substantive benefits provided under the Plan and any Program, any insurance policy, insurance policy riders, endorsements or certificates, evidence of coverage, and any amendments thereto will govern in the event of any conflict between the terms of such insurance policy, insurance policy riders, endorsements or certificates, evidence of coverage, and any amendments thereto and the terms of the Plan or Program, unless expressly provided to the contrary in the Plan or Program.

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

# III.
# DEFINITIONS

3.1    **DEFINITIONS.** For purposes of the Plan, each of the terms defined in this Article III, when capitalized, shall have the respective meaning set forth below except where otherwise modified or defined differently in any Program for purposes of that Program or where the context clearly indicates to the contrary.

(1)    **Beneficiary:** means a person designated by a Participant or by the terms of the applicable Program who is or may be entitled to a benefit thereunder.

(2)    **Benefits Administrator:** means any third-party administrator, insurance company or other organization or individual to which the Company, an Employer or the Plan Administrator for a Program has delegated the duty to administer a Program or process and/or review claims for benefits under a Program. If no separate Benefits Administrator has been designated by the Company, an Employer or the Plan Administrator, with respect to a Program, the Plan Administrator of the Program will be the Benefits Administrator for such Program.

(3)    **Code:** means the Internal Revenue Code of 1986, as amended from time to time. Any reference to any section of the Code shall be deemed to include any applicable regulations and rulings pertaining to such section and shall also be deemed a reference to comparable provisions of future laws.

(4)    **Company:** means AT&T Inc., or any successor or successors thereof.

(5)    **Dependent:** means a dependent who is eligible to participate in a Program pursuant to its provisions.

(6)    **Electronic Protected Health Information or Electronic PHI:** has the meaning assigned to it in 45 C.F.R. Section 160.103.

(7)    **Employee:** means any individual, other than a leased employee or Nonresident Alien Employed Outside the United States, who is carried on the payroll records of a Participating Company and who receives a regular and stated compensation, other than a pension or retainer, from that Participating Company, in exchange for services rendered to that Participating Company.

- For purposes of the preceding sentence, the term "leased employee" refers to any individual who is a leased employee within the meaning of Section 414(n)(2) of the Code.

- The term "Employee" does not include any individual:

  1. Who is rendering services to a Participating Company pursuant to a contract, arrangement or understanding either purportedly (i) as an independent contractor, or (ii) as an employee of an agency, leasing organization or any other such company that is outside of the AT&T Controlled Group and is providing services to a Participating Company; or

2. Who is treated by an agency, leasing organization or any other such company that is outside of the AT&T Controlled Group as an employee of such agency, leasing organization or other such company while rendering services to a Participating Company, even if such individual is later determined (by judicial action or otherwise) to have been a common law employee of a Participating Company rather than an independent contractor or an employee of such agency, leasing organization or other such company.

- For purposes of this definition, a "Nonresident Alien Employed Outside the United States" is any individual who receives no earned income (within the meaning of Section 11(d)(2) of the Code) from any Participating Company that constitutes income from sources within the United States (within the meaning of Section 861(a)(3) of the Code). Notwithstanding the preceding sentence, any individual who is classified by a Participating Company as a Global Manager will not be considered a Nonresident Alien Employed Outside the United States.

- For purposes of this definition, "AT&T Controlled Group" includes any of the following:

  1. Corporation that is a member of a controlled group of corporations within the meaning of Section 414(b) of the Code of which the Company is a member.

  2. Trade or business (whether or not incorporated) that the Company is under common control (as defined in Section 414(c) of the Code with.

  3. Organization (whether or not incorporated) that is a member of an affiliated service group (as defined by Section 414(m) of the Code) that includes the Company.

  4. Other entity required to be aggregated with the Company and treated as a single employer under Section 414(o) of the Code.

(8) **Employer:** means, collectively or individually as the context may indicate, the Company and any other organization which is a member of the same controlled group as the Company, as determined pursuant to Code Sections 414(b), 414(c), 414(m) and 414(o).

(9) **ERISA:** means the Employee Retirement Income Security Act of 1974, as amended from time to time. Any reference to any section of ERISA shall be deemed to include any applicable regulations and rulings pertaining to such section and shall also be deemed a reference to comparable provisions of future laws.

(10) **Fiduciary:** means the Company, the Plan Administrator, any trustee, any insurance company, and any individual, corporation, firm or other entity which assumes, in accordance with Article VIII, responsibilities with respect to the management of the Plan or any Program or the disposition of its benefits and assets.

(11)    **Former Employee:** means any person formerly employed as an Employee.

(12)    **Fully Insured Option:** means an option to enroll in a fully insured product under a health and welfare program.

(13)    **Group Health Program:** means any Program providing health benefits such as medical, dental, vision, prescription drug, supplemental medical or health reimbursement arrangement benefits.

(14)    **Health Care Component:** means a component or combination of components of a Hybrid Entity that are designated by a Hybrid Entity in accordance with 45 C.F.R. § 164.105(a)(2)(iii)(C). Specifically, pursuant to the AT&T Group Health Plan election of February 17, 2010 to be treated as a Hybrid Entity, the Health Care Components shall be those portions of the underlying Programs that provide coverage for any of active medical, supplemental medical, retiree medical, dental, vision, health reimbursement arrangement, or employee assistance programs that are incorporated within medical programs. Programs and portions of Programs that do not provide any of such coverages are not Health Care Components.

(15)    **Health Care Operations:** means Health Plan activities that involve, but are not limited to, quality assessment and improvement, disease management, case management and care coordination, contacting health care providers and patients with information about treatment alternatives, the assessment of health care professionals, evaluating health plan performance, renewal or replacement of a contract of health insurance or health benefits, conducting or arranging for medical review, legal services, auditing functions, benefits fraud and abuse investigations, and business planning and development (including cost-management and planning analyses). "Health Care Operations" also include, but are not limited to, general Health Plan administrative functions such as management activities relating to compliance with HIPAA's administrative simplification requirements, customer service involving the provision of data analysis for the Plan Sponsor of the HIPAA Plan and other Employers whose Employees or Former Employees participate in a HIPAA Plan, resolution of internal grievances and the sale, transfer, merger or consolidation (and the due diligence related to such activity) of all or part of a Health Plan with another covered entity under HIPAA, or an entity that following such activity will become a Health Plan or other type of covered entity under HIPAA.

(16)    **Health Insurance Issuer:** means an insurance company, insurance service or insurance organization (including a health maintenance organization ("HMO"), a dental health maintenance organization, or a Medicare supplemental insurance program) that is required to be licensed to engage in the business of insurance in a state and is subject to state law that regulates insurance. A Health Insurance Issuer does not include a "group health plan" as defined in 45 C.F.R. Section 160.103.

(17)    **Health Plan:** means an individual or group plan (or a combination thereof) that provides or pays the cost of medical care and includes a "group health plan" as defined in 45 C.F.R. Section 160.103, a Health Insurance Issuer, a health

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

maintenance organization ("HMO") and such other plans or arrangements included in the definition of a "health plan" in 45 C.F.R. Section 160.103.

(18)  **HIPAA:** means the Health Insurance Portability and Accountability Act of 1996, as amended from time to time.

(19)  **HIPAA Plan:** means any Health Care Component or any combination of Health Care Components (as appropriate within the relevant context).

(20)  **HIPAA Privacy and Security Rule:** means the federal regulations set forth at 45 C.F.R. Parts 160 and 164, as amended from time to time, which were promulgated by the U.S. Department of Health and Human Services to implement the health information privacy and electronic data security provisions of HIPAA.

(21)  **Hybrid Entity:** means a single legal entity that is a "covered entity" for purposes of the HIPAA Privacy and Security Rule whose business activities include both covered functions and non-covered functions and that designates Health Care Components in accordance with 45 C.F.R. Section 164.105(a)(2)(iii)(C). For purposes of this definition, "covered functions" means those functions performed by a HIPAA "covered entity" that make the entity a Health Plan.

