IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| REDOAK HOSPITAL, LLC, § | |
|    *Plaintiff*, § | |
| § | |
| V. § | CIVIL ACTION NO. 4:16-CV-01542 |
| § | |
| AT&T SERVICES, INC., § | |
|    *Defendant*. § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

On October 19, 2016, Defendant AT&T Services, Inc. moved to dismiss Plaintiff Redoak Hospital, Inc.'s suit under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Docs. #33, #33-1. In response to that motion, Plaintiff has filed a Second Amended Complaint, which moots many of Defendant's arguments,[1] along with the instant response addressing the arguments not directly mooted by its amended pleading. For the reasons that follow, the Court must deny Defendant's motion to dismiss.

## I
## FACTUAL SUMMARY

Plaintiff is a medical services provider in Houston, Texas. Defendant is the Plan Administrator designated by AT&T, Inc. to administer its self-insured health benefit plans, which are governed by ERISA. Doc. #33-4 at 169, 208, 220; Doc. #33-5 at 114–15, 159–60. The relevant plans are known as AT&T Umbrella Benefit Plan No. 1 and AT&T Umbrella Benefit Plan No. 3 (hereinafter, collectively the "Plans"). Importantly, Defendant contracted with United Healthcare Services, Inc. ("United") to act as the Medical Benefits Administrator

---

[1] Contemporaneous with filing this response, Plaintiff has filed a Second Amended Complaint, removing all of the previously alleged non-benefit claims. In this regard, Defendant's arguments related to non-benefit claims are all mooted and therefore not addressed in this response.

charged with processing benefits claims on behalf of beneficiaries of the Plans. Equally important, Plaintiff is an out-of-network provider with respect to the Plans, as well as United.

In early 2014, three beneficiaries of the Plans—EK, PM, and WS (hereinafter, collectively "Beneficiaries" or individually "Beneficiary")—received treatment from Plaintiff. Before providing treatment to Beneficiaries, Plaintiff verified Beneficiaries' insurance coverage. Also before providing treatment, each Beneficiary executed a Legal Assignment of Benefits and Designation of Authorized Representative form in favor of Plaintiff. *See* Doc. #16-4.

After providing treatment, based on its possession of these forms, Plaintiff submitted Beneficiaries' bills to United for payment. United reviewed the bills, reduced the billed amounts based on the purported terms of the Plans, and determined each Beneficiary's personal responsibility, as well as the Plans' payment responsibility.

Thereafter, United provided Plaintiff with Explanation of Benefits forms, indicating that although it had determined that Beneficiaries were entitled to payment pursuant to the Plans, such payment would not be remitted to Plaintiff due to an alleged and disputed past overpayment. Importantly, the disputed past overpayments were not made on behalf of Beneficiaries; rather, the disputed over payments were made to Plaintiff, several months earlier, on behalf of several individuals who were all insured by different plans.

Because Beneficiaries assigned Plaintiff their rights to benefit payments under the Plans, and the Plans do not provide for the type of offsets kept by United with respect to Beneficiaries, Plaintiff filed the instant suit.

## II
## DISCUSSION

In its motion to dismiss, Defendant advances three arguments in favor of dismissing Plaintiff's complaint: (A) Redoak lacks derivative standing to sue under the Employee

Retirement Income Security Act ("ERISA") because its assignments are prohibited by anti-assignment clauses contained in the Plans; (B) Redoak failed to state a claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B); and (C) Redoak has failed to state a claim for attorney's fees under 29 U.S.C. § 1132(g)(1).

Plaintiff addresses each argument in turn.

### A
### Redoak possess derivative standing

As mentioned above, Beneficiaries executed valid Legal Assignment of Benefits and Designation of Authorized Representative forms before receiving treatment from Redoak. *See* Doc. #16-4. It is well settled in this circuit that "a health care provider who receives an assignment from an ERISA plan beneficiary can achieve derivative standing." *Texas Gen. Hosp., LP v. United Healthcare Services, Inc.*, 3:15-CV-02096-M, 2016 WL 3541828, at *7 (N.D. Tex. June 28, 2016) (collecting cases). Recognizing this general proposition of law, Defendant claims, "each one of the purported assignments are rendered invalid by the Umbrella Plans' express anti-assignment provisions." Doc. #33-1 at 7.

