IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| REDOAK HOSPITAL, LLC, § | |
|     *Plaintiff*, § | |
| § | |
| V. § | CIVIL ACTION NO. 4:16-CV-01542 |
| § | |
| AT&T SERVICES, INC. and UNITED § | |
| HEALTHCARE SERVICES, INC., § | |
|     *Defendants*. § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, Redoak Hospital, LLC, (hereinafter, "Plaintiff") files this Second Amended Complaint against Defendants AT&T Services, Inc. (hereinafter, "AT&T Services" or "Plan Administrator") and United HealthCare Services, Inc. (hereinafter, "United" or "Medical Benefits Administrator") would show the following:

### I. PARTIES

1. Plaintiff Redoak Hospital, LLC (hereinafter "Plaintiff") is a Texas limited liability company that operates a hospital located at 17400 Red Oak Drive, Houston, Texas 77090 Plaintiff is headquartered in Harris County, Texas. Plaintiff is the lawful Assignee of Plan Beneficiaries EK, PM, and WS and Claimant of the claims asserted herein.

2. AT&T, Inc. (hereinafter, "Plan Sponsor"), which is not a party to this suit, is a multinational corporation with its global headquarters located in Dallas, Texas. Plan Sponsor is a company specializing in delivering advanced mobiles services, next-generation TV, and high-speed internet. Plan Sponsor employs over 280,000 individuals worldwide, many of whom are residents of the greater Houston area.

3. During all material times, AT&T, Inc. acted as the Plan Sponsor for the following self-insured welfare benefits plans, which are governed by the Employee Retirement Income

Security Act of 1974 (hereinafter, "ERISA"): AT&T Umbrella Benefit Plan No. 1 and AT&T Umbrella Benefit Plan No. 3 (hereinafter, collectively the "Plans" or "Plan"). *See* Doc. #33-2; Doc. #33-3; Doc. #33-4; Doc. #33-5.

4. AT&T, Inc. designated Defendant AT&T Services, Inc. as the Plan Administrator for AT&T Umbrella Benefit Plan No. 1 and AT&T Umbrella Benefit Plan No. 3. *See* Ex. A (Form 5500- 2014 Umbrella Plan 3); Ex. B (Form 5500- 2014 Umbrella Plan 1). AT&T Services may be served at AT&T Services, Inc., P.O. Box 132160, Dallas, TX 75313-2160.

5. Defendant United HealthCare Services, Inc. is a corporation organized and existing under the laws of the State of Minnesota with its principal place of business in Eden Prairie, Minnesota. United may be served with process through its registered agent for service of process: C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

## II. JURISDICTION AND VENUE

6. Plaintiff's claims arise *in part* under 29 U.S.C. §§1001 *et seq.,* Employee Retirement Income Security Act of 1974, and asserts Subject Matter Jurisdiction under 28 U.S.C. §1331 (Federal Question Jurisdiction) and 29 U.S.C. §1132(e).

7. Venue is appropriate in this District under 28 U.S.C. § 1391(b) because Plan Sponsor, Plan Administrator, and Medical Benefits Administrator conduct a substantial amount of business in this District, and employs and provides benefits to residents of this District. Additionally, a substantial part of the events or omissions giving rise to the claims occurred in this District, such as: the collection and contributions of premiums for the Plan, the making of promises and representations as to covered medical benefits to Plan Beneficiary (who works and resides in this District), the provision of health care services to Plan Beneficiary, the making of promises and representations as to insurance coverage for those health care services, the filing of

the claims and appeals to the Plan, the exchange of correspondence relating to the claim appeals, and the decision making by fiduciaries of the Plan relating to the issuance of benefits and protection of Plan funds.

### III. FACTUAL ALLEGATIONS

**Plan Sponsor, the Plans, and United HealthCare**

8.  Plan Sponsor is an employer that sponsors and administers the Plans, ERISA-governed, self-insured welfare benefit plans created to provide benefits to subscribed Plan Sponsor employees and the employees' enrolled dependents (collectively "Plan Beneficiaries" or individually "Plan Beneficiary"). *See* Doc. #33-2 (Umbrella Plan 3) and Doc. #33-3 (Umbrella Plan 1).

9.  In the Plans' Form 5500, Plan Sponsor designated AT&T Services, Inc. as its official Plan Administrator. Ex. A (Form 5500- 2014 Umbrella Plan 3); Ex. B (Form 5500- 2014 Umbrella Plan 1). Thereafter, Plan Administrator entered into an agreement with United, to act as a third–party Medical Benefits Administrator. Ex. C (UHC Services Agreement).

