IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **REDOAK HOSPITAL, LLC**<br><br>**Plaintiff,**<br><br>v.<br><br>**AT&T SERVICES, INC.**<br><br>**Defendant.** | Case No. 16-cv-1542-lnh |

### MOTION AND MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE AND REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant AT&T Services, Inc. ("AT&T" or "Defendant") submits this Motion to Strike Plaintiff's Second Amended Complaint (Dkt. 36) and a combined memorandum in support of its Motion to Strike and reply in support of its Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 33).

### PRELIMINARY STATEMENT

On October 19, 2016, Plaintiff RedOak Hospital, LLC ("RedOak" or "Plaintiff") simultaneously filed its response to AT&T's Motion to Dismiss Plaintiff's First Amended Complaint and a Second Amended Complaint, which added UnitedHealthCare Services, Inc. ("United") as a defendant. *See* Dkt. 36. Plaintiff filed its Second Amended Complaint without AT&T's consent or the Court's permission, a violation of the rules of procedure and another instance in a long line of improper submissions in this case. Even if this Court were inclined to grant leave *sua sponte*, it should not do so because Plaintiff's claims in the Second Amended Complaint are futile. Plaintiff's Second Amended Complaint essentially eliminates all prior claims other than a statutory claim for benefits under the Employee Retirement Income Security

1

Act of 1974 (ERISA). Nothing in Plaintiff's Second Amended Complaint cures the fatal flaw in its pending lawsuit, namely that Plaintiff does not have standing to bring an ERISA lawsuit, and this is nothing more than an accounting dispute between United and Plaintiff.  Plaintiff does not have a claim for benefits under ERISA as it has already been paid by United for the services Plaintiff provided to the plan participants. Through its lawsuit, Plaintiff only seeks to dispute United's application of a prior overpayment to Plaintiff by United in reimbursing Plaintiff for the treatment at issue. AT&T accordingly moves this Court to strike Plaintiff's procedurally and substantively deficient Second Amended Complaint as it applies to AT&T, and to dismiss Plaintiff's First Amended Complaint for the reasons stated here and in AT&T's opening brief.

## BACKGROUND

On June 1, 2016, Plaintiff, a hospital providing medical services to certain AT&T employees and retired employees, filed suit against AT&T Inc., AT&T Savings and Security Plan, and an alleged plan administrator, Larry Ruzicka. Dkt. 1. In a 39-page complaint, Plaintiff alleged seven counts against the defendants under ERISA: a claim for benefits under 29 U.S.C. § 1132(a)(1)(B), three claims for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) and § 1132(a)(3), and claims styled as ones for civil penalties, "full and fair review," and attorney's fees. *Id.*.

On June 28, 2016, counsel for AT&T notified Plaintiff's counsel, Ebad Khan, that the complaint named the wrong plan, as it named a retirement benefits plan rather than a health benefits plan. AT&T's counsel also notified Plaintiff's counsel that AT&T Inc. and Mr. Ruzicka were not the plan administrators or proper defendants. *See* Declaration of Nancy Ross ("Ross Decl."), Ex. A (June 28, 2016 N. Ross email to E. Khan). On July 12, 2016, Plaintiff filed its First Amended Complaint. Dkt. 7. The First Amended Complaint had the same counts and nearly identical factual allegations, but named AT&T Umbrella Benefit Plan No. 1 and AT&T

2

Umbrella Benefit Plan No. 3 instead of the previously incorrect retirement benefits plan. The First Amended Complaint continued to name AT&T Inc. and Mr. Ruzicka, despite AT&T's counsel's earlier notification that they were improper defendants. *Id.*; *see also* Ross Decl., Ex. A.

