```
 1                    UNITED STATES DISTRICT COURT

 2                    SOUTHERN DISTRICT OF TEXAS

 3                         HOUSTON DIVISION

 4   RED OAK HOSPITAL, LLC,              .
                                         .
 5                 Plaintiff,            .
                                         .   Civil Action
 6   VS.                                 .   No. H-16-CV-1542
                                         .
 7   AT&T, INC., et. al.,                .   Houston, Texas
                                         .   September 6, 2016
 8                 Defendants.           .   9:43 a.m.
 9   . . . . . . . . . . . . . . . . . . .

10                 TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE LYNN N. HUGHES
11                   IN-CHAMBERS CONFERENCE

12   APPEARANCES:

13   FOR THE PLAINTIFF:

14           Mr. Ebadullah Khan
             RED OAK HOSPITAL
15           17400 Red Oak Drive
             Houston, Texas 77090
16           281.919.1712
             FAX:  832.202.6028
17           ekhan@trinityhealthcarenetwork.com

18   FOR THE DEFENDANTS:

19           Mr. Charles S. Kelley
             MAYER BROWN, LLP
20           700 Louisiana Street
             Suite 3400
21           Houston, Texas 77002-2730
             713.238.2634
22           FAX:  713.238.4634
             ckelley@mayerbrown.com
23

24
             PROCEEDINGS RECORDED BY STENOGRAPHIC MEANS,
25     TRANSCRIPT PRODUCED FROM COMPUTER-AIDED TRANSCRIPTION
```

```
 1                            APPEARANCES

 2                             (continued)

 3   FOR THE DEFENDANTS:

 4           Ms. Nancy G. Ross
             MAYER BROWN, LLP
 5           71 South Wacker Drive
             Chicago, Illinois  60606
 6           312.782.0600

 7           Ms. Kelly Ann F. Clarke
             AT&T SERVICES, INC.
 8           Legal Department
             6500 West Loop South
 9           Zone 5.5
             Bellaire, Texas  77401
10           713.567.7836
             FAX:  214.486.1669
11           kelly-ann.clarke@att.com

12

13

14

15   COURT REPORTER:

16           GAYLE L. DYE, CSR, RDR, CRR
             515 Rusk, Room 8016
17           Houston, Texas  77002
             713.250.5582
18

19

20

21

22

23

24

25
```

```
 1                        PROCEEDINGS
 2                     September 6, 2016
 3        (In chambers.)
 4             THE COURT:  Mr. Khan --
 5             MR. KHAN:  Yes, your Honor.
 6             THE COURT:  -- what did AT&T, Inc., have to do with
 7   this plan?
 8             MR. KHAN:  AT&T, Inc., is the plan administrator.  It
 9   is their plan.  They --
10             THE COURT:  Wait, wait.
11             MR. KHAN:  Sorry.
12             THE COURT:  It is their plan.  Isn't it the sponsor?
13             MR. KHAN:  The plan sponsor and the plan
14   administrator, yes, sir.
15             THE COURT:  Which is it?
16             MR. KHAN:  Both, your Honor.  AT&T is both the plan
17   sponsor and the plan administrator to the plan.
18             THE COURT:  So, then, we have four or five more
19   Defendants we don't need.
20             MR. KHAN:  We believe that Larry Ruzicka, as well, is
21   also a plan administrator to the plan.
22             THE COURT:  Well, if you've got one administrator,
23   don't you have the plan?
24             MR. KHAN:  We believe that --
25             THE COURT:  You keep saying "believe."
```

09:43:58 — line 5
09:44:14 — line 10
09:44:25 — line 15
09:44:38 — line 20
09:44:53 — line 25

1          MR. KHAN:  Sorry.

2          THE COURT:  I want you to know something.

3          MR. KHAN:  Sorry.  Larry Ruzicka, he has authority to

4  -- as the plan -- he has authority to control the assets.  He

09:45:03  5  manages the assets of the plan.

6          THE COURT:  So, does AT&T, Inc., or whatever it is

7  this week.

8          MR. KHAN:  They do.  AT&T and Larry Ruzicka both have

9  the authority to manage the assets of the --

09:45:19  10          THE COURT:  My question was if you have one person

11  with authority, why do you need another one?

12          MR. KHAN:  In regards to Red Oak -- Red Oak Hospital.

13  Because Larry Ruzicka has authority to manage the assets of the

14  plan, as well, he is acting on behalf of AT&T; and so, because

09:45:37  15  of that --

16          THE COURT:  You don't do that.  You don't sue the

17  monkey when you've sued the organ grinder.  How about AT&T

18  Savings and Security Plan?

19          MR. KHAN:  I believe the petition was amended -- or

09:45:56  20  not believe.  The petition was amended where the plan -- the

21  plan that changed -- it was -- the first complaint was Savings

22  and Security Plan.

23          THE COURT:  Why did you do that?

24          MR. KHAN:  The plan that we included was not the plan.

09:46:09  25          THE COURT:  Why did you include a plan that wasn't the

1    right one?