(22)  **Participant:** means any individual who satisfies the eligibility requirements of Section 4.1 and is enrolled in a Program listed in Appendix A.

(23)  **Participant Contribution:** means the fixed periodic pre-tax or after-tax contribution required to be paid by a Participant, if any, as determined under each Program from time to time. The term "Participant Contribution" includes contributions used for the provision of benefits under a self-insured arrangement of the Company or an Employer as well as contributions used to purchase insurance contracts or policies. The term "Participant Contribution" does not include a Participant's payment of deductibles, coinsurance, co-payments or other amounts under the cost-sharing arrangements of a Program.

(24)  **Participating Company:** means any Employer that (i) adopts any Program for the benefit of its eligible Employees (or their Beneficiaries) in accordance with Article XI and (ii) has not terminated its participation in the Plan in accordance with the provisions of Article XI.

(25)  **Payment:** means any activities undertaken by a Health Plan (i) to obtain Participant Contributions or to determine or fulfill its responsibility for coverage and the provision of benefits; or (ii) to provide reimbursement for the provision of health care. Payment activities relate to an individual to whom health care is provided and include, but are not limited to, determinations of eligibility or coverage, billing, collection activities, reviews for medical necessity, claims management, coordination of benefits, adjudication of Health Plan benefit claims (including appeals and other payment-related disputes), subrogation, plan reimbursement, determining the amount of Participant Contributions, reviews of appropriateness of care, preauthorizations, and utilization reviews.

(26)    **Plan:** means the "AT&T Umbrella Benefit Plan No. 3 " as set forth herein, as amended from time to time.

(27)    **Plan Administrator:** means AT&T Services, Inc., unless another entity or person is appointed by the Company to administer the Plan pursuant to Section 8.1.

(28)    **Plan Sponsor:** means the Company.

(29)    **Plan Year:** means the 12-month period commencing January 1 and ending December 31.

(30)    **Program:** means a written arrangement for the provision of benefits identified in Appendix A, which is attached hereto, and is incorporated by reference into and made a part of the Plan.

(31)    **Protected Health Information or "PHI":** means health information transmitted by electronic media, maintained in electronic media, or transmitted or maintained in any other form or medium that (i) is created or received by a health care provider, Health Plan, Employer or health care clearinghouse; (ii) relates to past, present or future physical or mental health or condition of an individual, to the provision of health care to an individual, or to the past, present or future payment for the provision of health care to an individual; and (iii) either identifies the individual or with respect to which there is a reasonable basis to believe the information can be used to identify the individual. "Protected Health Information" or "PHI" does not include individually identifiable health information in employment records held by the Plan Sponsor or an Employer in its capacity as an employer.

(32)    **Treatment:** means the provision, coordination or management of health care and related services by one or more health care providers. Treatment includes, but is not limited to, consultations between health care providers relating to a patient, the coordination or management of health care by a health care provider with a third party and the referral of a patient for health care from one health care provider to another.

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

# IV.
## ELIGIBILITY AND PARTICIPATION

4.1   **ELIGIBILITY.** An Employee or Former Employee and his or her Beneficiary and/or Dependent shall be eligible to participate in the Plan only if and to the extent the Employee, Former Employee, Dependent or Beneficiary satisfies the conditions for eligibility to participate in a Program that are applicable to the particular individual's classification. The eligibility conditions for each Program shall be provided in the respective Program, and may include requirements for the submission of documentary or other evidence of eligibility. A Participant may be eligible to participate in more than one Program, but may not be eligible to participate in all Programs under the Plan. A Participant may be eligible to participate in more than one Program that provides a particular category of health and welfare benefits as identified in Appendix A but will be eligible to receive benefits under only one Program in such category (for this purpose, "category" means Medical Programs, Dental Programs, Disability Programs, Life Insurance Programs and Vision Programs as listed in Appendix A) at any particular time, unless otherwise provided for in the applicable Program. The circumstances that may result in the disqualification, ineligibility or suspension of a Participant's eligibility to participate in a Program shall be described in the respective Programs.

4.2   **ENROLLMENT.** An Employee or Former Employee and his or her Beneficiary and/or Dependent who has satisfied a Program's eligibility and enrollment requirements shall commence participation in the Plan and the Program at such time as is provided for by the applicable Program.

4.3   **TERMINATION OF PARTICIPATION.** A Participant shall cease being a Participant in the Plan and coverage under the Plan for the Participant shall terminate upon such Participant's loss of eligibility or termination of participation in all Programs. Termination of participation in each Program shall occur under the circumstances that are specified in the respective Programs. In addition to the foregoing, the coverage of a Participant under this Plan or a Program will terminate upon the effective date of withdrawal from the Plan or such Program by the Participating Company (or organizational unit thereof), respectively, through which such Participant was eligible to participate in the Plan or Program.

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

4.4     **REHIRED FORMER EMPLOYEES AND TRANSFERRED EMPLOYEES.** A Former Employee whose participation in the Plan and all Programs has ceased, and who is subsequently rehired by an Employer, shall become a Participant again in the Plan if and when the individual satisfies the eligibility requirements of Section 4.1 and such other guidelines regarding the eligibility of rehired Former Employees as may be adopted by the Company from time to time. A Former Employee who is eligible for post-employment benefits under one or more Programs immediately prior to his or her reemployment shall, following his or her re-employment by an Employer, be eligible for such benefits under the Plan as are provided for in the applicable Programs and such other guidelines regarding the eligibility of rehired Former Employees as may be adopted by the Company from time to time. Except as otherwise provided in the applicable Program or guidelines adopted by the Company from time to time, a Participant whose employment classification changes or who is transferred, reassigned or moves to employment with another Employer, shall be eligible for such benefits under the Plan as are available to Employees who are employed by the same Employer and have the same employment classification as the Participant following such change, transfer, reassignment or move.

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

# V.
# BENEFITS

**5.1**    **PLAN BENEFITS.** All of the Programs identified in Appendix A are hereby incorporated by reference into and made a part of this Plan, the same as if the text of each such Program (including any and all amendments thereto) was set forth in its entirety within the Plan. All of the benefits provided under the Programs identified in Appendix A shall be considered benefits of this Plan.

**5.2**    **TERMS AND COMPOSITION OF PROGRAMS.** The detailed statement of the provisions that affect the form, amount, type and timing of benefits provided to Participants under a Program, the conditions for receipt of benefits under a Program, the exclusions from coverage or benefits under a Program, the limitations on benefits under a Program, and the circumstances under which benefits terminate under a Program shall be set forth in the respective Programs.

**5.3**    **FULLY INSURED OPTIONS.** The Programs listed in Appendix A may provide benefits through a Fully Insured Option. The availability of a Fully Insured Option shall be determined by the Company, in its sole discretion, and may be dependent on the Program in which a Participant is enrolled, the Participant's address, and where applicable certain other factors, such as age or Medicare eligibility. A Fully Insured Option offered under the Medical Programs will be described in Appendix C, and for Dental Programs will be described under Appendix E. The Fully Insured Options set forth in Appendix C or Appendix E, are hereby incorporated by reference into and made a part of this Plan. Eligibility for a Fully Insured Option is determined by the Company, while benefits are provided under the policy or evidence of coverage.

   **5.3.1**    **ELIGIBILITY TO ENROLL.** A Participant who is eligible to enroll in a Program is generally eligible to enroll in any Fully Insured Option available under a Program, except as provided in the Program.

   **5.3.2**    **GOVERNING DOCUMENTS.** Except as otherwise specified in the Program, a Participant who elects a Fully Insured Option shall be (i) eligible to receive the benefits provided under such Fully Insured Option; and (ii) subject to the terms, conditions, limitations, and exclusions on the provision of benefits set forth in the documents governing the Fully Insured Option (including group insurance policies and certificates or evidence of coverage, as applicable), in lieu of the terms, conditions, limitations and exclusions generally applicable to the benefits provided through the Group Health Program.