Defendant's argument misses the mark because the Plans' anti-assignment provisions are ineffective as a matter of law.

### 1
### The Plans' anti-assignment provisions are ineffective

The Plans anti-assignment provisions are ineffective for two reasons: (i) they do not specifically prohibit assignments to medical service providers; and (ii) Defendant, through United and its own course of conduct, has waived, or is estopped from asserting, the anti-assignment clauses.

### i. The Plans' anti-assignment clauses are "typical spendthrift" provisions

Defendant argues Plainitiff's standing to bring this suit as an assignee of Beneficiaries is precluded by the following provision of the Plans:

> No benefit, right or interest of any Participant or any Beneficiary under the Plan or any Program shall be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, seizure, attachment or legal, equitable or other process, or be liable for, or subject to, the debts, liabilities or other obligations of such person, except as otherwise required by law or as otherwise provided in a Program.

Doc. #33-2 at 30; Doc. #33-3 at 30.  This language is substantially similar to that considered by the Fifth Circuit in *Hermann Hospital v. MEBA*, 959 F.2d 569 (5th Cir. 1992), *overruled on other grounds by Access Mediquip, L.L.C. v. United Health Care Ins. Co.*, 698 F.3d 229 (5th Cir. 2012).

In *Hermann Hospital v. MEBA*, the Fifth Circuit held the following anti-assignment clause did not apply to medical service providers but applied only to "unrelated, third-party assignees ... such as creditors":

> No employee, dependent or beneficiary shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge, commute, or anticipate any benefit payment hereunder, and any such payment shall not be subject to any legal process to levy execution upon or attachment or garnishment proceedings against for the payment of any claims.

*Id*. at 574-75.  In doing so, the Court explained,

> [t]he typical "spendthrift" language of the clause is clearly intended to prevent either voluntary or involuntary assignment of payments under the Plan to those creditors of the participant or beneficiary of the Plan which have no relationship to the providing of covered benefits.

*Id*. at 575.

Subsequently, in *LeTourneau v. Wal–Mart*, the Fifth Circuit held the following anti-assignment clause did prohibit assignments to medical service providers:

4

> Medical coverage benefits of this Plan may not be assigned, transferred or in any way made over to another party by a participant. Nothing contained in the written description of Wal–Mart medical coverage shall be construed to make the Plan or Wal–Mart Stores, Inc., liable *to any third-party to whom a participant may be liable for medical care, treatment, or services.*

298 F.3d 348, 349 (5th Cir. 2002) (emphasis added). The court reasoned: "In no way resembling typical spendthrift trust provisions or the third-party creditor anti-assignment clause provision in *Hermann II*, … [t]his language is unquestionably directed at providers of health care services such as LeTourneau in precisely the way that the anti-assignment language [in] *Hermann II* was not." *Id*. at 351.

A few years after *LeTourneau*, the Fifth Circuit further explained the distinction between the anti-assignment provisions in *LeTourneau* and *Hermann II*:

> The *Hermann II* court found that the language in the [anti-assignment] clause was similar to spendthrift provisions in trusts. We have, however, [in *LeTourneau*,] enforced an anti-assignment clause in which the clause did not resemble a spendthrift provision and unambiguously stated that the plan would not be liable to any third-party to whom a participant may be liable for medical care, treatment, or services.

*Abilene Reg'l Med. Ctr. v. United Indus. Workers Health & Benefits Plan*, 2007 WL 715247, at *4 (5th Cir. 2007) (internal quotation marks and citation omitted).