10. Under the Plans, Plan Sponsor promises its Plan Beneficiaries the freedom to receive and obtain reimbursement for health care services from his or her provider of choice. *See* Doc. #33-2 at 10, 33; Doc. #33-3 at 13, 33; Doc. #33-4 at 82; Doc. #33-5 at 52. Specifically, the medical benefits covered by the Plan include coverage for health care services from in-network and out-of-network ("OON") providers, permitting Plan Beneficiaries to seek treatment from a doctor or facility of his or her choice.

11. Under the terms of the Plans, the Plans are required to promptly pay benefits for OON services based on whether the charges incurred were reasonable and customary within the geographic area. Doc. #33-4 at 246; Doc. #33-5 at 196. Whenever the Plans pay less than one

3

hundred percent (100%) of an OON provider's claim, the Plans' failure or refusal to pay the full amount of the OON provider's charges is deemed an Adverse Benefit Determination under ERISA.[1]

12.     United, as the contracted Medical Benefits Administrator, is authorized by AT&T Services to make eligible Allowed Amount determinations on behalf of AT&T Services for every claim that is submitted.  After United makes an Allowed Amount determination, Plaintiff is to be paid through Plan assets the Allowed Amount minus any of Plan Beneficiaries' out-of-pocket expenses.[2]  See Doc. #33-4 at 164; Doc. #33-5 at 114–15.

**Redoak is an Out-of-Network provider**

13.     Plaintiff is an OON provider who routinely treats United plan beneficiaries, through either self-insured plans or fully-insured plans.  As an OON provider, Plaintiff has no contract with United or the Plans, is not subject to any limitations or agreements contained in any contract with United or AT&T Services, and is not contractually bound to collect Plan Beneficiary responsibility amounts or accept the lower negotiated rates set forth by any of United's self-insured plans or any other negotiated contract or fee schedule.

14. Additionally, Plaintiff has never agreed, in writing or otherwise, that AT&T Services or United may withhold payments owed by the Plans in order to recover alleged prior overpayments made by another United plan or for a different United fully-insured plan.  Similarly, Plaintiff has not agreed to allow United to take the offsets challenged herein.

---

[1] US Department of Labor Employee Benefits Security Administration -FAQC-12:About the Benefit Claims Procedure Regulation - Under ERISA, an adverse benefit determination generally includes any denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit. In any instance where the plan pays less than the total amount of expenses submitted with regard to a claim, while the plan is paying out the benefits to which the claimant is entitled under its terms, the claimants nonetheless receiving less than full reimbursement of the submitted expenses, and is treated as an adverse benefit determination.  U.S. Dept. of Labor, *FAQ: About the Benefits Claims Procedure Regulation*, http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html; *see also* 29 C.F.R. § 2560.503-1(m)(4).

[2] Out of Pocket expenses typically include deductible, co-pays, or co-insurance.

15. Since there is no contract between Plaintiff and United or Plaintiff and the Plans, Plaintiff is free to "balance bill" Plan Beneficiaries EK, PM, and WS for any amounts unpaid by the Plans. See Doc. #33-4 at 85, 91; Doc. #33-5 at 56, 211. This also means that Plan Beneficiaries EK, PM, and WS may be pursued and held personally liable by Plaintiff for any amounts unpaid by the Plans.

**A. PLAN BENEFICIARIES EK, PM, and WS VISIT REDOAK FOR TREATMENT**

16. On January 10, 2014, Plan Beneficiary EK visited Redoak Hospital for treatment.

17. On March 18, 2014, Plan Beneficiary PM visited Redoak Hospital for treatment.

18. On February 5, 2014, Plan Beneficiary WS visited Redoak Hospital for treatment.

19. Before providing healthcare services to Plan Beneficiaries EK, PM, and WS, Plaintiff verified through AT&T Services' agent, United, that Plan Beneficiaries are beneficiaries of the Plans and that they had OON benefits.

20. Thereafter, also before receiving services from Plaintiff, the Plan Beneficiaries executed Legal Assignment of Benefits and Designation of Authorized Representative forms ("Assignment"), which effectively made Plaintiff Beneficiaries' Authorized Representative and Assign for purposes of asserting claims for the payment of benefits (i.e., payment under the Plan or appealing from an adverse benefit determination). *See* Doc. #16-4.

21. After receiving Plan Beneficiaries' executed assignments and verification of OON benefits from United, Plaintiff provided healthcare services to Plan Beneficiaries.