On September 6, 2016, the Court held a status conference with the parties. Despite having been told that AT&T Inc. and Mr. Ruzicka were not plan administrators, Plaintiff's counsel represented to the Court that both were plan administrators. Ross Decl., Ex. B at 1:6-21 (September 6, 2016 hearing transcript). After AT&T's counsel clarified the record and stated that AT&T Services Inc. was the plan administrator of the health plans alleged to be at issue in the lawsuit, the Court struck all named defendants and replaced them with AT&T Services Inc. as the only defendant. Ross Decl., Ex. B at 24:25-25:4; *see also* Dkt. 27. The Court specifically stated that Plaintiff's counsel did not need to replead because previous amendments had been ineffective. *Id.* at 24:25-25:1. The Court also observed at the hearing that Plaintiff's counsel had already amended the complaint, noting that counsel had time to realize that the wrong parties had been sued and make necessary corrections. Ross Decl., Ex. B at 11:4-10. However, as the Court noted, rather than setting forth a plain statement of the claims in the First Amended Complaint, Plaintiff's counsel submitted 44 pages of argumentative and unsound pleadings. *Id.* at 11:4-10, 26:1-4.

On September 27, 2016, the Court allowed Howard L. Steele Jr. to substitute as lead counsel for Plaintiff. Dkt. 32. On October 19, 2016, AT&T moved to dismiss the seven counts in the First Amended Complaint, pointing out that, in addition to Plaintiff's lack of standing to sue under ERISA, Plaintiff's claims were misdirected at AT&T. Dkt. 33. Plaintiff filed its response to AT&T's motion to dismiss on November 9, 2016. Dkt. 35. Simultaneously, without obtaining leave of Court or notifying AT&T (much less requesting AT&T's consent), Plaintiff filed a

3

Second Amended Complaint. Dkt. 36. In addition to adding United (the third-party benefits administrator for the plans alleged to be at issue) as a defendant, the Second Amended Complaint eliminates all claims except for the claim for benefits under 29 U.S.C. § 1132(a)(1)(B) and a claim for attorney's fees, notwithstanding Plaintiff's recognition in its response to AT&T's motion to dismiss that a separate attorney's fees claim does not exist under ERISA.

## ARGUMENT

**I.     PLAINTIFF'S SECOND AMENDED COMPLAINT SHOULD BE STRICKEN BECAUSE IT VIOLATES THE RULES OF PROCEDURE AND IS FUTILE**

Federal Rule of Civil Procedure 15(a) provides that a plaintiff may amend a complaint only once as a matter of course. *See* Fed. R. Civ. P. 15(a); *Mark's Airboats, Inc. v. Thibodaux*, No. CIV. A. 6:13-0274, 2013 WL 6780529, at *3 (W.D. La. Dec. 19, 2013). Thereafter, a party may amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2); *see also Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 56 (D.D.C. 2012) (explaining that under Rule 15, a plaintiff may only amend his complaint one time without the consent of defendants or leave of court). When the court is presented with a motion for leave—which Plaintiff failed to do here—"[t]he decision to grant or deny a motion to amend pleadings is entrusted to the sound discretion of the district court." *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (holding complaint insufficient to allege fraud and amended complaint was not timely filed). Allowance of an amendment is not automatic. *See Chitimacha Tribe of Louisiana v. Harry L. Laws. Co., Inc.*, 690 F.2d 1157, 1163 (5th Cir. 1982) (partially denying leave to amend and noting that the purpose of Rule 15(a) is "to prevent pleadings from becoming ends in themselves"), *cert. denied*, 464 U.S. 814 (1983).

The district court may consider a number of factors in determining whether or not an amendment is appropriate, including unnecessary delay or repeated failure to cure deficiencies

4

by amendments previously allowed. *Goldstein v. MCI WorldCom,* 340 F.3d 238, 254 (5th Cir. 2003) ("Additionally, the Supreme Court has sanctioned bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of the amendment . . . .") (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Futility of the amendment is also grounds to deny a party's request for leave to amend. *Adams Family Trust v. John Hancock Life Ins. Co.*, 424 F. App'x 377, 382 (5th Cir. 2011) ("Rule 15(a) authorizes a district court to deny a motion for leave to amend where the 'amendment would be futile,' and the Trust's proposed amendment would have been futile."); *see also Goldstein,* 340 F.3d at 254 ("[I]f a complaint as amended could not withstand a motion to dismiss, then the amendment should be denied as futile."); *see also Silvas v. Remington Oil and Gas Corp.*, 109 Fed. Appx. 676, 678 (5th Cir. 2004) (upholding district court's denial of leave to amend based on futility of the amended complaint). Here, the Second Amended Complaint should be stricken based on both procedural and substantive deficiencies.