2            MR. KHAN:  We amended and we took out the Savings and

3    Security Plan and we included the proper plans which is Plan --

4    Benefit Plan 1 and Benefit Plan 3.

09:46:21  5            THE COURT:  Wait a minute.  So, Red Oak has no

6    interest in AT&T Savings and Security Plan?

7            MR. KHAN:  No, your Honor.

8            THE COURT:  How about AT&T Umbrella Benefit Plan

9    Number 1?

09:46:36  10            MR. KHAN:  Yes, your Honor, 1.

11            THE COURT:  What about 3?

12            MR. KHAN:  And 3, as well.  Benefit Plan 1 is --

13    Benefit Plan 1 is that covers employees who are currently

14    employed by AT&T and Benefit Plan 3 covers employees that have

09:46:53  15    previously been employed -- or who have retired under -- with

16    benefit rights from AT&T.

17            THE COURT:  It's my understanding that you sue the

18    plan.

19            MR. KHAN:  The reason we included AT&T as a plan

09:47:19  20    administrator is because we were seeking non-ERISA benefit

21    claims, as well.

22            THE COURT:  You're not going to get them.  This is an

23    ERISA claim.

24            MR. KHAN:  Okay.

09:47:31  25            THE COURT:  Isn't it?

                    Gayle Dye, CSR, RDR, CRR - 713.250.5582

```
      1            MR. KHAN:  Yes, your Honor.
      2            THE COURT:  You want benefits.  That's all Red Oak
      3    ever had an assignment of, didn't it?  Red Oak has no
      4    relationship with AT&T in any form other than an assignment of
09:47:48  5    benefits.  Is that true?
      6            MR. KHAN:  It is true.  But in the assignment of
      7    benefit, it allows for Red Oak Hospital to have derivative
      8    standing in pursuing non-ERISA benefit claims.
      9            THE COURT:  The trouble is there's a statute involved
09:48:04 10    that says there are no derivative claims.  Have you read
     11    Employee Retirement Insurance -- it's been so long, I --
     12            MS. ROSS:  Security.
     13            THE COURT:  -- Security.
     14            MS. ROSS:  I was really impressed.
09:48:29 15            THE COURT:  I sort of like life.  Actually, the best
     16    part of it is the preemption of all these things you learned in
     17    law school but have never been able to do.  Because without
     18    that, there would be no benefit plan.  The transaction costs
     19    would exceed any value that the company was giving its
09:48:50 20    beneficiaries.
     21            Now, there are occasional populist judges and
     22    lots of populist lawyers or at least -- see money at the end of
     23    it which might make me be a populist if I can make money off of
     24    it.  I doubt that.
09:49:08 25            This is a contract case in a regulatory context.
```

1    Red Oak billed "X," they got paid "X" minus "Y," right?

2           MR. KHAN:  Yeah -- yes.  We did not get paid at all.

3    Yes, your Honor.

4           THE COURT:  Well, that's "X" minus "Y" which happens

09:49:29   5    to be equal to "X."

6           MR. KHAN:  Yes.

7           MR. KELLEY:  You're pulling the algebra card, I can

8    see.

9           THE COURT:  Pardon?

09:49:37   10          MR. KELLEY:  You're pulling the algebra card.

11          THE COURT:  Yeah.

12               I'm sorry.  Ms. Ross, would you explain all this

13   to him later?

14          MS. ROSS:  I apologize, your Honor.  I wasn't on the

09:49:47   15   hiring committee when he was allowed in.

16          THE COURT:  Me either.  He's been annoying me for -- I

17   don't know.

18               What, 25 years?

19          MR. KELLEY:  Do you really want to count them then?

09:49:58   20          THE COURT:  Well, I got --

21          MR. KELLEY:  I didn't think I got to the level of

22   annoying until, like, the last 15.

23          THE COURT:  No.

24          MS. ROSS:  I knew it was going to hurt my client's

09:50:09   25   position by having him join us; but if you saw the choices,

```
 1   you'd understand.
 2             THE COURT:  So, how many assignments does Red Oak
 3   have?
 4             MR. KHAN:  In the AT&T complaint, we have --
 5             THE COURT:  Wait.  I only want to know about this
 6   case.
 7             MR. KHAN:  Right.  So, three.
 8             THE COURT:  Do you have another complaint?
 9             MR. KHAN:  No, we don't.  We don't.  We have three
10   assignments from the three patients.
11             THE COURT:  And what is the aggregate total, $62,000?
12             MR. KHAN:  Approximately, yes, your Honor.
13             THE COURT:  I'm with the government, I work in round
14   numbers.  A billion here, a billion there.
15             And what did Red Oak do to these beneficiaries?
16             MR. KHAN:  I don't have the itemized services in front
17   of me; but aside from providing services, I don't know the
18   specific services.
19             THE COURT:  I want to know what the case is about.
20             MR. KHAN:  Yes, your Honor.  I do not have the
21   specific services, I apologize.
22             THE COURT:  Any of you know?
23             MS. ROSS:  I don't know, your Honor.  One of the
24   issues that we had here --
25             THE COURT:  All right, louder.
```

09:50:27 (line 5)
09:50:35 (line 10)
09:50:51 (line 15)
09:51:10 (line 20)
09:51:24 (line 25)

1          MS. ROSS:  I'm sorry.  One of the issues is that the

2   complaint doesn't name who the individuals are at AT&T.  So, we

3   are unable to identify what services were provided.