**5.4**    **CIRCUMSTANCES AFFECTING BENEFITS.** The circumstances that may result in disqualification, ineligibility, denial, loss, forfeiture, suspension, offset, reduction, exercise of subrogation rights or recovery of any benefits offered under the Plan that a Participant might otherwise reasonably expect the Plan to provide are described in each Program offered under the Plan with respect to benefits provided under that Program.

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

**5.5** **COORDINATION OF BENEFITS WITH OTHER PLANS.** If a Participant has coverage under this Plan as well as coverage from another source, the benefits that are received through this Plan shall be coordinated with the benefits available under the plan containing the Participant's other source of benefits if the Program covering the Participant provides for coordination of benefits. The coordination of benefits provisions of a Program shall apply with respect to the benefits offered under such Program.

# VI.
## FUNDING

**6.1**   **FUNDING METHODS.** The Company may adopt and utilize a variety of methods for funding benefits under each of the Programs, including self-funding and insured arrangements or a combination of such arrangements.

**6.2**   **PARTICIPANT CONTRIBUTIONS.** Each Program shall specify the Program benefits, if any, that are provided at no cost to Participants and those benefits, if any, for which Participants are required to make contributions as a condition for receipt of such benefits. The Plan Administrator may require that the Participant Contributions for a Program, if any, be made by payroll reduction or deduction from a pension distribution, if available. A Program may require Participants to make additional payments in the form of deductibles, coinsurance, premiums, co-payments or other amounts or arrangements as a condition for receipt of benefits thereunder. The amount of any required Participant Contributions for a Program shall be communicated to the Participant in the Program document, or in such other form and manner and at such time as the Plan Administrator shall determine to be appropriate. Except as otherwise permitted by ERISA, any Participant Contributions shall be remitted to the appropriate insurer, or be used to provide benefits or pay reasonable administration expenses as soon as practicable. Participant Contributions shall be treated as fixed premium obligations, and Participants will not be entitled to any reduction or refund of periodic Participant Contributions (including without limitation, applicable deductibles or co-payments) in the event that the claims experience of the Plan or any Program is more favorable than projected or the Plan or any Program receives any discount, refund or rebate pursuant to an agreement with any medical provider or other organization, unless specifically provided for in a Program.

**6.3**   **COMPANY FUNDING OBLIGATIONS.** Nothing herein requires the Company, an Employer or the Plan Administrator to contribute to or under any Program, or to maintain any fund or segregate any amount for the benefit of any Participant, except to the extent specifically required under the terms of a Program. To the extent the Company assumes any part of the obligation for the cost of providing benefits under a Program; it may establish or enter into a funding arrangement to provide such benefits. The obligation assumed by the Company for contributing toward the cost of Program benefits shall be described in the applicable Program. No Participant shall have any right to, or interest in, the assets of the Company or any Employer or any funding arrangement established by the Company to fund Program benefits in whole or in part.

**6.4**   **INSURANCE.** The Company shall have no obligation, but shall have the right, to insure, reinsure or purchase stop loss coverage with respect to any or all benefits of a Program. The Company may utilize any insurer (including any captive insurance arrangement the Company sponsors or maintains) to insure or reinsure such Program benefits. To the extent the Company elects to purchase insurance with respect to any Program, any such Program benefits shall be the sole responsibility of the insurer, and the Company and the Employers shall have no responsibility for the payment of such benefits. The insurer makes payments under a contract issued by the insurer, and pays claims incurred under the terms of the Program pursuant to which Program benefits are paid.

**6.5**   **FUNDING BENEFITS.** The benefits payable under the Plan may be funded through one or more voluntary employees' beneficiary association trusts ("VEBA") established in accordance with the provisions of Code Section 501(c)(9). Contributions made toward the cost of coverage under the Plan made by Employees, Former Employees, and Employers may be commingled within any such trust. Any disability benefits payable from a VEBA under Programs identified in Appendix A as "Disability Programs" shall not exceed the amount permitted to be paid pursuant to Code Section 505(b)(7).

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

# VII.
# HIPAA PRIVACY PROTECTION FOR HEALTH INFORMATION

**7.1** **DISCLOSURE FOR TREATMENT, PAYMENT OR HEALTH CARE OPERATIONS.** Each HIPAA Plan shall use and disclose PHI to the extent permitted by, and in accordance with, HIPAA and any HIPAA policies and procedures adopted by the HIPAA Plan.

**7.2** **DISCLOSURE OF PHI TO THE PLAN SPONSOR.** This Section 7.2 shall serve as the certification by the Plan Sponsor to the HIPAA Plan that this Umbrella document incorporates the necessary provisions that will permit the HIPAA Plan to disclose PHI to the Plan Sponsor under circumstances permitted by HIPAA. Specifically, the Plan Sponsor hereby agrees to:

    7.2.1   Not use or further disclose PHI other than as permitted or required by the HIPAA Plan document or as required by law;

    7.2.2   Ensure that any affiliates or agents, including a subcontractor, to whom the Plan Sponsor provides PHI received from the HIPAA Plan, agrees to the same restrictions and conditions that apply to the Plan Sponsor with respect to such PHI;

    7.2.3   Not use or disclose PHI for employment-related actions and decisions, unless authorized by the individual to whom the PHI relates;

    7.2.4   Not use or disclose PHI in connection with any other benefits or employee benefit plan of the Plan Sponsor or its affiliates, unless permitted by the HIPAA Plan or authorized by an individual to whom the PHI relates;

    7.2.5   Report to the HIPAA Plan any PHI use or disclosure that is inconsistent with the uses or disclosures provided for of which it becomes aware;

    7.2.6   Make PHI available to an individual in accordance with HIPAA's access rules;

    7.2.7   Make PHI available for amendment and incorporate any amendments to PHI in accordance with HIPAA;

    7.2.8   Make available the information required to provide an accounting of disclosures in accordance with HIPAA;

    7.2.9   Make internal practices, books and records relating to the use and disclosure of PHI received from the HIPAA Plan available to the Secretary of the United States Department of Health and Human Services for purposes of determining the HIPAA Plan's compliance with HIPAA;

    7.2.10  If feasible, return or destroy all PHI received from the HIPAA Plan that the Plan Sponsor still maintains in any form, and retain no copies of such PHI when no longer needed for the purpose for which disclosure was made (or if return or destruction is not feasible, limit further uses and disclosures to those purposes that make the return or destruction infeasible); and

7.2.11 Ensure adequate separation is established between the HIPAA Plan and the Plan Sponsor in accordance with HIPAA.

**7.3** **SEPARATION BETWEEN THE PLAN SPONSOR AND THE HIPAA PLAN.** In accordance with HIPAA, only the following Plan Administrator employees and other persons under the control of the Plan Administrator shall be given access to PHI:

7.3.1 Employees of the AT&T Benefits organization responsible for administering health benefits under the HIPAA Plan, including those employees whose functions in the regular course of business include Payment, Health Care Operations or other matters pertaining to the health care programs under a HIPAA Plan;

7.3.2 Employees who supervise the work of the employees described in Section 7.3.1;

7.3.3 Support personnel, including other employees outside of the AT&T Benefits organization whose duties require them to rule on Health Plan-related appeals or perform functions concerning the HIPAA Plan;

7.3.4 Investigatory personnel to the limited extent that such PHI is necessary to conduct investigations of possible fraud; and

7.3.5 In-house attorneys of the Company (or its affiliates) providing counsel to the HIPAA Plan.

The persons identified above shall have access to and use PHI to the extent that such access and use is necessary for the administration of benefits under a HIPAA Plan. If these persons do not comply with the health information privacy protections in this Plan, the Plan Sponsor shall provide a mechanism for resolving issues of noncompliance, including disciplinary sanctions.