Here, the anti-assignment provision contained in the Plans is substantially similar to the provision considered in *Hermann II*. In this regard, the Plans' anti-assignment provision is a prototypical spendthrift provision. *See e.g.*, Stewart E. Sterk, *Asset Protection Trusts: Trust Law's Race to the Bottom?*, 85 CORNELL L. REV. 1035, 1042 n.44 (2000) ("A typical spendthrift provision might read: The interests of my trust beneficiary, whether in trust income or trust principal, shall not be capable of assignment, anticipation, or seizure by legal process.")(internal quotation marks and citation omitted); Karen E. Boxx, *Gray's Ghost-A Conversation About the Onshore Trust*, 85 IOWA L. REV. 1195, 1201 n.23 (2000) ("A typical spendthrift provision reads

5

as follows: No interest in any trust estate shall vest in any beneficiary until actual payment by the Trustee, and no part thereof shall be liable for the debts of any beneficiary or be subject to the right on the part of any creditor of any beneficiary to reach the same by any legal proceeding. No beneficiary shall have any power to dispose of, encumber, or anticipate any portion of said trust estate.").

Because the anti-assignment provision here is comparable to that considered in *Hermann II*, the Court must find that the anti-assignment clause in the Plans does not prohibit Beneficiaries' assignment to Plaintiff. *See Trueview Surgery Ctr. One L.P. v. OneSubsea LLC Comprehensive Self-Insured Welfare Benefits Plan*, 4:14-CV-2577, 2015 WL 4431408, at *3 (S.D. Tex. July 17, 2015) ("The Court is compelled by *Hermann II* to hold the anti-assignment clause in the Policy does not prohibit the Patient's assignment to TrueView of his rights to pursue benefits.").

### ii. Defendant has waived, or is estopped from asserting, the anti-assignment clause

Even if the Court finds the anti-assignment provision effective, Defendant has waived or should be stopped from relying on such. This is so due to United's handling of Beneficiaries' claims, as well as Defendant's implicit and explicit approval of the same. As explained in *Shelby County Health Care Corp. v. Genesis Furniture Indus., Inc.*,

> courts have recognized exceptions to the applicability of a Plan's non-assignment clause. Under one of these exceptions—the doctrine of estoppel—the Fifth Circuit has held that an ERISA Plan was estopped from enforcing its non-assignment clause because of the Plan's protracted failure to assert non-assignment when the hospital requested payment under an assignment of payment provision for covered benefits. Thus, a delay by Genesis in raising the non-assignment clause could equitably estop its enforcement.

100 F. Supp. 3d 577, 581 (N.D. Miss. 2015) (internal quotation marks, alterations, and citations omitted).[2]

Here, the circumstances surrounding the Plans' anti-assignment provision is similar to *Herman II* in that the "anti-assignment clause was contained in the documentation establishing the Plan[s]" and "[Redoak], which was not privy to the Plan[s], had no opportunity to review that documentation." *Hermann Hosp.*, 959 F.2d at 574. However, United and Defendant's course of conduct here is significantly more egregious than that considered in *Herman II*. This is so because United and Defendant, contrary to Defendant's arguments in its motion to dismiss, have treated Plaintiff as an assignee of Beneficiaries all along.

The manner in which United and Defendant have treated Redoak as an assignee is subtle, flagrant, and best illustrated by considering United's handling of Beneficiaries' bills.

**Bill Processing.** When a Plan Beneficiary receives treatment, the bills may be submitted to United for payment in at least three different ways. First, a Plan Beneficiary can submit the bills on his or her own behalf; in which case, according to the Plans, United will process the claim and pay "Benefits … directly to [the Plan Beneficiary]." Doc. #33-4 at 164; Doc. #33-5 at 115. Second, a Plan Beneficiary can designate a Provider as an authorized representative; in which case, according to the Plans, United will process the claim and pay Benefits "directly to the Provider."[3] *Id*. Importantly, as eloquently explained in Defendant's motion to dismiss:

---

[2] The doctrine of equitable estoppel that the Courts relied upon in *Shelby County Health Care Corp.* and in *Herman II* did not turn upon the three elements of an ERISA-estoppel claim, as set forth in *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444–45 (5th Cir. 2005). Instead, for purposes of finding equitable estoppel in relation to an anti-assignment clause, the Court considered the Defendant's course of conduct. *See Shelby County Health Care Corp.*, 100 F. Supp. 3d at 581–82 ("In light of these circumstances and the Fifth Circuit's holding in *Hermann Hosp.*, the Court finds that Genesis is equitably estopped from raising the non-assignment clause as a preclusive defense at this late stage."); *Hermann Hosp.*, 959 F.2d at 575 ("We hold that MEBA is estopped to assert the anti-assignment clause now because of its protracted failure to assert the clause when Hermann requested payment pursuant to a clear and unambiguous assignment of payments for covered benefits.").

[3] Arguably, this language actually describes an assignment, as opposed to an authorized representative. This is so because "**a patient's authorized representative is not entitled to direct payment of benefits**. Such an individual

7

> In the case of an authorized representative, the claimant remains the party-in-interest and is the beneficiary of any recovery; the authorized representative is merely an intermediary or "spokesperson" acting on their behalf.

Doc. #33-1 at 8–9. Finally, a Plan Beneficiary can assign its benefits to a Provider—though Defendant disputes that such is permitted under the Plans. An assignment differs from designation as an authorized representative in a few key respects. Again, as explained in Defendant's motion to dismiss:

> [A]n assignee is the lawful owner of the claim, is entitled to prosecute and dispose of the claim without consultation with the assignor, and is itself entitled to any recovery.

Doc. #33-1 at 9 (citing *Quality Infusion Care, Inc., v. Health Care Service Corporation*, 628 F.3d 725, 729 (5th Cir. 2010) ("After an assignment, the assignor's right to performance is extinguished in whole or in part and the assignee acquires a right to such performance.")).

Here, Beneficiaries did not personally submit their bills to United for payment. Thus, United processed the bills submitted by Redoak because it regarded Redoak as either an authorized representative or an assignee of Beneficiaries.

United did not regard Redoak as a mere authorized representative when it processed Beneficiaries' bills. The best evidence of this fact is United's practice of recouping alleged and disputed overpayments made to Redoak in the past by withholding payment on Beneficiaries claims. In doing so, United **did not treat Beneficiaries as the parties in interest or Redoak as a mere spokesperson for Beneficiaries**. To the contrary, United treated Redoak as the owner of the claims it submitted on behalf of Beneficiaries; and by doing so, United felt empowered to withhold from Redoak the benefits payments that were required by the Plans. To be clear, if Beneficiaries had submitted their bills directly, United could not have withheld payment to

---

is authorized only to 'pursue a benefit claim or appeal of an adverse benefit determination' on behalf of another." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group, Inc.*, 99 F. Supp. 3d 1110, 1144 (C.D. Cal. 2015) (quoting 29 C.F.R. 2560.503–1(b)(4)) (alteration omitted).

Beneficiaries based on a past overpayment that their chosen medical provider allegedly received. If this is true with respect to direct payment submissions, it must also be true if Redoak was merely acting as an authorized representative or spokesperson of Beneficiaries. This point is more clearly illustrated by considering the mechanics of benefits payments under the Plans.

Pursuant to section 4.4(b) of the Services Agreement executed between Defendant and United, United is charged with the responsibility of administering certain AT&T trust accounts for the purpose of paying Plan benefits; in other words, United is authorized to remove funds from AT&T trust accounts to pay Plan benefits. *See* Ex. C at 44–46 (UH Service Agreement). Hence, once United determines the benefits that are payable under the Plans, it may remit payment to a Beneficiary from the AT&T trust account. This did not happen here.

Here, United took money from the AT&T trust account and transferred such funds to its own account, supposedly to make itself whole for a past overpayment made to Redoak on behalf of persons who are strangers to the Plans. Again, this action could not possibly have been taken directly against Beneficiaries—it could only occur if United regarded the benefits funds as Redoak's.