22. Although the Plans purport to contain an anti-assignment provision, AT&T Services and United are estopped from relying on such because:

    a. The Plans have dealt directly with Plaintiff with actual knowledge of the Assignment, but without any objection to the Assignment, and without

giving any notice of any Plan prohibition against assignment. The Plans have also pre-authorized services or procedures directly with Plaintiff, and paid the claims directly to Plaintiff without challenging or objecting to the Assignment. Based on the continued course of conduct, Plaintiff has relied on its right to assert claims directly with the Plans or United in continuing to render services or performing procedures to Plan Beneficiaries. Because of the foregoing, the Plans are estopped from asserting that claims for reimbursement for medical services or procedures, or any of the other claims asserted herein, are subject to any anti-assignment provision in the Plan.[3]

b. At no time during the dealings between Plaintiff and AT&T Services' agent, United, did United ever reference a specific Plan provision authorizing it to withhold benefits payments based on disputed overpayments made to an assignee, nor did it identify the existence of an anti-assignment provision in any Plan document. *See e.g.*, 29 C.F.R. § 2560.503-1(g)(1)(ii).

c. By reason of the AT&T Services and United's continuing course of conduct in not asserting or relying on any anti-assignment provision, AT&T Services and United has waived any arguable right to assert or rely upon any anti-assignment provision in the Plan.

---

[3] *See e.g., Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 574 (5th Cir. 1992), *overruled on other grounds*, *Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012) ("The anti-assignment clause was contained in the documentation establishing the Plan. Hermann, which was not privy to the Plan, had no opportunity to review that documentation," and "MEBA could not choose to ignore the title of the document as an assignment or the strong language of assignment it contained. It had to be clear to MEBA that Hermann, in admitting and providing services to Mrs. Nicholas, was relying on that assignment as its entitlement to recover payment for those Plan benefits that Hermann furnished to Mrs. Nicholas. Thus, it was unreasonable for MEBA to lie behind the log for three years without once asserting the anti-assignment clause, of which Hermann had no knowledge …."); *see also LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 351 (5th Cir. 2002) ("The ERISA Plan was estopped from enforcing its anti-assignment clause because of the Plan's protracted failure to assert anti-assignment when the hospital requested payment under an assignment of payment provision for covered benefits.").

    d.  Moreover, and most importantly, AT&T Services has willfully permitted United, its agent, to treat Plaintiff as an assignee. Specifically, AT&T Services has permitted and ratified its agent's practice of withholding benefits payments based on alleged and disputed past-overpayments. Because United's implementation of such offsets can only be accomplished against Plaintiff directly, and not Plan Beneficiaries, such a practice necessarily requires United to treat Plaintiff as an assignee.[4]

---

[4] When a Plan Beneficiary receives treatment, the bills may be submitted to United for payment in at least three different ways. First, a Plan Beneficiary can submit the bills on his or her own behalf; in which case, according to the Plans, United will process the claim and pay "Benefits … directly to [Plan Beneficiary]." Doc. #33-4 at 164; Doc. #33-5 at 115. Second, a Plan Beneficiary can designate a Provider as an authorized representative; in which case, according to the Plans, United will process the claim and pay Benefits "directly to the Provider." *Id*. Arguably, this language actually describes an assignment, as opposed to an authorized representative. This is so because "**a patient's authorized representative is not entitled to direct payment of benefits**. Such an individual is authorized only to 'pursue a benefit claim or appeal of an adverse benefit determination' on behalf of another." *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group, Inc.*, 99 F. Supp. 3d 1110, 1144 (C.D. Cal. 2015) (quoting 29 C.F.R. 2560.503–1(b)(4)) (alteration omitted and emphasis added). Importantly, as eloquently explained in AT&T Services' motion to dismiss:

> In the case of an authorized representative, the claimant remains the party-in-interest and is the [Plan Beneficiary] of any recovery; the authorized representative is merely an intermediary or "spokesperson" acting on their behalf.

Doc. #33-1 at 8–9. Finally, a Plan Beneficiary can assign its benefits to a Provider. An assignment differs from designation as an authorized representative in a few key respects. Again, as explained in AT&T Services' motion to dismiss:

> [A]n assignee is the lawful owner of the claim, is entitled to prosecute and dispose of the claim without consultation with the assignor, and is itself entitled to any recovery.

Doc. #33-1 at 9 (citing *Quality Infusion Care, Inc., v. Health Care Service Corporation*, 628 F.3d 725, 729 (5th Cir. 2010) ("After an assignment, the assignor's right to performance is extinguished in whole or in part and the assignee acquires a right to such performance.").

 Here, Plan Beneficiaries did not personally submit their bills to United for payment. Thus, United processed the bills submitted by Redoak because it regarded Redoak as either an authorized representative or an assignee of Plan Beneficiaries.