### A.     Plaintiff's Second Amended Complaint Violates Procedural Rules.

Having had multiple opportunities to re-plead its case, Plaintiff has no right to alone try again. The Federal Rules of Civil Procedure make clear that a plaintiff may only amend his complaint once as a matter of course. *See* Fed. R. Civ. P. 15(a); *Mark's Airboats, Inc.* 2013 WL 6780529, at *3. Plaintiff used its amendment as a matter of course when it filed the First Amended Complaint on July 12, 2016, *see* Dkt. 7. That complaint was amended a second time by the Court at the initial status conference, *see* Dkt. 27. Any further amendments at this point require AT&T's consent or the Court's permission, *see* Fed. R. Civ. P. 15(a)(2). Plaintiff failed to obtain either before filing its Second Amended Complaint.

Plaintiff's unnecessary delay in filing its Second Amended Complaint prejudiced AT&T. Three months elapsed between filing the First Amended Complaint and AT&T's deadline to respond on October 19, 2016. Plaintiff waited until after AT&T had already moved for dismissal before amending its complaint to reduce the number of claims from seven to one, and remove several baseless breach of fiduciary duty claims. In so delaying, Plaintiff forced AT&T to spend unnecessary time and resources to respond to the sprawling allegations and patently frivolous claims in its First Amended Complaint.[1] Such unnecessary delay and repeated failures to cure deficiencies in previous amendments are grounds alone for the Court to deny the Second Amended Complaint. *See Goldstein,* 340 F.3d at 254.

> **B. Plaintiff's Second Amended Complaint Fails to Cure Its Lack of Standing and Wrongly Casts this Accounting Dispute Between United and Plaintiff as a Benefits Claim.**

In its memorandum in support of its motion to dismiss, AT&T established Plaintiff's lack of standing under Fed. R. Civ. P. 12(b)(1) and its failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6). Nothing in the Second Amended Complaint alters this conclusion.

As summarized above, in its First Amended Complaint, Plaintiff pleaded a variety of claims under ERISA, including claims for: entitlement to benefits under 29 U.S.C. § 1132(a)(1)(B), breach of fiduciary duty under 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), failing to provide "full and fair review," failing to disclose plan documents, and attorney's fees under 29 U.S.C. § 1132(g)(1). AT&T moved to dismiss these claims on the grounds that Plaintiff lacked

---

[1] Plaintiff may point to the change in its lead counsel as a reason for the delay, but Mr. Steele was allowed to substitute as lead counsel on September 27, 2016, well before AT&T's deadline of October 19, 2016. Dkt. 32. Further, in early October, again well before AT&T's response deadline, Plaintiff filed streamlined complaints similar to the Second Amended Complaint in cases that Plaintiff has brought against other defendants. *See RedOak Hospital, LLC v. Gap Inc., et al.*, No. 4:16-cv-01303 (S.D. Tex. Oct. 10, 2016) (Plaintiff's Second Amended Complaint); *RedOak Hospital, LLC v. Macy's, Inc.*, No. 4:16-cv-01783 (S.D. Tex. Oct. 5, 2016) (Plaintiff's First Amended Complaint).

standing under Rule 12(b)(1) as neither a plan participant nor a beneficiary (*see* 29 U.S.C. § 1132(a)(1)(B)), and failed to state a claim on the merits under Rule 12(b)(6). Plaintiff recently responded to AT&T's motion by abandoning its breach of fiduciary duty claims, "full and fair review" claim, and document disclosure claim, and opposing AT&T's motion only with respect to its benefits claim and its claim for attorney's fees, both of which Plaintiff repleaded in its Second Amended Complaint.[2] Because Plaintiff's response to AT&T's motion to dismiss fails to correct the critical defects identified by AT&T, the Court should grant AT&T's motion to dismiss the First Amended Complaint and strike Plaintiff's Second Amended Complaint against AT&T without leave to amend. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if it is futile. . . . [T]o determine futility, we will apply the same standard of legal sufficiency as applied under Rule 12(b)(6).").