4          THE COURT:  Well, the hospital's lawyer doesn't know

09:51:52   5   what the benefits were.

6          MR. KHAN:  Right.  I do not have the specific

7   services.

8          THE COURT:  And the hospital knows, right?

9          MR. KHAN:  Yes, your Honor, the hospital knows.

09:52:04   10          THE COURT:  Why didn't you find out what the hospital

11   knew, your client, before you sued all these extra people and

12   didn't tell the Defendant what the problem was?

13          MR. KHAN:  We did send appeal letters directly to AT&T

14   informing them of our -- of our allegations.

09:52:25   15          THE COURT:  You can chat with AT&T, send them an

16   Easter card.  It's late -- or early.  But you filed a lawsuit.

17          MR. KHAN:  Yes, your Honor.

18          THE COURT:  It's supposed to give me and them a short

19   clear statement of what happened in the real world.

09:53:09   20          MR. KHAN:  And I can quickly summarize for you if

21   that's what you're looking for, your Honor.  These three

22   patients received services from Red Oak Hospital.  And after

23   they received -- after they received services from the hospital,

24   the hospital billed United Healthcare.

09:53:27   25          Two separate documents were issued or generated,

1   Electronic Remittance Advice 835, which is a HIPAA-mandated

2   document.  And then, you have a provider explanation of

3   benefits.

4                    In two of the claims --

09:53:40   5              THE COURT:  You know, I'm somewhat familiar with

6   doctors.

7              MR. KHAN:  Okay.

8              THE COURT:  I've had parents; siblings; a wife; three

9   children; four grandchildren; and myself, which, although

09:54:00   10  largely perfect, does have a few maintenance items that come

11  along every once in awhile these days.

12             MR. KHAN:  And so, if you -- I can --

13             THE COURT:  Now, you say the Defendants had actual

14  knowledge that United may be engaged in statutorily prohibited

09:54:29   15  -- and you don't know that.

16             MR. KHAN:  Your Honor, in the appeal letters that

17  we've sent to -- directly to AT&T and the plan -- and, sorry,

18  not -- AT&T and Larry Ruzicka addressed -- in the letter, it

19  specifies our allegations.  It informs them of the type of --

09:54:47   20  the type of practices that United Healthcare and --

21             THE COURT:  Well, you tell me what they are because

22  I'm on page 7 and I've got a lot of emotion and not much

23  clarity.  Do you have a girlfriend?

24             MR. KHAN:  I'm married, yes, your Honor.  So, she's

09:55:13   25  probably a girlfriend, yes.

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1          THE COURT:  Could be.  And do you talk to her the way
2     you write this?
3          MR. KHAN:  No, I do not, your Honor.
4          THE COURT:  Well, don't talk to everybody else that
09:55:26  5     way.  This is supposed to be a plain statement.  And this is
6     your amended one, right?  So, you've had time to sue a bunch of
7     people, realize you'd done it wrong, and go back to start again.
8     It's 43 pages long.
9               Where does short and plain -- it's not -- there's
09:55:47  10    nothing plain about this.  Were you on Law Review?
11         MR. KHAN:  No, your Honor.
12         THE COURT:  That sounds like Law Review which is the
13    wrong way to do anything.  You've got textual footnotes on
14    nearly every page --
09:56:05  15         MR. KHAN:  I wanted to --
16         THE COURT:  -- in two-point type.
17         MR. KHAN:  Yes, your Honor.
18         THE COURT:  And the name of the Plaintiff is Red Oak
19    Hospital.  And what level of hospital is it in the State of
09:56:39  20    Texas?
21         MR. KHAN:  It's a small hospital.  It's four beds.
22    The trauma level is II.
23         THE COURT:  How many overnight stays did they have
24    last year?
09:56:56  25         MR. KHAN:  We typically do not have many overnight

1  stays; although --

2          THE COURT:  I asked for a number.

3          MR. KHAN:  I don't have an exact number, your Honor.

4          THE COURT:  Well, get the breakdown for last --

09:57:09  5              Is last year okay?

6          MS. ROSS:  I'm sorry?

7          THE COURT:  Last year for the data, patients and

8  stays?

9          MS. ROSS:  I don't have that.

09:57:18  10         MR. KELLEY:  He's asking if we want it.

11         MS. ROSS:  Oh.

12         THE COURT:  Is just a year of it to start with?

13         MS. ROSS:  Yeah -- yes.

14         THE COURT:  So, get us the overnight stays, the number

09:57:28  15 of patients, the medical staff who at any time --

16             Go away.

17             One evening I was sitting here, lots of sirens;

18 and I said to myself, "That sounds close."  And I went back to

19 work.  And about ten minutes later, the phone rang; and I

09:57:57  20 answered.  It's the marshal.  He said, "Judge, the building's on

21 fire."