**7.4** **DISCLOSURE OF ELECTRONIC PHI.** This Section 7.4 shall serve as the certification by the Plan Sponsor to the HIPAA Plan that this Umbrella document incorporates the necessary provisions that will permit the HIPAA Plan to disclose Electronic PHI to the Plan Sponsor under circumstances permitted by HIPAA. Specifically, the Plan Sponsor hereby agrees to:

7.4.1 Implement administrative, physical and technical safeguards that reasonably and appropriately protect the confidentiality, integrity and availability of the Electronic PHI that the Plan Sponsor creates, receives, maintains or transmits on behalf of the HIPAA Plan, except when:

(a) The HIPAA Plan discloses electronically summary health information to the Plan Sponsor that is requested by the Plan Sponsor for the purpose of obtaining premium bids from Health Plans, for providing health insurance coverage under the HIPAA Plan or for modifying, amending or terminating the HIPAA Plan;

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

    (b)    The HIPAA Plan, or a Health Insurance Issuer with respect to the HIPAA Plan, discloses electronically to the Plan Sponsor information on whether an individual is participating in the HIPAA Plan, or is enrolled in or has dis-enrolled from an insured benefit offered by the HIPAA Plan; or

    (c)    The HIPAA Plan discloses PHI electronically to the Plan Sponsor for which it has obtained, from the individual to whom the PHI relates, a valid authorization that meets the requirements of HIPAA;

7.4.2    Ensure that the separation requirements applicable to the HIPAA Plan set forth in Section 7.3 are supported by reasonable and appropriate security measures;

7.4.3    Ensure that any agent, including a subcontractor to whom the Plan Sponsor provides Electronic PHI, agrees to implement reasonable and appropriate security measures to protect the information; and

7.4.4    Report to the HIPAA Plan any security incident of which the Plan Sponsor becomes aware.

**7.5**    **NO THIRD PARTY BENEFICIARIES.** This Article VII is intended solely to bring the Plan into compliance with the requirements of the HIPAA Privacy and Security Rule. No Participant, Beneficiary or other person is authorized to bring suit to enforce the provisions of this Article VII except as explicitly permitted by HIPAA or the HIPAA Privacy and Security Rule.

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

# VIII.
## ADMINISTRATION AND FIDUCIARY PROVISIONS

**8.1** **PLAN ADMINISTRATOR.** The operation of the Plan shall be under the supervision of a Plan Administrator. The Plan Sponsor retains full power, to the maximum extent permitted by law, to appoint and remove the Plan Administrator, including the power to name itself as Plan Administrator. As of the date of execution of this Plan document, the Plan Administrator is AT&T Services, Inc. (or any successor thereto).

The Plan Administrator shall be the "named fiduciary" of the Plan and all Programs, as defined in Section 402(a)(2) of ERISA, unless the Company appoints a replacement. The Plan Administrator has the power and duty to do all things necessary to carry out the terms of the Plan. The Plan Administrator has the sole and absolute discretion to interpret the provisions of the Plan, to resolve any ambiguity in the terms of the Plan, to make findings of fact, to determine the rights and status of you and others under the Plan, to decide and resolve disputes under the Plan and to delegate all or a part of this discretion to third parties, who may be individuals and/or entities. To the extent permitted by law, such interpretations, findings, determinations and decisions are final, conclusive and binding on all persons for all purposes of the Plan and shall not be overturned, unless determined to be arbitrary and capricious pursuant to final judgment of a court of law. If the Plan Administrator fails to strictly enforce any provision of the Plan in a given instance, it will not be construed as a waiver of that provision in any later case. The Plan Administrator reserves the right to strictly enforce each and every Plan provision at any time without regard to its prior actions and decisions, the similarity of the circumstances or the number of occurrences.

Only the duly authorized acts of the Plan Administrator are valid under the Plan or Program. Participants may not rely on any oral statement of any person regarding the Plan or Program and may not rely on any written statement of any person, unless that person is authorized to provide the statement by the Plan Administrator and **one** of the following applies:

- The statement is an official decision of the Plan Administrator to an individual whose eligibility for enrollment, participation or payment of benefits under the Plan or Program is in dispute.

- The statement constitutes a duly authorized interpretation of an ambiguous or doubtful term of the Plan or Program.

- The statement constitutes the issuance of a rule, regulation or policy under the Plan or Program and applies to all Participants.

- The statement communicates an amendment to the Plan or Program and applies to all Participants.

It shall be a principal duty of the Plan Administrator to see that the Plan is carried out in accordance with its terms, and for the exclusive benefit of the Participants. The Plan Administrator has the authority and discretion to settle or compromise any claim against the Plan or any Program based on the likelihood of a successful outcome as compared with the cost of contesting such claim. The Plan Administrator also has the authority and

discretion to pursue, relinquish or settle any claim of the Plan or any Program against any person. No person may rely on the actions of the Plan Administrator regarding claims by or against the Plan or any Program in connection with any subsequent matter. Except as provided in a Program or except to the extent delegated under a Program, the Plan Administrator's powers, in addition to all other powers provided by this Plan, shall include, but shall not be limited to, the following authority:

8.1.1   To make and enforce such rules and regulations, and to establish such processes and procedures, as the Plan Administrator deems necessary or proper for the efficient administration of the Plan or any Program;

8.1.2   To interpret the Plan and all Programs, and such interpretations shall be final and conclusive on all individuals claiming benefits under the Plan or any Program;

8.1.3   To decide all questions concerning the Plan and any Program, including the eligibility of any individual to participate in the Plan or any Program and to receive benefits provided under the Plan or any Program;

8.1.4   To appoint such agents, counsel, accountants, consultants, and actuaries as may be required to assist in administering the Plan or any Program; and

8.1.5   To appoint one or more Benefits Administrators.

**8.2**   **FIDUCIARY DUTIES.** Each Fiduciary who is allocated specific duties or responsibilities under this Plan or any Program, or any Fiduciary who assumes such a position with this Plan or any Program, shall discharge its duties for the exclusive benefit of the Participants, for the exclusive purpose of providing benefits to Participants or defraying reasonable expenses of administering the Plan or a Program. Each Fiduciary, in carrying out such duties and responsibilities, shall act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in exercising such authority or duties.

A Fiduciary may serve in more than one Fiduciary capacity and may employ one or more persons to render advice with regard to its Fiduciary responsibilities. Regardless of whether the Fiduciary is serving with or without compensation, all expenses reasonably incurred on behalf of the Plan or a Program by such Fiduciary shall be reimbursed by the Plan, a Program or an Employer.

A Fiduciary may delegate any of its responsibilities for the operation and administration of the Plan and each Program to an appropriate party.

**8.3**   **TESTING AND COMPLIANCE.** The Plan Administrator shall be responsible for compliance with all testing and nondiscrimination requirements under the Code and the underlying federal income tax regulations that are applicable to the respective Programs which are part of the Plan. If the Plan Administrator determines that the Plan or any Program, as applicable, may not satisfy the nondiscrimination or other requirements of applicable law, the Plan Administrator may take such action as it deems appropriate to assure compliance with such requirements. Such actions may include, without limitation, a modification of coverage or elections in effect for Participants who are officers, shareholders or highly compensated Employees, all without the consent or notification of affected Participants.

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

8.4 **INSURANCE COMPANY.** Any Health Insurance Issuer in accordance with any policy or contract shall have exclusive authority and discretion to manage and control any funds held by it under the terms of any contract, except for matters relating to eligibility and enrollment.

8.5 **INDEMNIFICATION.** The Company agrees to indemnify and hold harmless any present Employee or Former Employee of the Company or any of its affiliates or subsidiaries to whom fiduciary, plan administration or trust fund operation or investment responsibilities are delegated, including but not limited to, members of any committees and their delegates responsible for plan administration or trust fund operation and investment and related responsibilities, against any and all claims, demands, rights, liabilities, damages, causes of actions, costs and expenses of whatsoever kind and nature (including Plan Administrator approved attorneys' fees and amounts paid in settlement of any claims) occasioned by any act or omission to act in connection with the Plan, if such act or omission is in good faith. The foregoing right to indemnification shall be in addition to such other rights as such Employees may enjoy as a matter of law or by reason of insurance coverage of any kind. Rights granted hereunder shall be in addition to and not in lieu of any rights to indemnification to which such Employee may be entitled pursuant to the by-laws of the Company or any of its affiliates or subsidiaries.