Based on the arguments above, the Court should have no trouble concluding that United regarded Redoak as an assignee of Beneficiaries. Importantly, Defendant has implicitly and explicitly cosigned and adopted United's practice. In its motion to dismiss, Defendant repeatedly refers to United's offset practice as a mere "accounting dispute" between United and Redoak. Doc. #33-1 at 1, 13, 14. Of course, this description undermines the notion that Redoak was merely acting as a spokesperson of Beneficiaries; after all, past accounting issues between United and Redoak would be completely immaterial and irrelevant if Redoak was merely acting as the spokesperson of Beneficiaries. In this regard, Defendant's motion to dismiss is inherently

contradictory: on the one hand, Defendant seeks to rely on the anti-assignment provision, while on the other hand repeatedly supporting United's handling of the payment of Plan Benefits, which was only possible by United treating Redoak as an assignee of Beneficiaries.

Given these extraordinary facts, the Court should find that Defendant has waived or is equitably estopped from now raising the anti-assignment clause as a preclusive defense. *See Shelby County Health Care Corp.*, 100 F. Supp. 3d at 581–82; *see also Blum v. Spectrum Rest. Group, Inc.*, 261 F. Supp. 2d 697, 716–17 (E.D. Tex. 2003), *aff'd sub nom. Blum v. Spectrum Rest. Group-Employees Group Life & Supplemental Life Plan*, 140 F. App'x 556 (5th Cir. 2005) (explaining in ERISA context that "[w]aiver is the voluntary or intentional relinquishment of known right" and "is a distinct claim from equitable estoppel and a waiver claim does not require reliance") (internal quotation marks and citations omitted).

## B
## Redoak has presented a plausible claim for benefits under 29 U.S.C. § 1132(a)(1)(B)

Defendant next challenges whether Plaintiff has plausibly alleged a claim for denial of benefits. Doc. #33-1 at 13–14. Defendant first argues, "Redoak is not making a claim for 'benefits due to [it] under the terms of [a] plan.'" Doc. #33-1 at 13 (citing 29 U.S.C. § 1132(a)(1)(B)). This argument illustrates a fundamental misunderstanding on Defendant's part.

Plaintiff's claim is a quintessential denial of benefits claim. Beneficiaries received treatment from Plaintiff. United determined how much money the Plan was responsible for paying. However, none of the money United determined was payable under the Plans was paid to Beneficiaries or their assignee, Plaintiff. Although Defendant is choosing to stick its head in the sand by describing United's withholding of benefits payments as a mere "accounting dispute," the fact of the matter is the Plans have not remitted payment to Beneficiaries or Plaintiff for the healthcare services that Beneficiaries received from Plaintiff.

Defendant's same fundamental misunderstanding is directly responsible for its next argument:

> RedOak points to no plan provision allowing it to keep the overpayment it received and it points to no plan precluding the offset methodology United applied.[4] Nothing in ERISA's civil enforcement provisions allows a claimant to receive anything other than what the plan terms provide. Not only has RedOak not been denied benefits, but to allow RedOak to retain the previous overpayments from United while also requiring AT&T Services to pay RedOak an additional amount, would give RedOak a windfall.

Doc. #33-1 at 13–14.

This argument misses the mark. As explained above, Plaintiff has been denied benefits: it has never received payment from the Plans on behalf of Beneficiaries. United's alleged and disputed past overpayments to Plaintiff does not change this simple fact! Defendant cannot dispute that under the Plans a Beneficiary is entitled to payment of allowable amounts, nor can Defendant dispute that due to the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and other privacy laws Plan Beneficiaries are not even entitled to review the documentation that would substantiate United's alleged past overpayments to Plaintiff. This is true because, as explained above, those alleged overpayments were made on behalf of patients insured under different stranger plans. **In this regard, Defendant's position is ironic because United is actually the party purportedly receiving a windfall; after all, Beneficiaries of its Plans have received treatment and the Plans have not paid Plaintiff a single dime (again, based on alleged past overpayments that have absolutely nothing to do with Defendant's Plans).**

Finally, citing *LifeCare Mgmt. Services LLC v. Ins. Mgmt. Adm'rs Inc.*, Defendant claims that it is not a proper defendant. Doc. #33-1 at 14 (citing 703 F.3d 835, 844 (5th Cir. 2013)).