 United did not regard Redoak as a mere authorized representative when it processed Plan Beneficiaries' bills. The best evidence of this fact is United's practice of recouping alleged and disputed overpayments made to Redoak in the past by withholding payment on Plan Beneficiaries' claims. In doing so, United **did not treat Plan Beneficiaries as the parties in interest or Redoak as a mere spokesperson for Plan Beneficiaries**. To the contrary, United treated Redoak as the owner of the claims it submitted on behalf of Plan Beneficiaries; and by doing so, United felt empowered to withhold from Redoak the benefits payments that were required by the Plans. To be clear, if Plan Beneficiaries had submitted their bills directly, United could not have withheld payment to Plan Beneficiaries based on a past overpayment that their chosen medical provider allegedly received. If this is true with respect to direct payment submissions, it must also be true if Redoak was merely acting as an authorized

23.     Plan Beneficiary EK incurred eligible and reasonable medical expenses in the amount of $21,654.57.  Plan Beneficiary PM incurred eligible and reasonable medical expenses in the amount of $107,580.00.  Plan Beneficiary WS incurred eligible and reasonable medical expenses in the amount of $12,644.97.

24.     Plaintiff submitted the bills to United on behalf of Plan Beneficiaries for determination and payment.

---

representative or spokesperson of Plan Beneficiaries.  This point is more clearly illustrated by considering the mechanics of benefits payments under the Plans.

Pursuant to section 4.4(b) of the Services Agreement executed between AT&T Services and United, United is charged with the responsibility of administering certain AT&T trust accounts for the purpose of paying Plan benefits; in other words, United is authorized to remove funds from AT&T trust accounts to pay Plan benefits. *See* Ex. C at 44–46 (UH Service Agreement).  Hence, once United determines the benefits that are payable under the Plans, it may remit payment to a Plan Beneficiary from the AT&T trust account.  This did not happen here.

Here, United took money from the AT&T trust account and transferred such funds to its own account, supposedly to make itself whole for a past overpayment made to Redoak on behalf of persons who are strangers to the Plans.  Again, this action could not possibly have been taken directly against Plan Beneficiaries—it could only occur if United regarded the benefits funds as Redoak's.

Importantly, Defendant has implicitly and explicitly cosigned and adopted United's practice.  In its motion to dismiss,  AT&T Services repeatedly refers to United's offset practice as a mere "accounting dispute" between United and Redoak.  Doc. #33-1 at 1, 13, 14.  Of course, this description undermines the notion that Redoak was merely acting as a spokesperson of Plan Beneficiaries; after all, past accounting issues between United and Redoak would be completely immaterial and irrelevant if Redoak was merely acting as the spokesperson of Plan Beneficiaries.  In this regard, Defendant's motion to dismiss is inherently contradictory: on the one hand, Defendant seeks to rely on the anti-assignment provision, while on the other hand repeatedly supporting United's handling of the payment of Plan Benefits, which was only possible by United treating Redoak as an assignee of Plan Beneficiaries.

Given these extraordinary facts, the Court should find that Defendant has waived or is equitably estopped from now raising the anti-assignment clause as a preclusive defense. *See Shelby County Health Care Corp.*, 100 F. Supp. 3d at 581–82; *see also Blum v. Spectrum Rest. Group, Inc.*, 261 F. Supp. 2d 697, 716–17 (E.D. Tex. 2003), *aff'd sub nom. Blum v. Spectrum Rest. Group-Employees Group Life & Supplemental Life Plan*, 140 F. App'x 556 (5th Cir. 2005) (explaining in ERISA context that "[w]aiver is the voluntary or intentional relinquishment of known right"  and "is a distinct claim from equitable estoppel and a waiver claim does not require reliance") (internal quotation marks and citations omitted).

B. **UNITED PROCESSED THE BILLS SUBMITTED BY REDOAK**

**1. Plan Beneficiary EK's Bill**

25. On May 8, 2014, AT&T Services, through United, produced an ERA 835 detailing the final determination regarding Plaintiff's claim for $21,654.57 ("Billed Amount").[5] Doc. #16-2. Pursuant to the ERA 835, United found that the Plans allowed $12,201.88 ("ERA Allowed Amount") of the Billed Amount. Notwithstanding the specified ERA Allowed Amount, in the "GRP/RC-AMT" column, United reduced the Billed Amount pursuant to several "Payor initiated reductions," which amounted to $12,932.87 ("Reduced Amount"). The Difference between the Billed Amount and Reduced Amount equals $8,721.70; of the $8,721.70, United determined that AT&T Services was responsible for paying $6,525.36 and the remaining balance of $2,196.34 was Plan Beneficiary EK's responsibility.