### 1. *Plaintiff Lacks Standing to Sue.*

As explained in AT&T's motion to dismiss, 29 U.S.C. § 1132(a)(1)(B) generally limits the persons or entities empowered to bring claims for benefits owed under a plan to plan "participants" and plan "beneficiaries." Mot. Dism. Br. at 6-7 (citing *Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1288-89 (5th Cir. 1988) ("*Hermann I*"). It is undisputed that Plaintiff, as a medical provider, does not fall into either category. Therefore, in order for Plaintiff to proceed on claims under that section, it must obtain an assignment of such claims from someone that qualifies as a participant or beneficiary under the plan. *Tango v. Healthcare Financial Services LLC*, 332 F.3d 888, 891-92 (5th Cir. 2003). Plaintiff contends that

---

[2] Although Plaintiff continues to identify its request for attorney's fees as a separate count, it has admitted that "its request for attorney's fees is a request for a remedy, rather than a separate claim for relief." Resp. Br. at 12-13. Plaintiff's continued stubbornness in including this claim is further grounds to reject its Second Amended Complaint.

it has acquired valid assignments from three of its patients, all of whom are AT&T plan participants. However, as explained in AT&T's motion to dismiss, these assignments are rendered invalid by the plan's anti-assignment clause and therefore fail to confer "derivative standing" on Plaintiff. Mot. Dism. Br. at 8.

In its response brief, Plaintiff raises two arguments for why the assignments are valid notwithstanding the plan's express anti-assignment clause. First, Plaintiff contends that the plan's anti-assignment clause must be construed as merely a "spendthrift" provision that does not prohibit participants from assigning rights under the plan. Resp. Br. at 3-6. Second, Plaintiff contends that even if the clause was broad enough to prohibit the assignments, the doctrines of waiver and estoppel prevent AT&T from challenging the assignments' validity. *Id.* at 6-8. These arguments, both of which are based on the Fifth Circuit's decision in *Hermann Hosp. v. MEBA Medical and Benefits Plan*, 959 F.2d 569 (1992) ("*Hermann II*"), are unavailing because the facts at issue here are critically different than in *Hermann II*, where the plan sent the provider its own assignment form, and because the *Herman II* court recognized that the course of conduct at play determines whether the parties intended for an assignment of benefits. *See Hermann II*, 959 F.2d at 574-75. Nothing Plaintiff alleges suggests that AT&T led it to believe it had a valid assignment.

        a.     The Plan's Anti-Assignment Provision Renders the Assignments Invalid

In order for Plaintiff to have derivative standing pursuant to an assignment, the assignment must be valid. The Fifth Circuit has held that a participant's assignment is not valid when prohibited by the terms of the plan. *La. Health Serv.& Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529, 537 (5th Cir. 2006) ("We have [] held that, absent a statute to the contrary, an

anti-assignment provision in a plan is permissible under ERISA."). Here, the plan contains such an express prohibition. In particular, it provides that:

> No benefit, right or interest of any Participant or Beneficiary under the Plan or any Program shall be subject to anticipation, alienation, sale, transfer, assignment pledge, encumbrance or charge, seizure, attachment or legal, equitable or other process, or be liable for, or subject to, the debts, liabilities or other obligations of such person, except as otherwise required by law or as otherwise provided in a Program.

Mot. Dism. Br., Ex. A, Umbrella Plan No. 3, at 26; Ex. B, Umbrella Plan No. 1, at 29. As the language of this provision makes clear, participants' benefits, rights and interests are not subject to assignment.

Plaintiff mistakenly relies on *Hermann II* to circumvent the plan's express anti-assignment provision. In *Hermann II*, a hospital provided services to a patient that was a participant in the MEBA Medical and Benefits Plan. *Hermann II*, 959 F.2d at 571. In connection with these services, the patient provided Hermann Hospital an assignment of her claims. *Id.* When the plan refused to pay for the services, Hermann Hospital filed suit under ERISA claiming that the assignment gave it derivative standing under 29 U.S.C. § 1132(a)(1)(B). *Id.* at 572-73. The plan argued that Hermann did not have standing to sue because the assignment did not clearly establish that the participant intended to assign her claims to the hospital. *Id.* The district court agreed and entered judgment for the plan. *Id.*