22             And I said, "Well, is it bad?"

23             He said, "I already left."

24         MS. ROSS:  That's great.

09:58:05  25         THE COURT:  I said, "Well, where is it?"


                    Gayle Dye, CSR, RDR, CRR - 713.250.5582

1          It was in Judge DeAnda's chambers which is two

2    floors down right under me; and I thought, "Well, I prefer not

3    to be roasted."

4          MR. KELLEY:  Fire tends to travel a lot.

09:58:25    5          THE COURT:  The hard part of putting the fire out,

6    other judges were throwing their files into the fire.  "Here,

7    take these patent cases."

8          MS. ROSS:  But not those ERISA cases.

9          THE COURT:  No, no, we love those.

09:58:38   10          MS. ROSS:  We love those.

11          THE COURT:  Do you really mean embezzlement of plan

12    assets?

13          MR. KHAN:  Your Honor, there was --

14          THE COURT:  "Yes" or "no"?

09:59:21   15          MR. KHAN:  Yes, your Honor.

16          THE COURT:  You know, that's a serious charge.

17          MR. KHAN:  Yes, your Honor, I understand.

18          THE COURT:  That doesn't mean they didn't pay some

19    doctor what he thinks he's worth, that means somebody stole from

09:59:37   20    the plan.  And stealing from the plan and stealing from your

21    clients are different.  It says, "Stealing the plan assets."

22          MR. KHAN:  Yes, your Honor.

23          THE COURT:  Why isn't Red Oak in a network?

24          MR. KHAN:  Red Oak Hospital, for the last two and

10:00:10   25    half, three years it's been operating, it's been operating

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1    out-of-network.  They enjoy -- they feel comfortable as a

2    business decision that they prefer to stay out-of-network as

3    opposed to going in-network.

4              THE COURT:  And if they were in-network, what would

5    the difference be?

6              MR. KHAN:  The difference in payment?  I would not be

7    able to tell you.

8              THE COURT:  Payments would be quicker.

9              MR. KHAN:  The payments would be -- right.

10             THE COURT:  More reliable.  And they'd be lower.

11             MR. KHAN:  Yes, your Honor, they would be lower.

12   However, I think from what -- in my experience and what I've

13   seen and what -- speaking of the individual, as well, is after

14   an extended period of time of being in-network, insurance

15   companies begin to take advantage of the fact that you are

16   in-network.

17             THE COURT:  Get a contract.

18             MR. KHAN:  Yes, your Honor.

19             THE COURT:  AT&T Benefit Plan 73.6A --

20                  Is that the right one?

21             MS. CLARKE:  One or three.

22             THE COURT:  -- doesn't have a contract with Red Oak,

23   it has a contract with the beneficiary to pay a reasonable

24   amount, not the claimed amount.

25             MR. KHAN:  Yes, your Honor.

1          THE COURT:  And you know that doctors overbill and the

2     insurance companies cut it.

3          MR. KHAN:  Yes, your Honor, I understand.

4          THE COURT:  And so, both sides -- it would be a lot

10:01:42  5     more efficient if doctors would bill a reasonable amount, not

6     what they think they're worth.  We've got great doctors in this

7     country and they need to be paid.  I don't want our doctors

8     worrying about the mortgage while they're cutting on me.

9     There's a good reason your people didn't go into a network.

10:02:06  10          MR. KHAN:  Go into?  What is that, your Honor?

11          THE COURT:  A network.

12              How much money did the administrator convert to

13     his own uses?

14          MR. KHAN:  And that is one of the --

10:02:44  15          THE COURT:  How much money?

16          MR. KHAN:  Approximately -- approximately, the amount

17     that we're asking for, which is around 65,000.

18          THE COURT:  That's the amount your client did not get

19     paid for which it billed.  How much was stolen?

10:03:01  20          MR. KHAN:  Your Honor, the allowed amount that is in

21     the explanation -- there is an allowed amount in the explanation

22     of benefits.  When an amount is allowed, then that is the amount

23     minus the cost-sharing obligations to be paid to the provider.

24     But none of that amount was paid.  However, Red Oak --

10:03:16  25          THE COURT:  That would be the allowed amount if other

1  things were equal, but they never are.  I've asked my question:

2  How much did the administrator use to buy a bass boat or

3  otherwise convert it or steal it?

4          MR. KHAN:  In totaling the allowed amounts, we believe

10:03:40  5  those were approximately --

6          THE COURT:  You don't know that they did anything

7  other than administer the plan in a way your client doesn't like

8  it.  That's not embezzlement.  They didn't embezzle anything --

9          MR. KHAN:  Yes, your Honor.

10:03:53  10         THE COURT:  -- from your people.  They may have

11  embezzled it from the beneficiary, but they didn't do that.  You

12  have a valuation dispute.  And yet, you bring in here in -- is

13  this the amended one?  Yes.  -- in the amended one -- and it's

14  still 44 pages of tedious recitation of all manner of things,

10:04:24  15  even checks in italics bold.

16              "Abstracted and converted Defendant's plan

17  assets."  That's a fight between United and the plan, isn't it?