8.6 **ADMINISTRATION AND INVESTMENT OF TRUST.** The Company may establish one or more voluntary employees' beneficiary association trusts ("VEBA") in accordance with the provisions of Code Section 501(c)(9) that may be used to fund the Plan, as set forth in Section 6.5. The terms and operation of such VEBAs are set forth in their respective trust agreements with the applicable trustees.

# IX.
## CLAIMS AND SUBROGATION

**9.1**   **CLAIMS ADMINISTRATION.** If a Participant or Beneficiary has any grievance, complaint or claim concerning any aspect of the operation or administration of the Plan, including but not limited to claims for benefits or claims related to eligibility, the Participant or Beneficiary will submit the claim in accordance with the written procedures set forth in the summary plan description.

**9.2**   **UNCLAIMED BENEFITS.** If any amount becomes payable hereunder to a Participant and that amount shall not have been claimed or any check issued under the Plan remains uncashed for one year from the date the check is issued, the amount thereof shall be forfeited and shall cease to be a liability of the Plan; provided that the Plan Administrator shall have exercised reasonable efforts in attempting to make such payments.

**9.3**   **RIGHT OF SUBROGATION AND REIMBURSEMENT.** Except as otherwise specifically provided in a Program, the following right of subrogation and reimbursement provisions shall apply.

    9.3.1   **ASSIGNMENT OF RIGHTS AND SUBROGATION.** By filing a claim for payment of benefits under the Plan or by receiving benefits for which payment is made by the Plan, a Participant thereby assigns, transfers and subrogates to the Plan and the Company all rights, claims, causes of action and interest to the extent of the amount of benefits paid or owed by the Plan on the claim, which the Participant has against any third party who may be liable for the amount of such benefits, and thereby authorizes the Plan and/or Company to sue, compromise or settle with any such third party in the Participant's name or otherwise. No Participant may assign to any party other than the Plan and the Company any right, claim, cause of action or interest to recover the amount of benefits covered or paid by the Plan which the Participant has against any third party who may be liable for the amount of such benefits without the prior written consent of the Plan and the Company.

    9.3.2   **PLAN'S OPTIONS FOR PAYMENT OF BENEFITS.** If a Participant makes a claim for benefits for which a third party may be responsible, the Plan may either (i) pay all benefits covered under the Plan and obtain reimbursement for such benefits upon settlement with or judgment against the responsible third party; or (ii) delay payment and require the third party to pay such benefits upon such settlement or judgment.

    9.3.3   **PARTICIPANT INITIATION OF CLAIMS AGAINST THIRD PARTY.** Should a Participant make or file a claim, demand, lawsuit or other proceeding against a third party who may be liable for the amount of benefits covered or paid by the Plan, the Participant shall, as part of such claim, demand, lawsuit or other proceeding, and on behalf of the Plan and Company, also seek payment or reimbursement for the amount of such benefits covered or paid by the Plan. As a condition to receipt of benefits under the Plan, a Participant agrees to and must notify the Plan Administrator prior to making or filing any such claim, demand, lawsuit or other proceeding. The Plan Administrator or the Company may, at that time or at any time, (i) instruct the Participant not to seek, or to discontinue seeking, payment or

reimbursement on behalf of the Plan and Company; and (ii) pursue such payment or reimbursement independently in the same or in a separate lawsuit or other proceeding or may abandon such payment or reimbursement altogether, in its sole discretion.

9.3.4   RIGHT OF REIMBURSEMENT AND LIEN. It is the intent of the Plan and each Program that a Participant or Beneficiary shall recover only one payment for any cost that is covered under the Plan or a Program. By participating in the Plan and filing a claim for benefits under the Plan, each Participant and Beneficiary agrees that if the Participant or Beneficiary suffers an injury, illness or disability for which another may be responsible or may have a financial or insurance obligation, the Program or the Plan shall be reimbursed from any recovery obtained by a Participant or Beneficiary to the extent of the benefits paid by the Plan or any Program. This includes, for example, recovery of any amount for a Participant's or Beneficiary's injury, illness or disability by way of a settlement or a judgment in or out of a court of law, in which case the Plan or the Program shall be reimbursed out of the recovery for the amounts paid by the Plan or the Program, up to the full amount recovered, without any reduction for legal fees or costs and without regard to whether the Participant or the Beneficiary has been made whole by the recovery. Once the Plan provides benefits to or on behalf of the Participant or a Participant, the Plan and the Program shall automatically have an equitable first lien on the proceeds of any payment, settlement or judgment received by the Participant or Beneficiary for the amount of benefits covered or paid by the Plan or the Program to or on behalf of the Participant or Beneficiary. By filing a claim for benefits under the Plan or a Program, the Participant or the Beneficiary consents to the imposition of such lien on the proceeds. Such lien shall remain in effect until the Plan or the Program is repaid in full for the amount of benefits covered or paid by the Plan or the Program.

The Plan's or the Program's right to recovery shall not be reduced, even if the Participant or Beneficiary receives less in recovery than the full amount of damages claimed or suffered by the Participant or Beneficiary, unless the Plan or the Program agrees to a reduction. The amount of money to be recovered by the Plan or the Program shall not be reduced by any legal fees or costs incurred in connection with obtaining a recovery, unless the Plan or the Program agrees to such reduction.

Under this section, the term "recovery" means any and all sums of money and/or any promise to pay money in the future, received by a Participant or Beneficiary from the person who caused the injury, illness, or disability, or from any other source (such as the Participant's or Beneficiary's, or the third party's other insurance coverage, uninsured, underinsured, homeowners or umbrella insurance policies). "Recovery" includes payments no matter how characterized, including but not limited to sums paid or promised as compensation for actual medical expenses, pain and suffering, aggravation, wrongful death, loss of consortium, punitive or exemplary damages, attorneys' fees, costs, expenses or any other compensatory damages. "Recovery" may be obtained by way of judgment, settlement, arbitration, mediation or otherwise.

If a Participant or Beneficiary declines to pursue a recovery, the Plan or Program is "subrogated" to the Participant's or Beneficiary's rights and shall succeed to all

rights of recovery from any or all third parties, under any legal theory of any type, for one-hundred percent (100%) of any benefits the Plan or the Program pays to or on behalf of the Participant or Beneficiary relating to any illness, injury or disability caused by any third party. This means the Plan or the Program can "step into the shoes of" the Participant or Beneficiary and possess the Participant's or Beneficiary's right to pursue a recovery to the extent of the benefits paid (and to be paid) for the injury, illness, or disability. The Plan and the Program have the option to bring suit against or otherwise make a claim to collect directly from the person or entity that may be responsible for the injury, illness, or disability, with or without the Participant's or the Beneficiary's consent. If the Plan or the Program exercises this option, the Participant or Beneficiary must cooperate in pursuing such recovery, including assisting the Plan's or the Program's attorneys in preparing or pursuing the case, including attendance at hearings, depositions and trial. In the event the Plan or the Program obtains any recovery, the Plan or the Program will apply the monies received first to the Plan or Program as reimbursement for benefits, second to the Plan, the Program or their respective attorneys for costs, expenses and attorneys' fees incurred in connection with the recovery, and third, any remaining balances to the Participant or the Beneficiary. The Plan Administrator, however, may, in its sole discretion, apportion the recovery in some other manner if it chooses to do so.

9.3.5   **RIGHT OF RECOVERY OF OVERPAYMENTS.** The Program or the Benefits Administrator may pay Benefits that should have been paid by another plan or program, organization or person, or may pay Benefits in excess of what should have been paid under this Program.