---

[4] Curiously, as explained in detail above, Defendant is advancing an argument that assumes that Plaintiff is an assignee of Beneficiaries.

Defendant argues that the Fifth Circuit employs a "restrained functional test" to determine proper party defendants, which looks to determine "whether the named defendant had 'actual control' over the allegedly improper benefits decision." *Id*. Relying on this argument, Defendant contends that it is not a proper defendant because "the plan has delegated control over the claims process and responsibility for benefits claims decisions to United." Doc. #33-1 at 14.

This argument is unpersuasive because *LifeCare Mgmt. Services LLC* does not stand for the proposition that only one party may be a proper defendant in a denial of benefits case. To the contrary, in *LifeCare Mgmt. Services LLC* the Court expressly held that third party administrators, such as United, may be proper defendants in addition to a named plan administrator, such as Defendant. 703 F.3d at 845 (quoting *Gomez–Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 665 (1st Cir. 2010)) ("We agree that '[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan' and that '[i]f an entity or person other than the named plan administrator takes on the responsibilities of the administrator, **that entity may also be liable for benefits**.'") (emphasis added).

## C
### Redoak may be entitled to reasonable attorney's fees under 29 U.S.C. § 1132(g)(1)

Lastly, Defendant asserts, "ERISA does not recognize a stand-alone claim for attorney's fees." Doc. #33-1 at 18 (citing *Gerzog v. London Fog Corporation*, 907 F. Supp. 590, 603 (E.D.N.Y. 1995); *Professional Orthopedic Associates, PA. v. Horizon Blue Cross Blue Shield of New Jersey*, No. 14-4731, 2015 WL 5455820, at *5 (D.N.J. Sept. 16, 2015)). This is true, but ERISA does provide that a court " 'in its discretion may allow a reasonable attorney's fee and costs of action to either party' so long as the party has achieved 'some degree of success on the merits.' " *LifeCare Mgmt. Services LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 846 (5th Cir.

2013) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 130 S.Ct. 2149, 2151, (2010)).  In this regard, Plaintiff has amended its complaint to make clear that its request for attorney's fees is a request for a remedy, rather than a separate claim for relief.

### III
### CONCLUSION

For the reasons explained above, the Court must deny Defendant's motion to dismiss.

Respectfully submitted,

*/s/ Howard L. Steele, Jr.*
Howard L. Steele, Jr.
State Bar No. 24002999
Federal Bar No. 21615
One Allen Center, Penthouse
500 Dallas, Suite 3440
Houston, Texas 77002
(713) 659-2600 [Telephone]
(713) 659-2601 [Facsimile]
hsteele@steele-law-group.com

ATTORNEY-IN-CHARGE FOR PLAINTIFF

OF COUNSEL:

STEELE LAW GROUP, PLLC
Tyrone L. Haynes
Federal Bar No. 2303786
Shreedhar R. Patel
Federal Bar No. 2346338
One Allen Center, Penthouse
500 Dallas, Suite 3440
Houston, Texas 77002
(713) 659-2600

(713) 659-2601 (fax)

-AND-

Ebad Khan
State Bar No. 24092625
Federal Bar No 2810999
17400 Red Oak Drive
Houston, Texas 77090
Telephone: 832.202.6028
Facsimile: 832.446.6961
ekhan@trinityhealthcarenetwork.com

## CERTIFICATE OF SERVICE

  I certify that on November 9, 2016, a copy of the foregoing instrument was served on the following counsel of record via electronic filings service:

Nancy G. Ross
Laura R. Hammargren
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
T: (312) 791-0600
F: (312) 701-7711

              /s/ *Howard L. Steele, Jr.*
              Howard L. Steele, Jr.