26. The ERA 835 form also indicates that AT&T Services, through United, actually paid Plaintiff $6,525.36. However, Plaintiff never received a payment for $6,525.36 related to Plan Beneficiary EK's treatment. Instead, United inexplicably kept the $6,525.36 payment for itself, as indicated by the $0.00 "CHECK AMT" entry. *See* Doc. #16-2.

27. Also on March 8, 2014, AT&T Services, through United, produced a Provider Explanation of Benefits ("EOB") form, detailing the final determination regarding Plaintiff's claim for $21,654.57 ("Billed Amount"). Ex. D at 7. Pursuant to the EOB, United found that the Plan allowed $8,721.70 ("EOB Allowed Amount") of the Billed Amount. The EOB indicates that AT&T Services, acting through United, was responsible for paying $6,525.36 and the remaining balance of $2,196.34 was Plan Beneficiary EK's responsibility.

---

[5] The ERA 835 form related to Plan Beneficiary EK's treatment seems to have been processed by United along with five other unrelated claims. The Provider Explanation of Benefits related to Plan Beneficiary EK's treatment was also processed along with the same unrelated claims reflected in the ERA 835.

28. The EOB also indicates that AT&T Services, through United, actually paid Plaintiff $6,525.36. However, Plaintiff never received a payment for $6,525.36 related to Plan Beneficiary EK's treatment. Instead, United inexplicably kept the $6,525.36 payment for itself, as indicated by the $0.00 "CHECK AMOUNT" entry in the top right corner of the EOB. United seemingly did this to offset purported debts that Plaintiff owed United, based on United's past overpayment of benefits related to Plan Beneficiaries who are strangers to the Plans. The sparse details related to the purported overpayment reductions are contained on page 13 of the EOB. *See* Ex. D at 13.

29. Importantly, in violation of 29 C.F.R. § 2560.503-1(g)(1)(ii), neither the ERA 835 nor the EOB form contains any "reference to the specific plan provision on which" AT&T Services, acting through United, based its determination. Specifically, United failed to disclose and identify the specific provision of the Plans that provides it with authority to use Plan benefit funds owed to Plaintiff (in its capacity as assignee of a Plan Beneficiary) to make itself whole (by offset) on purported debts that Plaintiff (in its capacity as medical provider to non-Plan Beneficiaries) accrued under stranger health plans.

**2. Plan Beneficiary PM's Bill**

30. On May 8, 2014, AT&T Services, through United, produced an ERA 835 detailing the final determination regarding Plaintiff's claim for $107,580.00 ("Billed Amount"). Doc. #16-2. Pursuant to the ERA 835, United found that the Plans allowed $45,764.17 ("ERA Allowed Amount") of the Billed Amount. Notwithstanding the specified ERA Allowed Amount, in the "GRP/RC-AMT" column, United reduced the Billed Amount pursuant to several "Payor initiated reductions," which amounted to $90,864.83 ("Reduced Amount"). The Difference between the Billed Amount and Reduced Amount equals $16,715.17; of the $16,715.17, United

determined that AT&T Services was responsible for paying $15,311.08 and the remaining balance of $1,404.09 was Plan Beneficiary PM's responsibility.

31. The ERA 835 form also indicates that AT&T Services, through United, actually paid Plaintiff $15,311.08. However, Plaintiff never received a payment for $15,311.08 related to Plan Beneficiary PM's treatment. Instead, United inexplicably kept the $15,311.08 payment for itself, as indicated by the $0.00 "CHECK AMT" entry. *See* Doc. #16-2.

32. Also on March 8, 2014, Defendants, through United, produced a Provider Explanation of Benefits ("EOB") form, detailing the final determination regarding Plaintiff's claim for $107,580.00 ("Billed Amount"). Ex. D at 8. Pursuant to the EOB, United found that the Plan allowed $16,715.17 ("EOB Allowed Amount") of the Billed Amount. The EOB indicates that Defendants, acting through United, was responsible for paying $15,311.08 and the remaining balance of $1,404.09 was Patient PM's responsibility.

33. The EOB also indicates that Defendant, through United, actually paid Plaintiff $15,311.08. However, Plaintiff never received a payment for $15,311.08 related to Patient PM's treatment. Instead, United inexplicably kept the $15,311.08 payment for itself, as indicated by the $0.00 "CHECK AMOUNT" entry in the top right corner of the EOB. United seemingly did this to offset purported debts that Plaintiff owed United, based on United's past overpayment of benefits related to Plan Beneficiaries who are strangers to the Plans. The sparse details related to the purported overpayment reductions are contained on page 13 of the EOB. *See* Ex. D at 13.