On appeal, the Fifth Circuit overturned the district court's decision and held that the district court erred in holding that the assignment document was ambiguous. *Id.* at 573. However, instead of remanding the case to the district court after reaching that conclusion, the Fifth Circuit went on to consider the alternative argument raised by the plan in the district court that even if the assignment were unambiguous, it was rendered invalid by the plan's anti-assignment clause, which provided as follows:

9

> No employee, dependent, or beneficiary shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge, commute, or anticipate **any benefit payment hereunder**, and any such payment shall not be subject to any legal process to levy execution upon or attachment or garnishment proceedings against for the payment of any claims.

*Id.* at 574 (emphasis added).

The Fifth Circuit held that that this provision was "typical 'spendthrift' language" which applied "only to unrelated, third-party assignees—other than the health care provider of assigned benefits—such as creditors who might attempt to obtain voluntary assignments to cover debts having no nexus with the Plan or its benefits." *Id.* at 575.

Plaintiff's comparison of the anti-assignment clause in this case to the language considered by the Fifth Circuit in *Hermann II*, (*see* Resp. Br. at 4-5), misses the mark. Where the provision at issue in *Hermann II* limited participants' right to assign "any benefit *payment*" under the plan, the provision in this case prohibits the assignment of any "*benefit, right, or interest*" under the Plan. Although both provisions prohibit participants from assigning, alienating or encumbering plan "payments," the language in the AT&T plan is broader than the language in *Hermann II*. In particular, the language in the AT&T plan prohibits participants from assigning any "right" or any "interest" under the plan. A general prohibition on the assignment of all rights and interests includes the right to sue, whereas a prohibition on the right to assign "benefit payments" relates only to the right to receive monetary payments from a plan. In other words, the plan provision at issue prohibits not only the assignment of "benefit payments," but also the assignment of a right to sue under a plan.

       b.   <u>Plaintiff's Waiver and Estoppel Arguments Fail</u>

In addition to arguing that the language in the plan does not prohibit assignment, Plaintiff argues, relying on *Hermann II*, that AT&T has waived its right to rely on the anti-assignment

10

provision or is estopped from challenging its validity. Resp. Br. at 6-7. Plaintiff's effort to hide behind *Hermann II* again fails for four reasons.

First, in reaching its conclusion that the plan in *Hermann II* was estopped from invoking the anti-assignment clause, the court found that the plan's **own claim form** sent to the provider early on stated that "benefits payable under the Plan could be assigned and that assignment could be effectuated by the participant's completion of Part IV [of the form]." *Hermann II*, 959 F.2d at 574-75. Based on this document, the court concluded that the plan had affirmatively represented to participants that assignment was permissible. *Id.* Here, Plaintiff has not identified any similar plan documents or forms suggesting that either United or the plan recognized Plaintiff as an assignee, or suggested to the provider that participants could assign claims to third-parties.

Second, the *Hermann II* court found that the plan knew for over three years that the plaintiff was relying on an assignment and was seeking payment as an assignee. *Hermann II*, 959 F.2d at 574. In so concluding, the court relied on the language of the provider's assignment document, which stated in its title that it was an "Assignment of Insurance Benefits." *Id.* Here, the assignment document submitted by Plaintiff stated that it was both a "Legal Assignment Of Benefits *And* Designation Of Authorized Representative." Am. Compl., at Ex. C. (emphasis added). Furthermore, the assignment language here also provided that the patients were ultimately responsible for paying for the services from Plaintiff, which is inconsistent with an assignment, where the provider steps into the shoes of the participant. *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 250 (5th Cir. 1990) (noting that an assignee-provider "stands in the shoes" of patient-assignor). Plaintiff simply does not allege a "course of conduct" similar to the one in *Hermann II* or sufficient to support an inference that it was clear to United that Plaintiff was proceeding as an assignee. To the contrary, as AT&T explained in its opening

11

brief, the facts in Plaintiff's complaint suggest at most that United recognized Plaintiff as an authorized representative of the plan participants. That is a status required to be recognized by ERISA and does not confer derivative standing.[3] Mot. Dism. Br. at 8-10; *see also* 29 C.F.R. § 2560.503-1(b)(4).