18          MR. KHAN:  Your Honor, that -- we believe Red

19  Oak Hospital --

10:04:58  20         THE COURT:  That's a fight between United -- if you

21  find your chauffeur is stealing from you, you don't sue somebody

22  else about that, you sue the chauffeur.

23          MR. KHAN:  Yes, your Honor.

24          THE COURT:  And nobody else can sue you because your

10:05:13  25  chauffeur is stealing from you.  If he's stealing from one of

1  your house guests, then they can sue.  You have strung together

2  endless detail with no theme and made lots of accusations which

3  are just legally incorrect.

4           MR. KHAN:  Okay.

10:05:35  5           THE COURT:  Okay?

6           MR. KHAN:  Sorry.  Yes, your Honor.  Yes, your Honor.

7           THE COURT:  Your client is not the authorized

8  representative, hyphen, claimant of Patients X, Y, and Z.  It's

9  an assignee of their claims.  That's all it is.  A valid

10:06:17  10 unchallenged full and fair guaranteed review.  ERISA guarantees

11 it is administratively competent.  It doesn't require

12 perfection, doesn't require error free.

13           MR. KHAN:  Yes, your Honor

14           THE COURT:  That's what the law says.

10:06:42  15           MR. KHAN:  Yes, your Honor.

16           THE COURT:  Now, how did you discover the adverse

17 benefit determination?

18           MR. KHAN:  We discovered the adverse benefit

19 determination when the hospital received the explanation of

10:07:15  20 benefits.  There was an allowed amount with the patient's cost

21 share and obligations.  Typically, once an allowed amount has

22 been determined, you minus and subtract the cost-sharing

23 obligation; and that's what's to be paid to the hospital.

24           However, the explanation of benefits goes on to

10:07:30  25 show that that -- money that was to be paid to the hospital was

1  then used to -- was then used as -- to satisfy an overpayment

2  from a previous claim that was not of an AT&T beneficiary

3  participant.  So, a cross-plan participant.

4        THE COURT:  And so, their complaint is that a credit

10:08:03  5  from one of these patients was applied to an existing

6  overpayment, an overpayment to you?

7        MR. KHAN:  An overpayment --

8        THE COURT:  "Yes" or "no"?

9        MR. KHAN:  Yes, your Honor.  Yes, your Honor.

10:08:16  10        THE COURT:  Are you familiar with offsets?

11        MR. KHAN:  Yes, your Honor, I am.

12        THE COURT:  So, they keep the money that you owe them

13  and you credit that to your patient.  Everybody is equal.

14  There's also recoupment, but that doesn't apply here.  It's an

10:09:01  15  offset, not an embezzlement.

16        Now, Ms. Ross, who ought to be the Defendant in

17  this case when it's a claim for benefits?

18        MS. ROSS:  Your Honor -- well, a claim for benefit is,

19  typically, made against the plan administrator --

10:09:21  20        THE COURT:  Who is that?

21        MS. ROSS:  -- under the law -- the law.

22        THE COURT:  Who is that?

23        MS. ROSS:  The plan administrator here would be AT&T

24  Services, but it has legally delegated that role to United

10:09:34  25  Healthcare.  So, it has designated United Healthcare by way of

1  contract to be the claims administrator and have full fiduciary

2  responsibility for deciding claims under the plan.  AT&T

3  Services, Inc., not AT&T, Inc.

4           THE COURT:  Speak up.

10:09:52  5           MS. ROSS:  It's AT&T Services, Incorporated, not AT&T,

6  Inc.  It's two different companies.

7           THE COURT:  So, we don't have the right Defendant?

8           MS. ROSS:  Right.  And we've tried to tell Mr. Khan

9  that.

10:10:07  10           THE COURT:  Well, why should he believe you, you

11  represent a bunch of crooks?  So, the laboring oar is United?

12           MS. ROSS:  Correct.

13           THE COURT:  And it labors as the monkey to the organ

14  grinder, AT&T Services?

10:10:26  15           MS. ROSS:  Yes, your Honor.  Although, the difference

16  is that it operates independent of AT&T Services in that it has

17  full discretion.

18           THE COURT:  That's a detail and an arrangement between

19  the two.

10:10:40  20           MS. ROSS:  Right.  This is a dispute that should be

21  between Red Oak and United Healthcare, not AT&T.

22           THE COURT:  I know.  But it's Red Oak under a contract

23  with them.

24           MS. ROSS:  It is not -- it is not under a contract

10:10:59  25  with AT&T Services because Red Oak is out-of-network.  So, it

Gayle Dye, CSR, RDR, CRR - 713.250.5582

 1   does not have a contract.

 2          THE COURT:  Then, what are you administering if you

 3   don't have an agreement to administer something for them?

 4          MS. ROSS:  We have an agreement with the plan

10:11:16   5   participants to provide covered services under the plan.  So,

 6   that is what the -- if there is a contract between any two

 7   parties --

 8          THE COURT:  But the sponsor has to put you in that

 9   relationship.

10:11:31  10          MS. ROSS:  Right.  It has.