9.3.6   **COOPERATION BY PARTICIPANT.** By participating in the Plan or a Program and filing a claim for benefits under the Plan or a Program, each Participant or Beneficiary is required to cooperate fully with the Plan, the Program, the Benefits Administrator or their agents in the exercise of these rights of subrogation and recovery, including:

    9.3.6.1   To sign all necessary forms requested by the Plan, the Program or the Benefits Administrator, including, without limitation, an acknowledgement of the Plan's or the Program's rights to reimbursement or subrogation and an assignment of the Participant's or Beneficiary's claims or causes of action against the other party.

    9.3.6.2   To provide the Plan, the Program or the Benefits Administrator with all reasonably necessary information as requested.

    9.3.6.3   To not take any action after the illness, injury or disability that could prejudice the Plan's or the Program's rights as described in this section, or the Plan's or the Program's ability to obtain reimbursement or subrogation.

    9.3.6.4   To promptly notify the Plan or the Program, in writing, of any recovery obtained from the responsible person or entity, or their or the Participant's or the Beneficiary's insurer, whether by judgment, settlement, arbitration or otherwise. Any compromise or settlement entered into by a Participant purporting to reduce or limit the amount of the payment designated as reimbursement for medical or any other

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

expenses covered under the Plan to an amount which is less than the benefits paid or covered by the Plan shall not be effective unless the Plan Administrator or the Company consents thereto in writing.

9.3.7   **APPLICATION OF JUDICIAL DOCTRINES.** The Plan and the Programs' rights of subrogation and reimbursement, and the Plan and the Programs' actual recovery shall not be reduced by any legal fees or costs, or because of the way an award is characterized by a court and shall not be affected, reduced or defeated by the application of the make whole doctrine, Rimes doctrine, common fund doctrine, comparative fault doctrine, contributory negligence doctrine, or other judicial doctrine that purports to reduce or defeat the Plan and the Program's right of recovery.

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

# X.
## AMENDMENT AND TERMINATION

**10.1**  **PLAN AMENDMENT.** The Plan Sponsor reserves the absolute unilateral right to the maximum extent permitted by law to amend or modify the Plan and any Program at any time, in any way, for any reason, including by way of illustration and not by way of limitation, the right to transfer any Program from the Plan into a separate, unrelated plan. In addition, the Plan Sponsor may amend Appendix A to add or delete a Program from the Plan. Upon such action, the Plan will be deemed amended as of the date specified as the effective date by such action or in the instrument of amendment. The effective date of any amendment may be before, on or after the date of such action.

**10.2**  **PLAN TERMINATION.** The Plan Sponsor reserves the absolute unilateral right to the maximum extent permitted by law to terminate the Plan and any Program, in whole or in part, at any time for any reason.

**10.3**  **EFFECT ON OTHER BENEFITS.** The right to amend or terminate the Plan and any Program includes, by way of illustration and not by way of limitation, the right to change, limit, curtail, or eliminate coverage or benefits for any treatment, procedure, service, condition, or status (including with respect to Participants who are receiving benefits or Participants who are Former Employees), regardless of whether the coverage or benefits relate to an injury, defect, illness, disease, condition, or status that was contracted, occurred, or existed before the effective date of the amendment or termination. No Participant or Beneficiary has or will acquire a lifetime right to any benefits under the Plan or any Program, or to eligibility for coverage under the Plan or any Program or to the continuation of the Plan or any Program merely by reason of the fact that the Plan or any Program was in effect during the Participant's or Beneficiary's employment or at the time benefits were received under the Plan or any Program, or at any time thereafter.

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

# XI.
## PARTICIPATING COMPANIES

**11.1** **ADOPTION OF PLAN BY PARTICIPATING COMPANY.** The Company may designate any entity or organization eligible by law to participate in the Plan, and any applicable trust, as a Participating Company by written instrument. Such written instrument will specify the effective date of such designated participation, may incorporate specific provisions relating to the operation of the Plan that apply to the designated Participating Company only and will become, as to such designated Participating Company and its Employees, a part of the Plan. Upon such designation:

11.1.1 Each designated Participating Company will consent to its designation and be conclusively presumed to have agreed to be bound by the terms of the Plan, and any applicable trust agreement, and any and all amendments thereto upon its submission of information to the Plan Administrator required by the terms of or with respect to the Plan or upon making a contribution with respect to the Plan pursuant to the terms of the Plan and will be conclusively presumed to have agreed to any changes or modifications to the Plan that may occur.

11.1.2 The provisions of the Plan, and any applicable trust agreement, will apply separately and equally to each Participating Company and its Employees in the same manner as is expressly provided for the Company and its Employees, except that a Participating Company will not have the power to appoint or otherwise affect the Plan Administrator or any trustee or the power to amend or terminate the Plan.

11.1.3 Each entity specified in Appendix B will be deemed to have adopted the Plan as of the Restatement Effective Date and AT&T Inc., or its delegate, by execution of this restatement will be deemed to have consented to such adoption as of the Restatement Effective Date.

**11.2** **TERMINATION OF PARTICIPATION OF PARTICIPATING COMPANY.** Any Participating Company may, with the approval of the Company, terminate its participation in the Plan and any trust by appropriate action of its board of directors or noncorporate counterpart communicated in writing to the Company, the trustee and the Plan Administrator. Moreover, the Company may, for any reason, terminate a Participating Company's Plan participation at any time by written instrument delivered to the Company, any applicable trustee and the terminated Participating Company.

A Participating Company's Plan and trust participation will automatically cease if and when such Participating Company is no longer eligible by law to participate in the Plan or trust.

**11.3** **DIVESTITURE.** A Participating Company will immediately no longer be a Participating Company at such time that it is no longer an Employer.

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

# XII.
## MISCELLANEOUS

**12.1** **EXCLUSIVE BENEFIT.** This Plan and the Programs have been established for the exclusive benefit of Participants and Beneficiaries, and, except as otherwise provided herein, all contributions under the Plan or any Program may be used only for such purpose or to pay reasonable expenses of the Plan or a Program.

**12.2** **NON-ALIENATION OF BENEFITS.** No benefit, right or interest of any Participant or any Beneficiary under the Plan or any Program shall be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, seizure, attachment or legal, equitable or other process, or be liable for, or subject to, the debts, liabilities or other obligations of such person, except as otherwise required by law or as otherwise provided in a Program.

**12.3** **LIMITATION OF RIGHTS.** Neither the establishment nor the existence of the Plan or any Program, nor any modifications thereof, shall operate or be construed so as to:

    12.3.1 Give any person any legal or equitable right against the Company, any Participating Company, an Employer or any Benefits Administrator, except as expressly provided herein or required by law; or

    12.3.2 Create a contract of employment with any Employee, obligate an Employer to continue the service of any Employee or affect or modify the terms of an Employee's employment in any way.

**12.4** **GOVERNING LAWS.** The Plan and the Programs are governed by the Code and ERISA to the extent applicable. To the extent not preempted by federal law, the provisions of any insurance policy that provides benefits under the Plan or any Program shall be construed, enforced and administered according to the applicable state insurance laws. To the extent not preempted by federal law, all other provisions of this Plan and any Program shall be construed, enforced and administered according to the laws of the State of Texas (excluding any laws that direct the application of another jurisdiction's laws), unless a Program document explicitly requires application of the laws of a different state. Nothing herein shall be construed as waiving any preemption of the application of state insurance or other state laws to the Plan or any Program to the extent such preemption is provided under ERISA. No Employer guarantees the favorable tax treatment sought by this Plan or any of the Programs.

**12.5** **SEVERABILITY.** If any provision of the Plan or any Program is held to be invalid or unenforceable, its invalidity or unenforceability shall not affect any other provision of the Plan or the Program, and the Plan and the Program shall be construed and enforced as if such invalid or unenforceable provision had not been included herein.

**12.6** **HEADINGS AND CAPTIONS.** The headings and captions contained herein are inserted only as a matter of convenience and for reference, and in no way define, limit, enlarge or describe the scope or intent of the Plan or any Program nor in any way shall affect the Plan, any Program or the construction of any provision thereof.