34. Importantly, in violation of 29 C.F.R. § 2560.503-1(g)(1)(ii), neither the ERA 835 nor the EOB form contains any "reference to the specific plan provision on which" AT&T Services, acting through United, based its determination. Specifically, United failed to disclose and identify the specific provision of the Plans that provides it with authority to use Plan benefit

11

funds owed to Plaintiff (in its capacity as assignee of a Plan Beneficiary) to make itself whole (by offset) on purported debts that Plaintiff (in its capacity as medical provider to non-Plan Beneficiaries) accrued under stranger health plans.

### 3. Plan Beneficiary WS's Bills

35. On May 8, 2014, AT&T Services, through United, produced an ERA 835 detailing the final determination regarding Plaintiff's claim for $12,644.97("Billed Amount"). Doc. #16-2. Pursuant to the ERA 835, United found that the Plans allowed $3,457.70 ("ERA Allowed Amount") of the Billed Amount. Notwithstanding the specified ERA Allowed Amount, in the "GRP/RC-AMT" column, United reduced the Billed Amount pursuant to several "Payor initiated reductions," which amounted to $9,187.27 ("Reduced Amount"). The Difference between the Billed Amount and Reduced Amount equals $3,457.70; of the $3,457.70, United determined that AT&T Services was responsible for paying $1,728.85 and the remaining balance of $1,728.85 was Plan Beneficiary WS's responsibility.

36. The ERA 835 form also indicates that AT&T Services, through United, actually paid Plaintiff $1,728.85. However, Plaintiff never received a payment for $1,728.85 related to Plan Beneficiary WS's treatment. Instead, United inexplicably kept the $1,728.85 payment for itself, as indicated by the $0.00 "CHECK AMT" entry. *See* Doc. #16-2.

37. Also on March 8, 2014, AT&T Services, through United, produced a Provider Explanation of Benefits ("EOB") form, detailing the final determination regarding Plaintiff's claim for $12,644.97("Billed Amount"). Ex. D at 9. Pursuant to the EOB, United found that the Plan allowed $3,457.70 ("EOB Allowed Amount") of the Billed Amount. The EOB indicates that AT&T Services, acting through United, was responsible for paying $1,728.85 and the remaining balance of $1,728.85 was Plan Beneficiary WS's responsibility.

38. The EOB also indicates that AT&T Services, through United, actually paid Plaintiff $1,728.85. However, Plaintiff never received a payment for $1,728.85 related to Plan Beneficiary WS's treatment. Instead, United inexplicably kept the $1,728.85 payment for itself, as indicated by the $0.00 "CHECK AMOUNT" entry in the top right corner of the EOB. United seemingly did this to offset purported debts that Plaintiff owed United, based on United's past overpayment of benefits related to Plan Beneficiaries who are strangers to the Plans. The sparse details related to the purported overpayment reductions are contained on page 13 of the EOB. *See* Ex. D at 13.

39. Importantly, in violation of 29 C.F.R. § 2560.503-1(g)(1)(ii), neither the ERA 835 nor the EOB form contains any "reference to the specific plan provision on which" AT&T Services, acting through United, based its determination. Specifically, United failed to disclose and identify the specific provision of the Plans that provides it with authority to use Plan benefit funds owed to Plaintiff (in its capacity as assignee of a Plan Beneficiary) to make itself whole (by offset) on purported debts that Plaintiff (in its capacity as medical provider to non-Plan Beneficiaries) accrued under stranger health plans.

### C. AN OFFSET IS AN ADVERSE BENEFITS DETERMINATION

40. Because the definition of "adverse benefit determination" included in the ERISA Claims Procedure includes not only "a denial, reduction, or termination of" benefits, but also a "failure to provide or make payment (in whole or in part) for" a benefit, United's practice of withholding the payment of benefits based on alleged offsets constitutes an adverse benefit determination. *See* 29 C.F.R. § 2560.503-1(m)(4). However, United, acting on behalf of AT&T Services, failed to treat its unilateral decision to withhold payment to Plaintiff as an adverse

benefit determination, and did not provide the informational items or appellate procedures mandated by the ERISA Claims Procedure.

41. Specifically, United failed to provide Plaintiff with the "the specific plan provisions on which the [offset] determination is based." 29 C.F.R. § 2560.503-1(g)(1)(ii). United also failed to provide "[t]he specific reason or reasons for the adverse benefits determination"—i.e., the offset. 29 C.F.R. § 2560.503-1(g)(1)(i).