Third, *Hermann* is distinguishable because the party estopped in that case (the plan) was the party that had failed to timely invoke the anti-assignment defense, which was the conduct giving rise to the estoppel. Here, by contrast, all of the conduct Plaintiff identifies as supporting its estoppel and waiver claims was carried out by United, **not** AT&T. As the plan states, United's authority is limited to "interpret[ing] the provisions of the Company Self-Funded Option and determin[ing] entitlement to medical Benefits." Mot. Dism. Br., Ex. C, at 203-04. There is nothing in the plan that gives United the authority to waive the plan's anti-assignment provision on behalf of AT&T or estop AT&T with respect to the exercise of its rights under the anti-assignment provision. Plaintiff's waiver and estoppel arguments against United do not give Plaintiff standing to sue AT&T. *See, e.g.*, *Utilities Optimization Group, LLC v. Temple-Inland, Inc.*, 08-cv-68-TH, 2010 WL 767035, at *2-3 (E.D. Tex. Mar. 5, 2010) ("For a principle to be charged for the conduct of its agent, the principal must have affirmatively held out the agent as possessing authority or must have knowingly and voluntarily permitted the agent to act in an unauthorized manner.") (citing Texas law).

In addition to mistakenly comparing the facts in this case to the ones in *Hermann II*, Plaintiff argues that United's decision to apply the overpayment to the amount owed for patients EK, PM and WS is proof in and of itself that United must have considered Plaintiff an assignee.

---

[3] Not only do the facts suggest that United recognized RedOak as an authorized representative, but they also support a finding that United viewed RedOak as simply a provider entitled to direct payment, as permitted by the plan's terms. Dkt. #33-5, Mot. Dism. Br., Ex. C Summary Plan Description, at 115 (providing that payments are made directly to participant unless United is notified plan participant authorized direct payment to provider).

12

Plaintiff reasons, without any legal basis, that United could not have applied an offset to an authorized representative. Resp. Br. at 7-9. At the same time it so nakedly proffers that argument, Plaintiff also maintains that offsets are improper regardless whether they are applied to authorized representatives or assignees. *See* Resp. Br. at 11. By Plaintiff's own contentions, the fact that United offset the overpayment against the amounts at issue is not evidence one way or the other with respect to United's view of Plaintiff's status.

Fourth, Plaintiff's waiver and estoppel arguments fail because Plaintiff has failed to allege sufficient facts to establish that the elements of waiver or estoppel have been met. First, to demonstrate waiver based on a course of conduct, there must be evidence of "an unequivocal intention to relinquish [a known] right." *FDIC v. Spain*, 796 F. Supp. 241, 244 (W.D. Tex. 1992). Plaintiff alleges no facts showing, or even reasonably inferring, that AT&T knowingly and unequivocally relinquished its right to enforce the plan's prohibition against assignment.

With respect to the elements of an estoppel claim, Plaintiff must show that the party to be estopped: (1) made a material misrepresentation; (2) that the party raising estoppel reasonably relied on the misrepresentation to their detriment, and (3) that there are extraordinary circumstances warranting application of estoppel.[4] *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444-45 (5th Cir. 2005). Plaintiff does not identify a single affirmative misrepresentation by either United or AT&T; Plaintiff does not allege facts that can support an inference that Plaintiff

---

[4] Plaintiff argues that it does not need to satisfy these three elements for an ERISA-estoppel claim because the courts in *Hermann II* and *Shelby County Health Care Corp.*, 100 F. Supp. 3d 577, 581 (N.D. Miss. 2015) simply looked to a general "course of conduct." Resp. Br. at 7 n.2. This attempt to get around these basic elements, however, is unavailing. First, it is not clear from the face of the Fifth Circuit's opinion in *Hermann II* that the three requirements were not applied, particularly the first two elements, which closely track the traditional requirements for an estoppel claim recognized by the Supreme Court. *See Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59 (1984). Additionally, to the extent that the Fifth Circuit's decision in *Hermann II* was based on some sort of context-specific "course of conduct" standard for evaluating estoppel claims, this standard should be deemed to have been supplanted by the more recent standard set forth in *Sara Lee*, set forth above.

reasonably relied on any purported misrepresentation to its detriment; and Plaintiff does not explain what the "extraordinary circumstances" warranting estoppel are in this case. For all of the above reasons, Plaintiff's waiver and estoppel arguments must fail.