11          THE COURT:  I mean, I guess there are plans where you

12   can pick different sources of supply but they're only available

13   when she says they are.

14          MS. ROSS:  That's right.  That's correct.

10:11:49  15          THE COURT:  But as far as these three people, they

16   chose a United-provided benefit out of those available at AT&T

17   Services.

18          MS. ROSS:  They -- the participants -- these three

19   people are free to choose an out-of-network provider, as Red Oak

10:12:17  20   is; but they can only recover what the plan terms provide.

21          THE COURT:  No, I know that.

22          MS. ROSS:  I think he's talking --

23          THE COURT:  With the Government Employees' Health

24   Association or whatever it is, I have -- you're free to go

10:12:34  25   anywhere you want to --

Gayle Dye, CSR, RDR, CRR - 713.250.5582

```
 1              MR. KELLEY:  Right.
 2              THE COURT:  -- but they're free not to pay for it.
 3              MS. ROSS:  Right.
 4              THE COURT:  Sometimes they pay some.
 5              MS. ROSS:  That's right.  Exactly the same situation,
 6    whatever plan that AT&T --
 7              THE COURT:  But it's still -- GEHA is a group plan
 8    benefit.  The administrative office or somebody is the
 9    administrator.  Because it's among a selection.  I can choose
10    somebody else to mistreat me.
11              MR. KELLEY:  Right.
12              MS. ROSS:  Right.  That's right.
13              MR. KELLEY:  "A," "B," "C," "D," or other.
14              MS. ROSS:  Yes.  If you want an AT&T plan, it's going
15    to be administered by AT&T Services through United Healthcare.
16              THE COURT:  Or Blue Cross if you offer a Blue Cross.
17              MS. ROSS:  And we don't.
18              THE COURT:  Okay.  So, AT&T plan administered by
19    Services has only one insurance supplier.
20              MS. ROSS:  The plans we're talking about, yes.
21              THE COURT:  Right.
22              MS. ROSS:  The ones -- yes.
23              THE COURT:  So, it would be as if the Administrative
24    Office said, "We're only supplying you with GEHA, so take it or
25    don't."
```

1          MR. KELLEY:  Right.

2          THE COURT:  Follow that?

3          MR. KHAN:  Yes, your Honor.

4          THE COURT:  AT&T Services, Inc.?

10:14:06   5          MS. ROSS:  Yes.

6          THE COURT:  That makes United just a supplier because

7  if Services has delegated the discretion, it's still the plan's

8  discretion.  It's responsible for whatever discretion is done by

9  its agents.  So, I think we need AT&T Services, Inc., and nobody

10:15:12  10  else.

11               Oh, how's Larry doing?

12          MS. ROSS:  Mr. Ruzicka is fine, your Honor.  He is a

13  tax vice president, senior vice president.  He signs off on

14  disclosures because, you know, people have to do that.

10:15:29  15          THE COURT:  So, if you really want to sue Mr. Ruzicka,

16  we'll have him come down and talk to you about taxes for a

17  couple of hours.  That will get you.

18          MR. KELLEY:  That will cure something.

19          THE COURT:  All right.  Do you agree that this case

10:15:52  20  should proceed against AT&T Services, Incorporated?

21          MR. KHAN:  Yes, your Honor.

22          THE COURT:  You're sure?

23          MR. KHAN:  Yes, your Honor.

24          THE COURT:  And you-all agreed on an extension of an

10:16:12  25  answer or something like that?


Gayle Dye, CSR, RDR, CRR - 713.250.5582

1          MR. KELLEY:  We did, your Honor.  Until October 19th,
2    I believe.
3          THE COURT:  All right.  So, is she going to appear for
4    Services?
10:16:21    5          MS. ROSS:  She was not going to file an appearance.
6    Ms. Clarke is in-house counsel for AT&T.
7          THE COURT:  So is he.
8          MS. ROSS:  Sure.  And whatever your practice is.
9    She's --
10:16:33   10          We're happy to have you.
11          THE COURT:  No.  I mean, I don't want him to have to
12   serve AT&T Services, Inc., in their Cameroon headquarters.
13          MR. KELLEY:  We have arranged, as we did with the
14   first amended pleading after we pointed out the plan -- the
10:16:50   15   wrong plan was sued, that we would accept service for that
16   lawsuit; and we intend to offer the same courtesy to Mr. Khan
17   again.  Once he amends, we'll accept service.
18          THE COURT:  Why don't you just answer?  Just answer.
19          MR. KELLEY:  Can we --
10:17:05   20          THE COURT:  When?
21          MR. KELLEY:  Can --
22          THE COURT:  That's what I'm trying --
23          MR. KELLEY:  We'll answer by October 19th.  Can we
24   assume -- one of the --
10:17:14   25          THE COURT:  Six weeks?

```
 1              MR. KELLEY:  One of the --

 2                   I'll let you speak to it.

 3              MS. ROSS:  Well, your Honor, if the answer is as

 4    simple as asking the Court to dismiss the lawsuit because the

 5    wrong party was named, we can certainly do that in quite rapid

 6    time.

 7              THE COURT:  I'm going to dismiss everybody but

 8    Services.

 9              MS. ROSS:  Services isn't in here yet, though.

10              THE COURT:  Well, but they will be.

11              MS. ROSS:  So, if he amends --

12              THE COURT:  If you announce a misnomer and you appear

13    for the plan that was sued and everybody else goes away, that

14    solves the problem without more money.

15              MR. KELLEY:  Assuming none of the other allegation --

16              THE COURT:  You're not having an affair with a process

17    server, are you?

18              MR. KELLEY:  Not that I'm aware of, your Honor.

19              MS. ROSS:  No.  We'll accept service, your Honor.  But

20    we do have to have the right party named formally in the

21    complaint.

22              MR. KELLEY:  Trigger some things administratively, I'm

23    sure, in the company.  We don't need to change our answer date

24    if he'll get it to us quickly.

25              THE COURT:  I'm afraid to ask him to replead because
```