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

**12.7** **REFERENCES.** Except as otherwise indicated, all references in this Plan to a Program, Article, Section or Appendix shall be to such Program, Article, Section or Appendix, as amended from time to time, which is in effect as of the applicable time.

**12.8** **GENDER AND NUMBER.** Unless the context of any Plan or Program provision clearly indicates otherwise, the masculine gender shall include the feminine, the singular form shall include the plural form and the plural form shall include the singular form.

**12.9** **EXPENSES.** The expenses of administering the Plan and each Program, including without limitation the expenses of the Plan Administrator or any Fiduciary properly incurred in the performance of its duties under the Plan or a Program, shall be paid by the Plan or a Program if not first paid by the Employers.

**12.10** **CONTINUATION OF COVERAGE.** The Plan and the applicable Programs shall comply with requirements for the continuation of coverage under the Family and Medical Leave Act of 1993, as amended, the Uniformed Services Employment and Reemployment Act of 1994, as amended, and the Consolidated Omnibus Reconciliation Act of 1995, as amended in accordance with the terms and conditions set forth in the applicable Program.

**12.11** **HIPAA CERTIFICATION.** Any Group Health Program that is subject to the portability provisions of HIPAA and imposes a preexisting condition exclusion shall apply an individual's aggregate period of creditable coverage under another health care program as of the individual's Group Health Program enrollment date to reduce the Group Health Program's preexisting condition exclusion period in a manner that conforms with the portability provisions of HIPAA, provided that the break between the individual's other health care program coverage and the individual's enrollment date under the Group Health Program (excluding any waiting period) during which the individual has no creditable coverage is less than 63 days.

If an Employee or his or her dependent is unable to obtain a certificate of creditable coverage from his or her prior health care coverage, the Employee or his or her dependent may demonstrate proof of creditable coverage without a certificate in a manner permitted under the Group Health Program which conforms with the portability provisions of HIPAA.

A Group Health Program that is subject to the portability provisions of HIPAA shall provide written confirmation of the Participant's health care coverage under the Group Health Program by issuing a certificate of creditable coverage to the Participant at such times and in such manner as is required by HIPAA.

Effective January 1, 2015, this requirement becomes null and void based on regulations issued under the Patient Protection and Affordable Care Act and shall automatically be stricken from this document as of such date.

**12.12** **QUALIFIED MEDICAL CHILD SUPPORT ORDERS.** The Plan Administrator shall establish reasonable procedures for determining whether a court order or administrative decree requiring medical coverage for a dependent child meets the requirements for a "qualified medical child support order" set forth in Section 609 of ERISA. The Plan will comply with any court order or administrative decree determined through application of such procedures to be a "qualified medical child support order" issued by a court of competent

jurisdiction or administrative body that requires the Plan to provide medical coverage to a dependent child of an Employee. The Plan Administrator shall have the authority to enroll the Employee and child if the Employee is not a current Participant at the time the "qualified medical child support order" is received and fails to voluntarily enroll. The cost of coverage or any additional cost of such coverage, if any, shall be borne by the Employee.

12.13  **RIGHT OF RECOVERY.** If the Plan has made an erroneous or excess payment to any Participant, the Plan Administrator shall be entitled to recover such excess from the individual or entity to whom such payments were made. The recovery of such overpayment may be made by offsetting the amount of any other benefit or amount payable by the amount of the overpayment under the Plan.

12.14  **FACILITY OF PAYMENT.** Benefits payable to a Participant or Beneficiary who is unable to execute a proper receipt may be paid to a relative or other proper person selected by the Benefits Administrator to use for the benefit of the Participant or the Beneficiary, respectively, and the receipt by such person will be a sufficient discharge.

12.15  **PUBLICATION OF EXPLANATORY MATERIALS.** From time to time, the Plan Administrator, a Benefits Administrator and/or a Participating Company may cause to be issued, to Employees and others, commentaries, collective bargaining agreements or other materials in connection with an explanation of the provisions of the Plan or any Program and their operation. None of such materials shall have the effect of modifying, changing, amending or altering the provisions of the Plan or any Program.

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

# APPENDIX A
# PROGRAMS

The following Programs shall be treated as comprising the Plan effective as of January 1, 2014:

**Medical Programs**

**(Fully Insured Options are found in Appendix C.)**

- AT&T Medical Program

- AT&T Mobility Medical Program

- AT&T of Puerto Rico, Inc. Medical Program

- AT&T Southwest Medical Program

- AT&T Corp. Employee Medical Program

- AT&T West Medical Program

- AT&T East Bargained Employee Medical Program

- AT&T Midwest Bargained Employee Medical Program

- AT&T Southeast Employee Medical Program


**Dental Programs**

**(Fully Insured Options are found in Appendix E. The Patient Charge Schedule for each option below is included in Appendix D.)**

- AT&T Bargained Employee Dental Program

- AT&T Dental Program

- AT&T East Bargained Employee Dental Program

- AT&T West Bargained Employee Dental Program


**Disability Programs**

- AT&T Disability Income Program (for Employees)

- AT&T Disability Income Program for Bargained Employees (for Employees)

- AT&T Disability Income Program for Southwest Bargained Employees (for Employees)

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

- AT&T East Disability Benefits Program  (for Employees)

- AT&T Midwest Disability Benefits Program (for Employees)

- AT&T Mobility Disability Benefits Program  (for Employees)

- AT&T Mobility Disability Benefits Program for Southwest Bargained Employees (for Employees)

- AT&T Southeast Disability Benefits Program (for Employees)

- AT&T Southeast Disability Benefits Program for Special Represented Employees (for Employees)

- AT&T West Disability Benefits Program (for Employees)

- Legacy AT&T Disability Benefits Program (for Employees)

**Life Insurance Programs**

- AT&T Group Life Insurance Program

**Vision Programs**

- AT&T Midwest Vision Program

- AT&T West Vision Program

- AT&T East Vision Program

- AT&T Vision Program

**AT&T Retiree Death Benefit Program**

The portion of the AT&T Retiree Death Benefit Program applicable to Employees consists of the retiree death benefit provisions documented in the following:

- AT&T Legacy Bargained Program of the AT&T Pension Benefit Plan

- AT&T Legacy Management Program of the AT&T Pension Benefit Plan

- East Program of the AT&T Pension Benefit Plan

- Midwest Program of the AT&T Pension Benefit Plan

- Mobility Bargained Program of the AT&T Pension Benefit Plan

- Nonbargained Program of the AT&T Pension Benefit Plan

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

- Southeast Program of the AT&T Pension Benefit Plan

- Southeast Management Program of the AT&T Pension Benefit Plan

- Southwest Program of the AT&T Pension Benefit Plan

- West Program of the AT&T Pension Benefit Plan

**Other Programs**

- AT&T CarePlus – A Supplemental Benefit Program

- AT&T Health Reimbursement Account Program

- AT&T International Health Program (Medical, Dental and Vision benefits)

- LM Berry and Company Health and Accident, Weekly Indemnity, Long-Term Disability, Dental Benefits & Retired Lives Plan (for Employees)

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

# APPENDIX B
## PARTICIPATING COMPANIES

| NAME |
| --- |
| Aio Wireless LLC |
| Alascom, Inc. |
| AT&T Billing Southeast, LLC |
| AT&T Corp. |
| AT&T Global Communication Services, Inc. |
| AT&T Government Solutions, Inc. |
| AT&T Management Services, L.P. |
| AT&T Mexico, LLC |
| AT&T Mobility Puerto Rico Inc. |
| AT&T Mobility Services LLC |
| AT&T of the Virgin Islands, Inc. |
| AT&T of Puerto Rico, Inc. |
| AT&T Services, Inc. |
| AT&T Support Services Company Inc. |
| AT&T Technical Services Company, Inc. |
| AT&T World Personnel Services, Inc. |
| BellSouth Communication Systems, LLC |
| BellSouth Telecommunications, LLC |
| Illinois Bell Telephone Company |
| Indiana Bell Telephone Company, Incorporated |
| Michigan Bell Telephone Company |
| Nevada Bell Telephone Company |
| Pacific Bell Telephone Company |
| SBC Global Services, Inc. |
| SNET Diversified Group, Inc. (Deleted effective Dec. 2013) |
| Southwestern Bell Telephone Company |
| Teleport Communications America, LLC |
| The Ohio Bell Telephone Company |
| The Southern New England Telephone Company |
| Wisconsin Bell, Inc. |