42. United's failure to provide Plaintiff (in its capacity as assignee of Plan Beneficiaries) with details regarding its offsets is especially problematic. To be clear, the details related to the offsets and United's supposed justification for the same includes only the following: member name, member id#, patient account #, policy #, claim # dates of service, and overpayment deductions.[6] Ex. D at 13. Importantly, Plan Beneficiaries, whose place Plaintiff stands in as an assignee, are not entitled to any of the specifics related to the alleged and disputed past overpayments that United references. *See e.g., United States v. Zamora*, 408 F. Supp. 2d 295, 297 (S.D. Tex. 2006) ("Pursuant to HIPAA, individually identifiable medical information cannot be disclosed by covered entities without the consent of the individual unless disclosure was expressly permitted by HIPAA.").

43. Consequently, pursuant to 29 C.F.R. § 2560.503-1(l), "to the extent that an exhaustion of administrative remedies is required by [the Plan], the claims at issue are 'deemed' exhausted …, given [AT&T Services' (acting through United),] failure to follow claims

---

[6] Again, these patients were insured under different health plans, and as such were not Plan Beneficiaries of the Plans.

procedures."[7] *Connecticut Gen. Life Ins. Co. v. Humble Surgical Hosp., LLC*, No. 4:13-CV-3291, 2016 WL 3077405, at *2 n.1 (S.D. Tex. June 1, 2016).

44. Furthermore, AT&T Services knew or should have known that the Plans do not permit the reduction of benefits for one United insured in order to recover "overpayments" that a different United plan purportedly made with respect to claims submitted on behalf of a different United insured. The terms of the Plans require that the Plans actually pay benefits for Covered Services; they do not provide that these payment obligation may be satisfied through a unilateral "reallocation" that effectively takes benefits owed by the Plans and uses those benefits to offset an alleged and disputed overpayment that United "overpaid" in the past.

45. Additionally, and perhaps most importantly, the Plans provide that Plan Beneficiaries remain liable for any billed amounts that the Plans refuse to pay OON providers, such as Plaintiff. Thus, United's misconduct, authorized by AT&T Services, has also imposed a financial liability on Plan Beneficiaries for treatment that United acknowledged to be covered services.

## IV. COUNT I

### *Claim under ERISA § 502(a)(1)(B) and 29 U.S.C. § 1132(a)*

46. Plaintiff incorporates and realleges the allegations set forth in paragraphs 1–45 above.

47. Plaintiff is a statutory defined Claimant with valid Assignment from Plan Beneficiaries EK, PM, and WS who are Plan Beneficiaries under the Plans. Claimant is entitled to ERISA rights to "bring a civil action under section 502(a) of the Act following an adverse benefit determination on review " after Plaintiff has legally and administratively exhausted any

---

[7] This is especially true here because even if Plan Beneficiaries had submitted their bills directly to United, the appeal process would have been completely futile given that they would not have had any access to the medical files upon which the offset determination was made.

and all appeal remedies.[8] Therefore, Plaintiff is entitled to pursue Plan Beneficiaries benefits claims.

48. It cannot be disputed that Plaintiff properly submitted claims for benefits on behalf of Plan Beneficiaries EK, PM, and WS.

49. Plaintiff is entitled to recover benefits due to it and Plan Beneficiaries EK, PM, and WS under the terms of the Plans and applicable law, including (but not limited to) ERISA § 502(a)(1)(B).

50. The Plans, through United, abused its discretion by denying Plaintiff payment for the treatment of Plan Beneficiaries EK, PM, and WS by depositing Plaintiff's payment into its

---

[8] Plaintiff attempted to appeal as to Plan Beneficiary EK, sending detailed letters to AT&T, Inc. on July 14, 2014, and May 23, 2016. These letters were mistakenly addressed to AT&T, Inc., which has the same physical address as AT&T Services, Inc. Nonetheless, the letters referenced the payment the Plans were supposed to make to Plaintiff on behalf of Plan Beneficiary EK and the July 14th letter contained a copy of the executed assignment of benefits form. This should have been enough to put the Plans on notice about the assignment and that Plan Beneficiary EK was attempting to appeal the Plans' determination. Even if the Plans received Plaintiff's appeal letters, Plaintiff's attempt to appeal would have been futile because, as described above, the ERA 835 and EOB failed to provide sufficient information for Plaintiff to challenge United's determination regarding payor initiated adjustments and cross-plan offsets. In addition, Plaintiff even filed a complaint with the Department of Labor on May 20, 2016.

Plaintiff attempted to appeal as to Plan Beneficiary PM, sending detailed letters to AT&T, Inc. on July 14, 2014, November 3, 2015, and May 23, 2016. These letters were mistakenly addressed to AT&T, Inc. and AT&T Savings and Security Plan, which has the same physical address as AT&T Services, Inc. Nonetheless, the letters referenced the payment the Plans were supposed to make to Plaintiff on behalf of Plan Beneficiary PM and the July 14th letter contained a copy of the executed assignment of benefits form. This should have been enough to put the Plans on notice that Plan Beneficiary PM was attempting to appeal the Plans' determination as an assignee. Even if the Plans received Plaintiff's appeal letters, Plaintiff's attempt to appeal would have been futile because, as described above, the ERA 835 and EOB failed to provide sufficient information for Plaintiff to challenge United's determination regarding payor initiated adjustments and cross-plan offsets. In addition, Plaintiff even filed a complaint with the Department of Labor on May 20, 2016.