### 2. Lack of Standing Notwithstanding, Plaintiff Does Not Assert a Benefits Claim, but Rather, an Accounting Dispute with United.

It should be clear from the above explanation that Plaintiff has not shown standing to bring this lawsuit. But this Court need not resolve that issue because a separate reason exists for it to dismiss plaintiff's case. Specifically, Plaintiff does not plead a proper claim for benefits under ERISA. Instead, as AT&T explained in its memorandum in support of its Motion to Dismiss, (Mot. Dism. Br., at 13-14), Plaintiff is attempting to litigate an accounting dispute with United as a benefits claim against AT&T.

Plaintiff responds to these arguments by simply reiterating that Plaintiff "has never received payment from the Plans on behalf of [patients PM, EK, and WS]," (Resp. Br. at 11), but its response ignores AT&T's argument. As AT&T explained in its motion to dismiss, Plaintiff does not dispute in its complaint that it was overpaid by United for services Plaintiff provided to other patients. Plaintiff does not deny that United is entitled to reimbursement for overpayments. When Plaintiff submitted claims for PM, EK, and WS, United paid Plaintiff for these claims by applying the overpayment to the amounts owed on these claims. Plaintiff has not been denied payment of benefits. Rather, it only contests how those benefits were paid. This is not a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) (providing for a claim for benefits to which a participant is entitled "under the terms of his plan").

AT&T also provided a third ground for the First Amended Complaint's dismissal: it is not a proper defendant for Plaintiff's claim under 29 U.S.C. § 1132(a)(1)(B). When identifying proper defendants in cases such as this one, the Fifth Circuit applies a "restrained functional

14

test," which looks to "whether the named defendant had 'actual control' over the allegedly improper benefits decision." *See LifeCare Mgmt. Services LLC v. Ins. Mgmt. Admrs. Inc.*, 703 F.3d 835, 844 (5th Cir. 2013). As noted in its motion to dismiss, AT&T delegated claims administration authority to United, (*see* Mot. Dism. Br. at 4), and Plaintiff has failed to allege any facts that suggest AT&T had "actual control" over the allegedly improper benefits decision.

Although Plaintiff has now named United as a defendant in its Second Amended Complaint, Plaintiff continues to name AT&T as an additional defendant despite the lack of any allegation that it participated in the purportedly improper denial of benefits. Plaintiff's insistence that AT&T remain a defendant in this case appears to be based on its belief that the plan's administrator is ***always*** a proper defendant in a claim for benefits regardless of its scope of involvement. Plaintiff, however, does not point to any provision in ERISA that supports this view, nor does it cite to any case that addresses this specific issue. To the contrary, plaintiff cites to dicta in *LifeCare Mgmt. Services LLC*, a case that considered under what circumstances *a third-party administrator* can be named a defendant. Nothing in *LifeCare* establishes that a designated plan administrator (here, AT&T) can be sued for an administrative claims decision rendered by its third-party administrator (United) as to the method of payment when there is no evidence that the designated plan administrator had any involvement in that decision. *See* Mot. Dism. Br. at 14.

## CONCLUSION

Nothing in Plaintiff's response to AT&T's motion to dismiss or Second Amended Complaint provides a reason for Plaintiff to target AT&T in this dispute. Accordingly, AT&T's motion to dismiss Plaintiff's First Amended Complaint should be granted, and Plaintiff's Second Amended Complaint against AT&T should be stricken without leave to amend.

Date: November 28, 2016    Respectfully submitted,

*/s/ Laura R. Hammargren*
Nancy G. Ross
Laura R. Hammargren
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
T: (312) 791-0600
F: (312) 701-7711

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

      I, Laura R. Hammargren, certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants on November 28, 2016.

                                              */s/  Laura R. Hammargren*

                                              Attorney for Defendant

722368102