Timestamps: 10:17:26 (line 5), 10:17:36 (line 10), 10:17:52 (line 15), 10:18:02 (line 20), 10:18:16 (line 25)

Gayle Dye, CSR, RDR, CRR - 713.250.5582

```
 1   he's done it twice and we didn't get very far.  So, I just want
 2   to strike everybody else who's improvidently named and
 3   substitute with your permission "AT&T Services, Inc."; and then,
 4   you can answer.
 5                    Why do you need six weeks?
 6           MS. ROSS:  The concern that I have with that approach,
 7   your Honor, is that I would not want to be -- there are obvious
 8   material deficiencies in the complaint, more than just not
 9   naming the right person.
10           THE COURT:  I know.
11           MS. ROSS:  And I don't want to waive those arguments
12   by saying, "Sure, you can sue AT&T Services."
13           THE COURT:  You can name -- I'm going to substitute
14   one name for 13.  And then, you --
15                    In the next two years, is it, Mr. Kelley, before
16   you'll be ready?
17                    File a motion to dismiss for want of
18   jurisdiction, file a motion to dismiss for failure to state a
19   claim, move for compulsory arbitration in Brazil.  I don't know.
20   I just want to get through.
21           MS. ROSS:  I like that.  I like that.
22           MS. CLARKE:  Can we go to Brazil?
23           MS. ROSS:  Yeah.
24           MR. KELLEY:  I'm going to put that one down.  I hadn't
25   thought of that one.
```

10:18:35
10:18:56
10:19:08
10:19:25
10:19:36

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1          THE COURT:  I just want a party.  And then, you still

2    have all of whatever claims you want to make.  But I don't want

3    you to charge poor old AT&T for answering 44 pages which is

4    largely insulting argumentative nonsense.

10:20:01     5          MS. ROSS:  Right.

6          MR. KELLEY:  We agree.

7          MS. ROSS:  Right.

8          THE COURT:  It should be three pages long and the

9    right parties.

10:20:08    10          MR. KHAN:  I understand, your Honor.

11          THE COURT:  Have you read that Rule 11 about a

12    reasonable investigation of the facts and law?

13          MR. KHAN:  I understand, your Honor.

14          THE COURT:  So, then, we have something -- this is --

10:20:23    15    all these different people, that's so much mush.  I don't really

16    want to spend the time and the taxpayer's money sorting through

17    there.  We just did it.

18          MS. ROSS:  I couldn't agree with you more, your Honor.

19          THE COURT:  So -- so, you'll stand on the -- I have a

10:20:48    20    first amended.  You said something about a second amended.

21          MR. KELLEY:  I didn't mean to.  That first amendment

22    was the result of a conversation we had with Mr. Khan.

23          THE COURT:  Okay.  So, the text of this, except for

24    substituting AT&T Services, Inc., for all the Defendants will

10:21:07    25    subsist; and you then respond with whatever it is you think

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1  needs doing.

2          MR. KELLEY:  The parties will go down to one.  We'll

3  answer only on behalf of AT&T Services, Inc.

4          THE COURT:  Right.  But everywhere all these other

10:21:22  5  people are mentioned, that's all AT&T Services.  You have all

6  these aliases.

7          MS. ROSS:  So, in other words, the Defendants are to

8  assume that the only named Defendant --

9          THE COURT:  No, you're not going to assume -- I'm

10:21:39  10  going to give you an order.

11          MR. KELLEY:  He's going to give us an order that's

12  going to say it.

13          MS. ROSS:  Okay.

14          THE COURT:  And if you answer for any of these other

10:21:46  15  people, I'll get you.

16          MR. KELLEY:  I won't let an answer on behalf of those

17  other people go out the door.

18          THE COURT:  I'll get you a stern order that explains

19  that we're substituting AT&T Services, Inc., for everybody else.

10:22:01  20          And October 19th?

21          MR. KELLEY:  Well, part of the challenge was

22  scheduling.  We want to -- I do want to say this:  There is a

23  good chance it's going to be a motion to dismiss we're filing,

24  your Honor.

10:22:13  25          THE COURT:  I know that.  Have you ever not filed one?