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

# APPENDIX C
## SCHEDULE OF MEDICAL FULLY INSURED OPTIONS

Each Fully Insured Option identified in the following table ("Table I") with the indicated state location, is offered during 2014 under the Fully Insured Option of one of the Programs identified as Medical Programs in Appendix A, except the AT&T International Health Program. The certificate or evidence of coverage for each Fully Insured Option, as amended from time to time, is incorporated by reference into and made a part of the Program document for the Program that offers the particular Fully Insured Option during 2014.

| TABLE I: MEDICAL FULLY INSURED OPTIONS OFFERED DURING 2014 | |
|---|---|
| **HMO NAME** | **LOCATION** |
| UHC Arizona | Arizona |
| Health Advantage | Arkansas |
| Health Net California | California |
| Kaiser Permanente Northern CA | California |
| Kaiser Permanente Southern CA | California |
| UnitedHealthcare California | California |
| Kaiser Colorado | Colorado |
| Avmed Florida | Florida |
| Kaiser Georgia | Georgia |
| TakeCare Health Plan | Guam |
| Hawaii Medical Services Association PPO | Hawaii |
| HMO Illinois | Illinois |
| Coventry Health Plan of IL (formerly PersonalCare Group Health Plan & Mercy MO) | Illinois |
| Advantage Health Plan | Indiana |
| Preferred Health Systems Kansas (formerly Preferred Plus of Kansas) | Kansas |
| Kaiser Mid-Atlantic | MD/DC/VA |
| Blue Care Network Michigan | Michigan |
| Health Alliance Plan | Michigan |
| Priority Health | Michigan |
| Emblem Health New York (formerly HIP New York) | New York |
| MVP New York | New York |
| Hometown Health Plan (of the Upper OH Valley) | Ohio |
| Kaiser Permanente Ohio | Ohio |

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

| TABLE I: MEDICAL FULLY INSURED OPTIONS OFFERED DURING 2014 | |
| --- | --- |
| **HMO NAME** | **LOCATION** |
| Paramount Health Plan | Ohio |
| UnitedHealthcare Oklahoma | Oklahoma |
| Kaiser Northwest | Oregon/Washington |
| UPMC Pennsylvania | Pennsylvania |
| Triple S | Puerto Rico |
| UnitedHealthcare Texas | Texas |
| Group Health Cooperative of S. Cen. WI | Wisconsin |

# APPENDIX D
## DENTAL PROGRAM SCHEDULES OF ALLOWANCE

The dental benefits (other than those provided under a Fully Insured Option) of the respective dental benefit Programs (or a portion thereof), identified in the left-hand column of the table set forth below, are determined in accordance with the applicable Dental Program Schedule of Allowances identified for such Program in the right-hand column of the table. All of the Dental Program Schedules of Allowance identified in the table set forth below (and any supplement or amendment thereto) are hereby incorporated by reference into and made a part of this Appendix D.

| NAME OF DENTAL BENEFIT PROGRAM | SUB-APPENDIX NUMBER | DESCRIPTION OF APPLICABLE DENTAL PROGRAM SCHEDULE OF ALLOWANCE | |
|---|---|---|---|
| AT&T West Dental Program | D-3 | Name of Schedule: | AT&T West Dental Program, Dental PPO Option, Schedule of Allowances |
| | | Schedule Number: | DPPO (5%) CDT13 and DPPO CDT13 |
| | | Name of Issuer: | Cigna |
| | | Date of Schedule: | Jan. 2013 |
| AT&T Dental Program | D-4 | Name of Schedule: | AT&T Dental Program, Dental PPO, Schedule of Allowances |
| | | Schedule Number: | DPPO CDT13, ONA CDT13 |
| | | Name of Issuer: | Cigna |
| | | Date of Schedule: | Jan 2013 |
| AT&T Bargained Employee Dental Program | D-4 | Name of Schedule: | AT&T Bargained Employee Dental Program, Dental PPO, Schedule of Allowances |
| | | Schedule Number: | DPPO CDT13 |
| | | Name of Issuer: | Cigna |
| | | Date of Schedule: | Jan. 2013 |
| AT&T East Dental Program | D-9 | Name of Schedule: | AT&T East Dental Program, Dental PPO, Schedule of Allowances |
| | | Schedule Number: | DPPO CDT13 |
| | | Name of Issuer: | Cigna |
| | | Date of Schedule: | Jan. 2013 |

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

# APPENDIX E
# FULLY INSURED (DHMO) NATIONAL COPAYMENT BASIS SCHEDULE AND PATIENT CHARGES SCHEDULES

The Fully Insured (DHMO) National Copayment Basis Schedule, identified in the left-hand column of the first table presented below ("Table I"), provides the basis for the calculation of those patient charges listed as a percentage on the Patient Charges Schedules identified in the right-hand column of Table I. Each of the respective Patient Charges Schedules identified in the right-hand column of Table I, applies to the Fully Insured Option of the dental benefit Program, specified as part of the description of the Patient Charges Schedule in the right-hand column of Table I.

The Fully Insured Option dental benefits of the respective Programs, identified in the left-hand column of the second table set forth below ("Table II"), are determined in accordance with the Patient Charges Schedule identified for each such Program in the right-hand column of Table II.

The Fully Insured (DHMO) National Copayment Basis Schedule and all of the Patient Charges Schedules identified in Table I and Table II (including any and all supplements and amendments thereto) are hereby incorporated by reference and made a part of this Appendix E.

| TABLE I: FULLY INSURED (DHMO) NATIONAL COPAYMENT BASIS SCHEDULE | | |
|---|---|---|
| DESCRIPTION OF FULLY INSURED (DHMO) NATIONAL COPAYMENT BASIS SCHEDULE | SUB-APPENDIX NUMBER | DESCRIPTION OF APPLICABLE PATIENT CHARGES SCHEDULES |
| AT&T Dental Program<br>AT&T Bargained Employee Dental Program<br>AT&T West Dental Program | E-1 | Name of Schedule:   CIGNA Dental Care (DHMO) National Copayment Basis Schedule<br>Schedule Number:   CBS NS1, CBS NS2 SC, CBS NS3 KY, & CBS NS4 NC and VA<br>Name of Insurer:   CIGNA<br>Date of Schedule:   September 2012 |

AT&T Umbrella Benefit Plan No. 3
Amended and Restated: Jan. 1, 2014

| TABLE II: PATIENT CHARGES SCHEDULES | | |
|---|---|---|
| **NAME OF DENTAL BENEFIT PROGRAM** | **SUB-APPENDIX NUMBER** | **DESCRIPTION OF APPLICABLE PATIENT CHARGES SCHEDULE** |
| AT&T West Dental Program | E-5 | Name of Schedule: Cigna Dental Care (DHMO) Patient Charge Schedule<br>Schedule Number: NS403, NS423, NS433, & NS443<br>Name of Insurer: CIGNA<br>Date of Schedule: Dec. 2012 |
| AT&T Dental Program | E-6 | Name of Schedule: Cigna Dental Care (DHMO) Patient Charge Schedule<br>Schedule Number: NS303, NS323, NS333 & NS343<br>Name of Insurer: CIGNA<br>Date of Schedule: Dec. 2012 |
| AT&T Bargained Employee Dental Program | E-6 | Name of Schedule: Cigna Dental Care (DHMO) Patient Charge Schedule<br>Schedule Number: NS303, NS323, NS333 & NS343<br>Name of Insurer: CIGNA<br>Date of Schedule: Dec. 2012 |