Plaintiff attempted to appeal as to Plan Beneficiary WS, sending detailed letters to AT&T, Inc. on November 3, 2015, and May 23, 2016. These letters were mistakenly addressed to AT&T Savings and Security Plan., which has the same physical address as AT&T Services, Inc. Nonetheless, the letters referenced the payment the Plans were supposed to make to Plaintiff on behalf of Plan Beneficiary WS. This should have been enough to put the Plans on notice that Plan Beneficiary WS was attempting to appeal the Plans' determination as an assignee. Even if the Plans received Plaintiff's appeal letters, Plaintiff's attempt to appeal would have been futile because, as described above, the ERA 835 and EOB failed to provide sufficient information for Plaintiff to challenge United's determination regarding payor initiated adjustments and cross-plan offsets. In addition, Plaintiff even filed a complaint with the Department of Labor on May 20, 2016.

own account, purportedly to offset an alleged and disputed overpayment that United "overpaid" Plaintiff in the past. The Plans do not authorize this action taken by United.

51. As described above, the continuation of United's appeals process will be futile because United failed to provide (and cannot provide according to HIPAA) specific information describing the basis of its offset determination. Consequently, Plaintiff has exhausted administrative appeal remedies.

52. AT&T Services' and United's misconduct recited above was the direct and proximate cause of Plaintiff's harm.

## V. COUNT II

### *Attorney's Fees*

53. Plaintiff has presented claims to AT&T Services and United demanding payment for the value of the services described above. Plaintiff is entitled to payment of benefits owed to Plan Beneficiaries EK, PM, and WS. To date, Plaintiff has received no benefits. Because of AT&T Services' failure to pay the claims of Plan Beneficiaries EK, PM, and WS, Plaintiff was required to retain legal counsel to initiate this legal action. Plaintiff is therefore entitled to recover reasonable attorney's fees for necessary services rendered in prosecuting this action and any subsequent appeals.

54. Plaintiff is also entitled to an award of attorney's fees on its ERISA claims. ERISA allows a court, in its discretion, to award "a reasonable attorney fee and costs of action to either party."[9]

---

[9] 29 U.S.C.§1132(g)(1).  *See Hardt v .Reliance Std. Life Insurance Co.*, 130 S.Ct .2149 , 2152 (2010); *see also Baptist Mem .Hosp. -Desoto, Inc.v .Crain Auto.,Inc.*, 392 F. App'x 289, 299 (5th Cir. 2010).

## VI. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Honorable Court issue judgment against AT&T Services and United granting Plaintiff the following relief:

1. Benefits payments under the Plan;

2. Attorney's fees and costs, including those for an appeal of this matter;

3. Prejudgment and post-judgment interest;

4. All other relief, legal or equitable, as justice may allow.

           Respectfully submitted,

           /s/ *Howard L. Steele, Jr.*
           Howard L. Steele, Jr.
           State Bar No. 24002999
           Federal Bar No. 21615
           One Allen Center, Penthouse
           500 Dallas, Suite 3440
           Houston, Texas 77002
           (713) 659-2600 [Telephone]
           (713) 659-2601 [Facsimile]
           hsteele@steele-law-group.com

           ATTORNEY-IN-CHARGE FOR PLAINTIFF

OF COUNSEL:

STEELE LAW GROUP, PLLC
Tyrone L. Haynes
Federal Bar No. 2303786
Shreedhar R. Patel
Federal Bar No. 2346338
One Allen Center, Penthouse
500 Dallas, Suite 3440
Houston, Texas 77002
(713) 659-2600
(713) 659-2601 (fax)

-AND-

Ebad Khan
State Bar No. 24092625
Federal Bar No 2810999
17400 Red Oak Drive
Houston, Texas 77090
Telephone: 832.202.6028
Facsimile: 832.446.6961
ekhan@trinityhealthcarenetwork.com

## CERTIFICATE OF SERVICE

      I certify that on November 9, 2016, a copy of the foregoing instrument was served on the following counsel of record via electronic filings service:

Nancy G. Ross
Laura R. Hammargren
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
T: (312) 791-0600
F: (312) 701-7711

                                                 /s/ *Howard L. Steele, Jr.*
                                                 Howard L. Steele, Jr.