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1          MS. ROSS:  Your Honor, look at the complaint.  We

2   need, at least, five weeks to try to comprehend what it says and

3   then a week to draft our response.

4          THE COURT:  Most of it doesn't say anything.

10:22:30   5          MR. KELLEY:  What was the old expression:  "Please

6   excuse the 40-page letter.  I didn't have enough time to write a

7   three-page one"?  You want a short Rule 12 motion to dismiss if

8   we're going to file one, you got to give us the time to make it

9   short, your Honor.

10:22:46  10          Part of it, also, your Honor, was recognizing

11  some trials and things we have in between.  We want to dedicate

12  the appropriate time.  So, scheduling also directed that.  And I

13  know we have a lot of people --

14          THE COURT:  You just made the same motion for summer

10:22:59  15  vacations and kids back in school.  Now, it's going to be deer

16  season and Thanksgiving.

17          MR. KELLEY:  I promise you won't get a deer season

18  motion from us.

19          THE COURT:  Well, I might get it from you-all.  You

10:23:15  20  might not do it but --

21          MS. ROSS:  Isn't it dove season?

22          THE COURT:  All those family vacations I get motions

23  for --

24          MR. KELLEY:  October is --

10:23:21  25          MS. ROSS:  Quail?

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1          MR. KELLEY:  My in-laws are from Louisiana.  I know

2    they know.  I don't.

3          THE COURT:  All these family vacation motions for

4    continuance, they probably don't go anywhere with their

10:23:31  5    families, they just don't want to come here.

6          MR. KELLEY:  It's too hot.  They don't want to walk

7    across the street.

8          THE COURT:  I'm not adverse to hunting except they all

9    involve getting up really early in the morning when it's cold

10:23:38 10    and going outside.

11          MS. ROSS:  It's cold, right.

12          MR. KELLEY:  Frequently standing somewhere where it's

13    damp.

14          THE COURT:  Yes.

10:23:47 15          MS. ROSS:  And cold.

16          THE COURT:  And then, shooting something.  And that

17    might be great fun; but then, you spend the rest of the day

18    cleaning up the mess.  It's just -- I think people ought to do

19    what they want to do.  Just don't invite me.

10:24:00 20               I was kind of sorry I turned down the -- the dean

21    of Arts and Sciences of Alabama, he offered me two tickets to

22    the game Saturday.  I'm not a sports fan but --

23          MR. KELLEY:  Up in Dallas?

24          THE COURT:  Uh-huh.

10:24:14 25          MR. KELLEY:  AT&T Stadium.

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1          THE COURT:  Oh, I would have had to recuse.  Darn.

2          MS. ROSS:  There you go.  Yeah.  I was waiting for

3   that.  Don't we come in handy.  Don't we come in handy.

4          THE COURT:  I think it's kind of neat that AT&T, the

10:24:32   5   old mother company of all the universe, is now owned by

6   Southwestern Bell Telephone.

7          MR. KELLEY:  There's a lot of business coming out of

8   Texas.

9          THE COURT:  Well -- and some people took it poorly

10:24:45  10   when they took over Pacific Bell.  The idea that people from

11   St. Louis and San Antonio and places like that were running

12   California's phones, it was a terrible idea.  It wasn't cool.

13          MR. KELLEY:  As a nod to them, they moved to Dallas.

14          MS. ROSS:  They're getting used to it.  And those

10:25:07  15   Direct TV guys are getting used to it, too.

16          THE COURT:  All right.  October 19th.

17          MR. KELLEY:  That would be helpful, your Honor.

18          THE COURT:  Then, we'll get together a week after

19   that.

10:25:16  20          MR. KELLEY:  Okay.  Which --

21          THE COURT:  Don't write it down.  Glenda sends

22   everything in writing.

23          MS. ROSS:  It will all be in the order.

24          Your Honor, one issue is we gave Plaintiffs by --

10:25:29  25   per agreement our initial disclosures on August 31st as the

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1   Court asked us to do before the conference.  We have yet to get

2   the Plaintiff's initial disclosures.

3              THE COURT:  Tomorrow.

4              MR. KHAN:  Okay.

10:25:40  5              THE COURT:  Okay?

6              MR. KHAN:  Yes, your Honor.

7              MR. KELLEY:  Thank you, your Honor.

8              MS. ROSS:  Thank you.

9              THE COURT:  By 4:00 o'clock so they'll have time to

10:25:48  10  come over and get an injunction if they don't have them by 4:00.

11                   All right, anything else?

12              MR. KELLEY:  Thank you for your time, your Honor.

13              MS. ROSS:  Thank you, your Honor.

14         (Proceedings concluded at 10:25 a.m.)

15

16

17                   C E R T I F I C A T E

18

19       I certify that the foregoing is a correct transcript

20   from the record of proceedings in the above-entitled matter, to

21   the best of my ability.

22

23   By: /s/ **Gayle L. Dye**                    **09-16-2016**

24         Gayle L. Dye, CSR, RDR, CRR        Date

25

              Gayle Dye, CSR, RDR, CRR - 713.250.5582